# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

-----------------------------------------------------------------X

A.M., a minor, by his parents and natural guardians,   :
AUDLEY MUSCHETTE, JUDITH MUSCHETTE   :

:      Civil Action No. 13-1337 (WWE)

Plaintiff,   :

:

-v.-   :

:

AMERICAN SCHOOL FOR THE DEAF, TOWN OF :
WEST HARTFORD, PAUL W. GIONFRIDDO, in   :      ECF CASE
his individual and official capacities;
CHRISTOPHER LYTH, in his individual and official :
capacities, CHRIS HAMMOND in his individual and :
official capacities, JOHN DOE in his individual and   :
official capacities   :      NOVEMBER 11, 2013

:

Defendants   :

-----------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS ON BEHALF OF DEFENDANTS AMERICAN SCHOOL FOR THE DEAF, JOHN DOE, and CHRIS HAMMOND

# TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES                                                         ii

PRELIMINARY STATEMENT                                                    1

SUMMARY OF MATERIAL FACTS                                           2

LEGAL ARGUMENT                                                               4

POINT ONE

    THE COURT HAS SUBJECT MATTER JURISDICTION OVER
    PLAINTIFFS ADA AND REHAB ACT CLAIMS                       5

        A.  THE IDEA DOES NOT APPLY TO PLAINTIFFS BECAUSE
            DEFENDANT ASD IS A PRIVATE EDUCATIONAL ENTITY     5

        B.  PLAINTIFF A.M. COULD NOT HAVE EXAUSTED HIS
            ADMINISTRATIVE RIGHTS WITH HIS LOCAL EDUCATION
            AGENCY BECAUSE DOING SO WOULD BE FUTILE           7

        C.  THE IDEA DOES NOT RESTRICT PLAINTIFFS RIGHTS
            UNDER THESE FACTS                                          11

 POINT TWO

    PLAINTIFFS HAVE DEMONSTRATED STANDING AND AN
    INJURY IN FACT UNDER THE ADA AND REHAB ACT              15

POINT THREE

    THE COURT SHOULD EXERCISE PENDENT PARTY
    JURISDICTION BECAUSE THE FACTS DERIVE FROM A
    COMMON NUCLEUS OF OPERATIVE FACT                         17

POINT FOUR

    EVEN IF SERVICE OF PROCESS WAS NOT PROPERLY
    EFFECTED ON DOE & HAMMOND DISMISSAL IS
    PREMATURE                                                          18

CONCLUSION                                                                      20

Cases

*Achtman v. Kirby, McInerney & Squire, LLP,*
    464 F.3d 328, 335 (2d Cir. 2006)........................................................................................17, 18

*Andrew M. v. New York State Dep't of Educ. (Kalliope R.),*
    827 F. Supp. 2d 130, 138 (E.D.N.Y. 2010)................................................................................14

*Ansell Healthcare, Inc. v. Maersk Line,*
    545 F.Supp. 2d 339, 342-43 (S.D.N.Y. 2008)...........................................................................19

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,*
    548 U.S. 291, 296 (2006)...........................................................................................................11

*Bailey v. Boilermakers Local 677 of the Int'l Brotherhood of Boilermakers, etc.,*
    480 F. Supp. 274, 2 78 (N.D. W.Va. 1979)..............................................................................19

*Baldessarre v. Monroe-Woodbury Central School District*
    Appx. 131, 134 (2d Cir. 2012)..................................................................................................15

*Baur v. Veneman,*
    352 F.3d 625, 633 (2d Cir. 2003)..............................................................................................16

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 555 (2007)............................................................................................................4

*Board of Educ. v. Rowley,*
    458 U.S. 176, 206 (1982)............................................................................................................8

*Boateng v. Inter Am. University,*
    188 F.R.D. 26, 44 (D.C. P.R. 1999) .........................................................................................19

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.,*
    373 F.3d 296, 308 (2d Cir. 2004)..............................................................................................17

*Cicio v. Does,*
    321 F.3d 83, 97 (2d Cir.2003)...................................................................................................17

*C.N. v. Willmar Pub. Schs.,*
    591 F.3d 624, 631 (8th Cir. 2010)............................................................................................12

*Coleman v. Newburgh Enlarged City Sch. Dist.,*
    503 F.3d 198, 203-204 (2d Cir. 2007).......................................................................................14

*Cooper v. Conn. Public Defenders Office*,

    480 F.Supp 2d 536 n. 1 (D. Conn. 2007)........................................................18

*Covington* v. *Knox Cnty. Sch. Sys.*,

    205 F.3d 912, 913-914 (6th Cir. 2000)........................................................13

*Cruz v. Beto,*

    405 U.S. 319, 322 (1972)........................................................................4

*Davis v. Kelly,*

    160 F.3d 917, 921 (2d Cir. 1998)..............................................................20

*Eiden v. McCarthy*,

    531 F. Supp. 2d 333, 343 (D. Conn. 2008)....................................................19

*Heldman v. Sobol,*

    962 F.2d 148, 158 (2d Cir. 1992)..............................................................7

*Honig* v. *Doe,*

    *484 U.S. 305, 327 (1988).*........................................................12, 14, 15

*J.S. ex rel. N.S. v. Attica Central Schools*,

    386 F.3d 107, 112-13 (2004)....................................................................14

*J.S. v. Attica Cent. Schs.*,

    386 F.3d at 115.................................................................................14

*Jones v. Bock*,

    549 U.S. 199, 216 (2007).......................................................................14

*L.A. v. Lyons,*

    461 U.S. 95 (1983)..............................................................................16

*Lyndonville Sav. Bank& Trust Co. v. Lussier,*

    211 F.3d 697, 704 (2 Cir. 2000)................................................................17

*Makarova v. United States*,

    201 F.3d 110, 113 (2d Cir. 2000)...............................................................4

*Massachusetts v. EPA,*

    549 U.S. 497, 525 n. 23, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007)...........................16

*McCormick* v. *Waukegan Sch. Dist. No. 60*,

    374 F.3d 564, 565-566 (7th Cir. 2004)........................................................12

*M.P.* v. *Independent Sch. Dist. No. 721,*

 439 F.3d 865, 868 (8th Cir. 2006)............................................................................12

*Mrs. W. v. Tirozzi,*

 832 F.2d 748, 756 (2d Cir.1987)..............................................................................7

*M.Y.* v. *Special Sch. Dist. No. 1,*

 544 F.3d 885, 888 (8th Cir. 2008)............................................................................12

*Nieves-Marquez* v. *Puerto Rico,*

 353 F.3d 108, 125 (1st Cir. 2003) ...........................................................................12

*Polera v. Board of Educ. of Newburgh,*

 288 F.3d 486 (2d Cir. 2002)............................................................................7, 8, 15

*Retail Clerks Int'l Ass'n v. Schermerhorn,*

 373 U.S. 746, 754 n.6 (1963).. ..................................................................................4

*Romandette v. Weetabix Co.*,

 807 F.2d 309, 311 (2d Cir 1986)........................................................................18, 19

*Rost* v. *Steamboat Springs RE-2 Sch. Dist.*,

 511 F.3d 1114 (10th Cir. 2008)................................................................................13

*Scaggs v. New York State Department of Education*,

 2007 WL 1456221, at *8..........................................................................................14

*Umbenhauer v. Woog*,

 969 F.2d 25, 30-31 (3d Cir. 1992)…........................................................................19

*Valentin v. Dinkins,*

 121 F.3d 72, 75-77 (2d Cir. 1997)…………………………………………………19

*Vill. of Elk Grove v. Evans,*

 997 F.2d 328, 329 (7th Cir.1993)............................................................................16

*Ward v. Murphy,*

 330 F. Supp. 2d 83 (D. Conn. 2004)...................................................................15, 16

*Witte* v. *Clark Cnty. Sch. Dist.*,

 197 F.3d 1271, 1275 (9th Cir. 1999).....................................................................9, 12

-iv-

## Federal Statutes

20 U.S.C. § 1400, et seq.......................................................................................1
20 U.S.C. § 1400(d)(1)(A)....................................................................................5
20 U.S.C. §1401(19) (A)......................................................................................6
20 U.S.C. § 1401 (32)...........................................................................................6
20 U.S.C. §1412(a)(1)(A)......................................................................................5
20 U.S.C. § 1412(a)(1) & (5)................................................................................8
20 U.S.C. §1412(a)(4)...........................................................................................5
20 U.S.C. § 1414(d)(1)(A)....................................................................................8
20 U.S.C. § 1414(d)(1)(B)....................................................................................8
20 U.S.C. § 1414(d)(2)(A)....................................................................................8
20 U.S.C. §§1414-1415.........................................................................................8
20 U.S.C. § 1415....................................................................................................5
20 U.S.C. § 1415 (a)..............................................................................................6
20 U.S.C. § 1415(b)(6)(A)..................................................................................6, 8
20 U.S.C. § 1415 (e)...........................................................................................5, 9
20 U.S.C. § 1415 (f)...........................................................................................5, 9
20 U.S.C. § 1415(f)(1)(A)..................................................................................6, 8
20 U.S.C. § 1415(f)(3)(E)......................................................................................8
20 U.S.C. § 1415 (g)..........................................................................................5, 9
20 U.S.C. § 1415 (h)..............................................................................................6
20 U.S.C. § 1415(i)(2)(A)......................................................................................8
*20 U.S.C.* § 1415(i)(2)(C).....................................................................................8
20 U.S.C. § 1415(i)(2)(C)(iii)................................................................................8
20 U.S.C. § 1415 (l).........................................................................5, 9, 11, 12, 13
20 U.S.C. § 1436(d)..............................................................................................5
28 U.S.C. §1367(a)..............................................................................................17
29 U.S.C. § 794......................................................................................................1
42 USC §§ 12101 et seq.........................................................................................1

## Federal Regulations

34 C.F.R. § 300.140(a)..........................................................................................6
34 C.F.R. § 300.454...............................................................................................7
34 CFR § 300.454(a)..............................................................................................6
34 C.F.R. § 300.454(a)(1)(2)..................................................................................7
34 C.F.R. §§ 300.504-300.515...............................................................................7

## House of Representatives Reports

H.R.Rep. No. 99-296, at (1985).............................................................................7

## Connecticut Statutes

Conn. Gen. Stat. §10-76a-j.................................................................................................6

## Federal Rules

FRCP 4(m)...........................................................................................................................19
FRCP 5(e)(1)........................................................................................................................18
FRCP 5(e)(2)(B)..............................................................................................................18, 19
FRCP 12(b)(5)................................................................................................................18, 19

**<u>PRELIMINARY STATEMENT</u>**

Plaintiff A.M. is a disabled student who has brought this action against the American School for the Deaf ("ASD"), a private education institution, through his parents and natural guardians under Section 504 of the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 794, Title III of the Americans with Disabilities Act ("the ADA"), 42 USC §§ 12101 et seq., and other tort actions that directly relate to the horrific physical and emotional abuse that was conducted by defendants ASD, Chris Hammond, and John Doe. Defendants ASD, Chris Hammond, and John Doe primarily focus on three areas in their motion to dismiss: 1) this court lacks subject matter jurisdiction over Plaintiffs' Federal claims, because Plaintiff did not exhaust his administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*; 2) that suit under Title III under the ADA is improper because Plaintiff does not have standing; and 3) this court lacks personal jurisdiction over Defendants John Doe and Chris Hammond. Defendant, ASD's position as to the IDEA is incorrect, as Plaintiff is not subject to the administrative exhaustion requirements of the IDEA because ASD is a private educational entity. Every single case that Defendants' cite in support of their position that IDEA administrative exhaustion requirements apply are lawsuits against public educational entities and not private educational entities. Plaintiffs have standing under Title III of the ADA as Plaintiffs complain of discriminatory policies, procedures, and training of staff, which is well within the purview of an ADA Title III claim. Lastly, dismissal of any parties for lack of service is premature because 120 days have not passed since the complaint has been filed and formal discovery has not commenced to identify John Doe. Plaintiffs submit this Memorandum of Law in Opposition to the Motion to Dismiss filed by ASD, Chris Hammond, and John Doe.

**STATEMENT OF FACTS**

Plaintiff A.M. is a student at the American School for the Deaf. The American School for the Deaf is a private school located in West Hartford, Connecticut. Plaintiff A.M. is profoundly Deaf and primarily communicates in American Sign Language. Plaintiff A.M. also has Attention Deficit Disorder. (Complaint ¶¶6-8.)

ASD and its staff's actions were a result of policies and practices which do not provide sufficient safeguards to protect its students. While under the care and supervision of the American School for the Deaf, Plaintiff A.M. has been subjected to repeated physical, psychological, and emotional abuse by ASD staff members. (Complaint ¶4.)

In March of 2013, Defendant "JOHN DOE", an ASD staff member, known by A.M. and his parents by the name of "E", without justification or cause, choked A.M, and forcibly threw him to the ground resulting in significant head injuries and scaring to Plaintiff A.M. Plaintiff was taken to the nurse rather than to a hospital. It was not until later that evening that an ASD staff member informed A.M.'s parents what had happened. The name of the staff member who caused injury to A.M. was withheld. During a meeting with Clinical Director of the P.A.C.E.S program, Ms. Karen Wilson also did not provide the name of the ASD staff member that assaulted A.M. (Complaint ¶¶19-26.)

On April 30, 2013 ASD staff denied A.M.'s food requests. When he attempted to contact his parents for help through a videophone, after five minutes of conversation, Defendant Chris Hammond, an ASD staff member, maliciously and without provocation pulled the wires out of the videophone and disconnected the call. A.M. became terrified and upset and fled the school. Several ASD staff members chased him into a nearby construction site on campus. Defendant, Hammond then told A.M. he was going to kill him and push him into an unsafe area of the

construction site. Defendant Hammond proceeded to grab A.M. and punched him in the face with closed fists and A.M. dropped to the ground as a result of the punch. A.M. then grabbed a stick on the ground to defend himself from attack from ASD staff, as this was the second time he had been assaulted and battered by ASD staff. The staff members backed away when he grabbed the stick and A.M. then turned around and crouched down with his back facing the staff members. (Complaint ¶¶28-39.)

The American School for the Deaf then called the Town of West Hartford Police to the scene. Police were aware that Plaintiff was a Deaf child, however, no interpreter was provided and no communication took place with A.M. before he was tasered in the back by Officer Paul Gionfriddo. Plaintiff A.M. was crouched calmly with his back facing the Officers when he was tasered. After being tasered, A.M. was taken to Connecticut Children's Medical Center in Hartford, Connecticut. A.M's back was burned and he sustained scarring at the locations where he was hit with the taser prongs. Once again, A.M's parents were not promptly notified of the April 30, 2013 incident and did not learn of it until late the following evening on May 1, 2013. (Complaint ¶¶40-54.)

On June 21, 2013 ASD falsely accused A.M. of watching and printing pornography in an attempt to upset and harass him. ASD staff contacted the police and falsely claimed A.M. was trying to kill himself by wrapping wires around his neck as well as stabbing himself with a pen and scissors. After being evaluated by medical staff at the nearby hospital the doctors told A.M.'s father that there was no physical evidence or other evidence they could find which corroborated ASD staff member's claims. (Complaint ¶¶55-58.)

On June 26, 2013 a meeting was set-up between ASD staff and A.M.'s parents where an ASD staff member, Jeff Bravin, told A.M.'s parents that they had two choices, to take A.M. out

of the school or to agree to never contact A.M. or the school again while A.M. is enrolled. (Complaint ¶¶61-62.)

Defendants suggest throughout their statement of facts that Plaintiffs are merely complaining about a failure to meet educational needs and be reasonably informed of the status of Plaintiff A.M.'s education. (ASD Def. Mem. at 2-5.) However, they ignore the real subject of this lawsuit, severe physical and emotional abuse against a young disabled child. The lack of information that Plaintiff's parents complain of is the concealment or delay of facts relating to the abuse of their child. (Complaint ¶¶19-62.) Plaintiff's parents do not complain of A.M.'s identification, evaluation, or educational placement or the provision of a free appropriate public education, all categories under the purview of the IDEA administrative exhaustion requirements.

## ARGUMENT

## LEGAL STANDARD

On a motion to dismiss, courts must accept the factual allegations of the complaint as true and must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 754 n.6 (1963). A plaintiff need not allege specific facts beyond those necessary to state his claim and the grounds showing entitlement to relief. *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court may not dismiss a complaint if the plaintiff has alleged facts that state a claim to relief that is plausible on its face. *Id.* at 570.

Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is only proper "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000).

## POINT ONE

## THE COURT HAS SUBJECT MATTER JURISTICTION OVER PLAINTIFFS ADA AND REHAB ACT CLAIMS

Defendants contend that Plaintiff is barred by the IDEA from asserting claims under the ADA and Rehab Act because Plaintiff did not exhaust his administrative remedies first. This is incorrect as the ADA does not apply plaintiff because defendant ASD is a private entity. Even if administrative exhaustion is required, Plaintiff would be excused under applicable laws and case law for the reasons set forth below:

### A. THE IDEA DOES NOT APPLY TO PLAINTIFFS BECAUSE DEFENDANT ASD IS A PRIVATE EDUCATIONAL ENTITY

The IDEA was enacted to protect children with disabilities and their parents by requiring participating states to provide "a free appropriate public education ("FAPE") that emphasizes special education and related services designed to meet [disabled students'] unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). Participating states must provide eligible students with a "free appropriate public education,"*Id.* § 1412(a)(1)(A), that, among other things, conforms to a proper IEP, *see Id.*§§ 1412(a)(4), 1436(d), Children with disabilities and their parents are provided with the extensive procedural protections set out in 20 U.S.C. § 1415. In particular, the statute requires states to provide aggrieved parties with the opportunity to mediate their disputes, *Id.* § 1415(e), to secure an impartial due process hearing to resolve certain differences with state agencies, *Id.* § 1415(f), and to appeal any decision and findings to the state educational agency, *Id.* § 1415(g). As stated above, the exhaustion provision requires parties to avail themselves of these procedures (and the corresponding local appeals process) before resorting to the courts whenever they "seek[ ] relief that is also available under [the IDEA]." *Id.*§ 1415(*l*).

Parents are specifically entitled to request a due process hearing in order to present complaints as "to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education." 20 U.S.C. § 1415(b)(6)(A); *See also Id.* § 1415(f)(1)(A), (g) and (h) (delineating procedural safeguards to be accorded to parties filing a complaint and their right to seek review through local and state administrative avenues).

Defendant ASD mistakenly believes that because they are approved for purposes of reimbursement pursuant to the provisions of section 10-76a-j of the Connecticut General Statutes that they are subject to due process exhaustion requirements under the IDEA. *See* 34 C.F.R. § 300.140(a). (ASD Def. Mem. at 7-8.) Defendants in their brief cite 20 U.S.C. § 1415(a) which states: "Any State educational agency, State agency, or local educational agency that receives assistance under this part shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." *Id. (*ASD Def. Mem. at 7.) However, upon reviewing the definitions of State educational agency, State agency, or local educational agency under IDEA, Defendant ASD does not meet any of these definitions. *See* 20 U.S.C. §1401(19) (A*) See also* 20 U.S.C. § 1401 (32). Therefore, Defendant ASD as a private school is not subject administrative exhaustion requirements of the IDEA as it relates to FAPE or the identification, evaluation, or educational placement of the child.

The thrust of IDEA is to provide a free appropriate public education. In this regard, 34 Code of Federal Regulations ("C.F.R.") § 300.454(a), entitled "Services Determined"*,* provides:

> No private school student with a disability has an individual right to receive some or all of the special education and related services he/she would receive if enrolled in a [Local School System]. Decisions about the service(s) to be provided to private school students with disabilities shall be made in

consultation with appropriate representatives of private school students with disabilities. [34 CFR § 300.454(a)(1)(2)]

There is a significant difference between the due process rights for a public school student who is seeking a FAPE and a privately enrolled student. The former group enjoys certain procedural safeguards, including the right to request a hearing. 34 C.F.R. §§ 300.504-300.515. A student seeking services under § 300.454, as in the case at hand, are not entitled to those procedural safeguards against the private entity. In this case, the Plaintiffs are not asking for FAPE or is even challenging the identification, evaluation or educational placement of A.M. On the contrary, Plaintiff A.M. is enrolled in a private school, and is suing ASD, John Doe, and Chris Hammond for negligence, physical abuse, emotional abuse, and discrimination. Since Plaintiffs are suing a private school, IDEA exhaustion requirements do not apply to Defendants.

**B. PLAINTIFF A.M. COULD NOT HAVE EXAUSTED HIS ADMINISTRATIVE RIGHTS WITH HIS LOCAL EDUCATION AGENCY BECAUSE DOING SO WOULD BE FUTILE**

Even if *arguendo* the IDEA exhaustion requirements do apply against private entities under these facts and Plaintiff should have filed a complaint with the local education agency prior to suit, which is not the case, Plaintiff still would not be required to exhaust his administrative remedies under applicable case law.

Under the futility exception applied by the Second Circuit, the IDEA's exhaustion requirement does not apply "in situations in which exhaustion would be futile because administrative procedures do not provide adequate remedies. *Heldman v. Sobol,* 962 F.2d 148, 158 (2d Cir. 1992); *see also* H.R.Rep. No. 99-296, at 7 (1985); *Mrs. W. v. Tirozzi,* 832 F.2d 748, 756 (2d Cir.1987). As the Second circuit held in *Polera v. Board of Educ. of Newburgh*: "the purpose of the IDEA is to provide educational services, not compensation for personal injury, and a damages remedy — as contrasted with reimbursement of expenses — is fundamentally

inconsistent with this goal." 288 F.3d 486 (2d Cir. 2002).

The IDEA requires States that receive federal IDEA funds to assure that children with disabilities get a free appropriate public education that meets their unique needs in the least restrictive environment. 20 U.S.C. § 1412(a)(1) & (5) (emphasis added). For each child, the IDEA requires the development of an individualized education program (IEP) by parents, teachers, other school personnel, and educational experts. *Id.* § 1414(d)(1)(B). The IEP includes a statement of the special education and related services to be provided to the child. *Id.* 1414(d)(1)(A). The school must put an agreed-upon IEP into effect. *Id.* §1414(d)(2)(A).

The IDEA also requires States to establish procedures to resolve IEP-related disputes between parents and school districts. 20 U.S.C. § 1414-1415. Parents or guardians may present complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *Id.* §1415(b)(6)(A). If such a complaint cannot be resolved to the parents' satisfaction, the State provides "an opportunity for an impartial due process hearing," *Id.* §1415(f)(1)(A), at which a hearing officer determines "whether the child received a free appropriate public education." *Id.* §1415(f)(3)(E).

After parents have exhausted these administrative procedures, any party aggrieved by the final decision may bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A). While the court must receive the administrative records and give that proceeding "due weight," it must also hear any additional evidence the parties present. *Id.* §1415(i)(2)(C); *Board of Educ.* v. *Rowley*, 458 U.S. 176, 206 (1982). The court "shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii), which ordinarily does not include "retrospective

damages" such as the compensatory and punitive damages. *Witte* v. *Clark Cnty. Sch. Dist.*, 197 F.3d 1271, 1275 (9th Cir. 1999).

The IDEA specifically provides that the availability of its administrative and judicial remedies to children with disabilities and their parents does not "restrict or limit the rights, procedures, and remedies available under the Constitution" or "Federal laws protecting the rights of children with disabilities." 20 U.S.C. § 1415(*l*). However, before the filing of a suit under another law "seeking relief that is also available under "the IDEA, the statute requires that the IDEA's hearing procedures "be exhausted to the same extent as would be required had the action been brought under" the IDEA. *Id.*

The IDEA, by its terms, requires that its administrative processes be exhausted before the filing of suits that do not explicitly allege IDEA violations but nonetheless "seek relief that is also available under" the IDEA. 20 U.S.C. § 1415(*l*).  In particular, the statute requires states to provide aggrieved parties with the opportunity to mediate their disputes, *Id.* § 1415(e), to secure an impartial due process hearing to resolve certain differences with state agencies, *Id.* § 1415(f), and to appeal any decision and findings to the state educational agency, *Id.* § 1415(g).

Defendant ASD has improperly asserted that Plaintiffs are required to exhaust their administrative remedies and therefore this Court has no subject matter jurisdiction over Plaintiffs' Federal claims. (ASD Def. Mem. at 6.) Defendant is not a State or Local Education agency as defined under the IDEA, but rather a private school. (ASD Def. Mem. 7, Footnote 1) Even if Plaintiff wanted to lodge an IDEA administrative complaint against ASD for its conduct there would be no way for Plaintiffs to do so because the IDEA only covers public entities. Rather, plaintiff would have to file a complaint against his local education agency to challenge any matter relating to the identification, evaluation, or educational placement of A.M, or the

provision of a free appropriate public education. Plaintiff would not be able to request a hearing against Defendant ASD, but rather his local education agency. The hearing officer would not be able to grant any relief for Plaintiff against ASD for the damages inflicted upon Plaintiff A.M. as ASD could not be a party to the action. Further, the hearing officer would not be able to grant any enforceable ruling against ASD for any injunctive relief that would be available under the ADA or the Rehab Act. An IDEA hearing officer has no authority to force a private entity to change their institution wide policies or procedures or implement proper training of staff. It would futile to go through any administrative exhaustion before filing suit against ASD because the relief that Plaintiff A.M. seeks is unavailable.

Plaintiff A.M. does not challenge his right to a free appropriate public education or an individualized education plan, he is challenging systemic discrimination and physical and mental abuse by the private entity ASD. Suggestions by Defendants that Plaintiffs are merely complaining about disagreements over how Plaintiff A.M is being educated and the right to be informed about Plaintiff A.M.'s education are simply incorrect. Defendant ASD allowed physical and emotional abuse to occur to its student under its care and demonstrated a lack of proper, training, policies, and procedures to prevent its staff from conducting such abuse. (Complaint ¶¶19-70) Plaintiff seeks damages for this physical and mental abuse. Plaintiff also seeks institution wide injunctive relief to correct the systemic failures within ASD that failed A.M and allowed tortuous abuses to continuously occur.

In short, this suit could not have been brought under the IDEA itself, and so applying the exhaustion provision here does not serve that provision's purposes. Plaintiff does not challenge the appropriateness of an ongoing or past IEP. Here, Defendant ASD is trying to use the IDEA as a temporarily shield from all liability for conduct that violates statutory rights that exist

*independent* of the IDEA and entitles a plaintiff to relief *different* from what is available under the IDEA. (See ASD Def. Mem. at 7-14.)

## C. THE IDEA DOES NOT RESTRICT PLAINTIFFS RIGHTS UNDER THESE FACTS

With respect to the IDEA, like any other statute, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Arlington Cent. Sch. Dist. Bd. of Educ.* v. *Murphy*, 548 U.S. 291, 296 (2006) (citation omitted). ASD has construed the provision at issue here well beyond what its plain language can support.

In relevant part, the IDEA provides:

> Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws *seeking relief that is also available under this subchapter*, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this part. 20 U.S.C. § 1415(*l*) (citations omitted and emphasis added).

Thus, IDEA exhaustion is required before alleging violations of other laws only for those suits "seeking relief that is also available under" the IDEA itself.

Where a plaintiff has no ongoing educational dispute with his local educational agency and neither sues under the IDEA, nor seeks relief available under the IDEA, nothing in this provision requires exhaustion of IDEA procedures. To the contrary, this provision forbids courts from construing the IDEA to restrict the rights and remedies available under other laws under any other circumstances.

Nonetheless, the Defendant implies that a plaintiff must exhaust IDEA procedures against a private entity before filing suits arising under other laws whenever that plaintiff's injuries *could be* redressed to any degree by the IDEA's administrative procedures. (ASD Def. Mem. at 7-14.)

This is incorrect since the "IDEA's primary purpose is to ensure [a free and adequate public education], not to serve as a tort-like mechanism for compensating personal injury." *Nieves-Marquez* v. *Puerto Rico*, 353 F.3d 108, 125 (1st Cir. 2003); accord *M.Y.* v. *Special Sch. Dist. No. 1*, 544 F.3d 885, 888 (8th Cir. 2008).

If a student's prospective IEP is not at issue, administrative processes are not required before filing a suit, such as this one, that alleges abuse rather than a failure to educate. Any further recourse to the administrative process would have been futile, and thus was not required regardless of how expansively the exhaustion requirement of 20 U.S.C. § 1415(*l*) is interpreted. See *Honig* v. *Doe*, 484 U.S. 305, 327 (1988).

Moreover, requiring further administrative exhaustion devoted solely to whether school officials physical and emotionally abused Plaintiff and whether there is a systemic failure within the American School for the Deaf (a private school) distorts the IDEA dispute resolution procedures. Not only are damages unavailable through the administrative process, but nothing in the statute permits a hearing officer to enforce any award against a private school. Indeed, had A.M requested a due process hearing against his local education agency, their request may very well have been deemed improper on the ground that they had no live dispute to adjudicate. *See C.N.* v. *Willmar Pub. Schs.*, 591 F.3d 624, 631 (8th Cir. 2010)

At issue here are only those claims alleging misconduct so egregious as to violate rights independent of the IDEA *See*, *Witte v. Clark County School District,* 197 F.3d 1272-1273 (9th Cir.1999) (severe verbal and physical abuse); *see also M.P.* v. *Independent Sch. Dist. No. 721*, 439 F.3d 865, 868 (8th Cir. 2006) (school failed to protect student from harassment); *McCormick* v. *Waukegan Sch. Dist. No. 60*, 374 F.3d 564, 565-566 (7th Cir. 2004) (physical education teacher required student with muscle dystrophy to engage in strenuous exercise that caused

physical damage); *Covington* v. *Knox Cnty. Sch. Sys.*, 205 F.3d 912, 913-914 (6th Cir. 2000) (abusive discipline); cf. *Rost* v. *Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114 (10th Cir. 2008) (considering claim that school district was deliberately indifferent to sexual abuse against girl with mental disability, without suggestion that she needed to exhaust claim under the IDEA). While sometimes brought by students with disabilities, such claims do not rely on any rights guaranteed by the IDEA.

A student without a disability who suffers abuse may sue a school or district for damages without first going through administrative remedies. Requiring a student with a disability to pursue administrative remedies first not only contravenes the IDEA's plain language, it also turns the IDEA – a statute designed to advance the rights of students with disabilities – into a severe limitation on those students' rights.

Properly read, the IDEA provides additional rights and remedies prospectively to children with disabilities; it does not diminish the rights of those children, nor does it force those who have suffered abusive treatment to follow administrative procedures required of no other children before seeking compensation. The provision at issue here, 20 U.S.C. § 1415(l), was intended to clarify that the IDEA is *not* the exclusive remedy for a person who may have IDEA rights arising out of the same facts. Forcing that person to go through the IDEA process, even if he or she does not intend to assert his or her IDEA rights or seek any IDEA remedies, turns the provision's purpose on its head.

Defendants assert that the Court lacks subject matter jurisdiction because Plaintiffs did not take the futile step of initiating an impartial hearing to address the violations described in the Complaint. (ASD Def. Mem. at 7-14.) However, the failure to exhaust administrative remedies is properly raised as an affirmative defense; it does not deprive this Court of subject matter

jurisdiction.[1] Second, even if the Court considers the affirmative defense of exhaustion, the allegations of the Complaint demonstrate that requiring exhaustion in this case would be futile, because Plaintiffs seek systemic relief under the ADA and Rehab Act against a private school that an impartial hearing officer cannot provide.

The Supreme Court has held that a party can proceed directly to court under Part B of the IDEA without exhausting administrative procedures because parties "may bypass the administrative process where exhaustion would be futile or inadequate." *Honig v. Doe*, 484 U.S. 305, 327 (1988); *see also Andrew M. v. New York State Dep't of Educ. (Kalliope R.)*, 827 F. Supp. 2d 130, 138 (E.D.N.Y. 2010). Exhaustion is not required when the problems alleged are systemic violations that cannot be addressed by the available administrative remedies. *J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 112-13 (2004); *see also Andrew M.*, 827 F.Supp.2d at 138.

Second Circuit courts have also held that a wide-spread "failure to provide appropriate training" constitutes "systemic problems" that excuse exhaustion. *J.S. v. Attica Cent. Schs.*, 386 F.3d at 115 ("alleged failure to provide appropriate training to school staff"); *Scaggs v. New York State Department of Education*, 2007 WL 1456221, at *8 (alleged that defendant "did not provide Plaintiffs with certified teachers and/or properly trained teachers and/or school

---

[1]Recent Supreme Court precedent suggests that an argument premised on a plaintiff's failure to exhaust administrative remedies should be treated as an affirmative defense—not as a jurisdictional bar. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (holding, in context of Prison Litigation Reform Act, that failure to exhaust is an affirmative defense and accepting the "general proposition" that "courts typically regard exhaustion as an affirmative defense in other contexts"). *Id.* at 212. Because failure to exhaust should not be treated as a jurisdictional bar, Plaintiffs "are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* at 216. The Second Circuit has noted as much, observing that recent Supreme Court precedent has called into question earlier precedent that treated the exhaustion requirement as a jurisdictional question. *See Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 203-204 (2d Cir. 2007). Thus, the Court should reject Defendants exhaustion argument on this basis.

personnel"). Here, Plaintiffs allege and offer facts to support that their statutory rights were violated as a result of "staff's actions were a result of policies and practices which do not provide sufficient safeguards to protect its students." (Complaint ¶4.) "Plaintiffs in their allegations also state that ASD failed to properly train staff and have procedures in place to have peaceful encounters with individuals with Attention Deficit Hyperactivity Disorder or other emotional & behavioral issues and failed to establish a proper policy for handling such encounters, which resulted in the discrimination against A.M. that caused him to suffer his injuries." (Complaint ¶122.)

Relying on *Polera v. Board of Educ. of Newburgh* 288 F.3d 478 (2d Cir. 2002), and *Baldessarre v. Monroe-Woodbury Central School District* Appx. 131, 134 (2d Cir. 2012). Defendants assert that Plaintiffs are subject to administrative exhaustion requirements. However, *Polera* and *Baldessarre* are inapposite because the plaintiff in that case did not allege systemic violations or incidents of tort—rather they alleged that the plaintiff's IEP was defective and sought an individual remedy. Also, both cases deal with public school districts and not private schools. Even if, Defendant ASD was a public school under the IDEA for which they are not, systemic violations as alleged in this case are excused under IDEA administrative exhaustion requirements.

**POINT TWO**

**PLAINTIFFS HAVE DEMONSTRATED STANDING AND AN INJURY IN FACT UNDER THE ADA AND REHAB ACT**

Defendants in their memorandum of law mention that [T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *Ward v. Murphy*, 330 F. Supp. 2d 83 (D. Conn. 2004) (quoting *L.A. v. Lyons*, 461 U.S. 95 (1983)) (quotations omitted). (ASD Def.

Mem. at 14.) Constitutional standing "requires the plaintiff to allege that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." Id. (quotations omitted). (ASD Def. Mem. at 14-15.)

Here, Plaintiff A.M. has already sustained severe physical and/or emotional injuries on three separate incidents. Not only is the injury real, concrete and not hypothetical, but also has continued to occur on several occasions as alleged in the complaint.(Complaint ¶¶19-63.) Plaintiff also complains that these injuries were caused in part by policies, practices, and procedures that allowed the7 injuries to continue to happen. (Complaint ¶¶4, 122.) The injuries are not conjectural and will continue to occur if something is not done. Defendant incorrectly claims that Plaintiffs have not alleged standing, however, Plaintiffs repeatedly demonstrate injuries throughout its complaint. *(See Complaint Generally)*

The fact that physical and emotional abuse has occurred on several occasions demonstrates a likelihood that it will occur again, which allows for standing under Article III of the Constitution. *See Massachusetts v. EPA,* 549 U.S. 497, 525 n. 23, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007) (quoting *Vill. of Elk Grove v. Evans,* 997 F.2d 328, 329 (7th Cir.1993), as holding that even a small probability of injury is sufficient to create a case or controversy— to take a suit out of the category of the hypothetical.

The Second Circuit Courts of Appeals has recognized in *Baur v. Veneman,* that "threatened harm in the form of an increased risk of future injury may serve as injury-in-fact for Article III standing purposes." 352 F.3d 625, 633 (2d Cir. 2003). Repeated past conduct is a solid indicator of future conduct and therefore the Court should find standing under the ADA and Rehab Act under these facts.

## POINT THREE

## THE COURT SHOULD EXERCISE PENDENT PARTY JURISDICTION BECAUSE THE FACTS DERIVE FROM A COMMON NUCLEUS OF OPERATIVE FACT

Under 28 U.S.C. §1367(a) federal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action as to form part of the same case or controversy under Article III of the United States Constitution." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc*., 373 F.3d 296, 308 (2d Cir. 2004) (citing to *Cicio v. Does*, 321 F.3d 83, 97 (2d Cir.2003) (internal quotations omitted). In order for the state law claims to form part of the same controversy, they have to "derive from a common nucleus of operative fact." Id. The Second Circuit has provided further guidance that a common nucleus of operative fact can exist "even if the state law claim is asserted against a party different from the one named in the federal claim." Id. Finally, the Second Circuit has instructed that, "[i]n determining whether two disputes arise form a common nucleus of operative fact, we have traditionally asked whether the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (citing to *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2 Cir. 2000) (internal quotations omitted).

In the matter presently before this court, the facts underlying the State and Federal claims overlap. The anchoring April 30, 2013 incident in this case derives from a common nucleus of operative fact that incorporates both State and Federal violations. Both ASD and its staff and the Town of West Hartford and its officers were all causally involved in the tasering of Plaintiff A.M. ASD and its staff's violation of Federal and State law set forth the events in motion for the Town of West Hartford and its officers to arrive on the scene and commit their own State and Federal violations. These defendants are inextricably intertwined and derive from the common nucleus of

operative fact. All named defendants played in role in the April 30, 2013 incident and as such form a common nucleus of operative fact. Allowing the defendants to participate in the same lawsuit would facilitate judicial economy and would prevent inconsistent rulings as to the liability each Defendant as to the April 30, 2013 incident. It would also be prejudicial to Plaintiff as it would require Plaintiff to prosecute two separate cases in relation to the same April 30, 2013 incident. Therefore, pendent party jurisdiction should be exercised for the reasons set forth above if the Federal claims are dismissed.

**POINT FOUR**

**EVEN IF SERVICE OF PROCESS WAS NOT PROPERLY EFFECTED ON DOE & HAMMOND DISMISSAL IS PREMATURE**

It is the plaintiff's burden to establish that service was adequate upon motion under FRCP 12(b)(5). *Cooper v. Conn. Public Defenders Office*, 480 F.Supp 2d 536 n. 1 (D. Conn. 2007). However, "[D]ismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained."); *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir 1986).

In this case, Mr. Bravin stated to the process server that he was authorized to accept service for ASD, Chris Hammond, and John Doe. It is unknown whether Mr. Bravin is in fact authorized to accept service on behalf of Defendant Hammond and Doe without the benefit of an evidentiary hearing. Defendants in their memorandum do not explicitly state that Mr. Bravin is not authorized to accept service on Defendant Hammond or Doe's behalf. Regardless, in light of Defendant Hammond's objection to proper service, Plaintiff Hammond has been properly served at his place of abode on November 8, 2013 in accordance with FRCP 5(e)(1) and FRCP 5(e)(2)(B). Plaintiffs will be filing the affidavit of service as soon as they receive it from the process server which will render his motion moot on these grounds.

Even *arguendo* if service was not properly effected, rather than dismissing the complaint FRCP 12(b)(5) offers the court the option of quashing insufficient service. *Boateng v. Inter Am. University*, 188 F.R.D. 26, 44 (D.C. P.R. 1999). If service of a complaint is ineffective, a motion to dismiss should not be granted but the court should treat the motion in the alternative, as one to quash service of process, and the case should be retained on the docket pending effective service. *Bailey v. Boilermakers Local 677 of the Int'l Brotherhood of Boilermakers, etc.*, 480 F.Supp. 274, 2 78 (N.D. W.Va. 1979); *Ansell Healthcare, Inc. v. Maersk Line*, 545 F.Supp. 2d 339, 342-43 (S.D.N.Y. 2008)(Where service had to be quashed for defective service, court declined to dismiss the complaint where a reasonable prospect existed for effecting proper service on the defendant.); *Umbenhauer v. Woog*, 969 F.2d 25, 30-31 (3d Cir. 1992)("[D]ismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained."); *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir 1986). The ability to obtain service under the FRCP is limited by FRCP 4(m), which provides a time limit of 120 days for service after the complaint was filed. In this case, 120 days has not elapsed from the date the Complaint was filed (September 11, 2013). The authority which defendant cites involving a motion to dismiss, which was granted for lack of service, involves a situation where 120 days have lapsed. *See Eiden v. McCarthy*, 531 F. Supp. 2d 333, 343 (D. Conn. 2008).

Also, the Second Circuit has recognized that situations arise in which the identity of alleged defendants may not be known prior to the filing of a complaint. See e.g.,*Valentin v. Dinkins*, 121 F.3d 72, 75-77 (2d Cir. 1997). In these situations, the courts allow plaintiffs to identify defendants as "John Doe" at the complaint stage "until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials." *See Davis v. Kelly,* 160 F.3d 917, 921 (2d Cir. 1998). The fact that A.M. is a child and Defendant ASD has refused to

disclose John Doe's name despite numerous requests and inquiries by Plaintiffs gives good cause to proceed with discovery on the identity of John Doe.

Further, it would not be appropriate to dismiss this case where Defendants Hammond and Doe have appeared through an attorney, Defendant Hammond has been served properly and it appears that Plaintiff will eventually be able to discover the identity Defendant's Doe. Therefore dismissal on these grounds is premature.

## Conclusion

For the foregoing reasons, Defendants ASD, Hammond, and Doe, motion to dismiss should be denied in its entirety.

Respectfully Submitted,
PLAINTIFF A.M B Y PARENTS AND
NATURAL GUARDIANS AUDLEY
MUSCHETTE & JUDITH MUSCHETTE

By:＿＿/s/ Andrew Rozynski＿＿＿＿
Andrew Rozynski, Esq.
Fed. Bar. No.: phv06283
24 Union Square East, Fourth Floor
New York, NY 10003
T: (212) 353-8700
F: (212) 353-1708
arozynski@EandBlaw.com

## <u>CERTIFICATION</u>

This is to certify that on this 11th day of November 2013 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Respectfully Submitted,

PLAINTIFF A.M BY PARENTS AND
NATURAL GUARDIANS AUDLEY
MUSCHETTE & JUDITH MUSCHETTE

By:    /s/ Andrew Rozynski_____
Andrew Rozynski, Esq.
Fed. Bar. No.: phv06283
24 Union Square East, Fourth Floor
New York, NY 10003
T: (212) 353-8700
F: (212) 353-1708
arozynski@EandBlaw.com