# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

A.M., A MINOR, by his parents and natural   :   CIVIL ACTION
guardians, AUDLEY MUSCHETTE and JUDITH   :   NO. 3:13-CV-1337 (WWE)
MUSCHETTE,   : 

           Plaintiffs,   : 

VS.   : 

  : 

AMERICAN SCHOOL FOR THE DEAF, ET AL.
           Defendants,            DECEMBER 11, 2013

_____

## DEFENDANTS AMERICAN SCHOOL FOR THE DEAF, CHRIS HAMMOND, AND JOHN DOE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM[1]

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure Defendants American School for the Deaf ("ASD"), Chris Hammond ("Hammond"), and John Doe ("Doe") (collectively the "ASD defendants") move to dismiss the Plaintiff's claims because they do not state claims. Defendants set forth the following in support:

### Introduction

Plaintiff A.M. is a student at the American School for the Deaf. He brings claims under Title III of the Americans with Disability Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 701 ("Rehabilitation Act" or "Section 504"), *et. seq.*, and State law against ASD, Hammond, and Doe. Plaintiffs fail to establish that A.M. was an "otherwise qualified" individual or that he was discriminated against within

---

[1]Currently pending before the Court is Defendants' jurisdictional motion pursuant to Rule 12(b)(1). Defendants respectfully submit that the Court is without jurisdiction for the reasons set forth in that Motion. However, to comply with the deadlines set forth in the planning report, Defendants submit this Motion for consideration should the Court deny the jurisdictional motion.

the meaning of Title III of the Americans with Disability Act ("ADA"), 42 U.S.C. § 12101, *et. seq.* and the Rehabilitation Act of 1973, 29 U.S.C. § 701 ("Rehabilitation Act" or "Section 504"), *et. seq.* Further, Plaintiffs have not adequately stated a claim for injunctive relief under the ADA or monetary damages under the Rehabilitation Act. There is no plausible federal claim as to the ASD defendants.

## I. STATEMENT OF ALLEGED FACTS

Plaintiff A.M. was a student at the American School ("ASD") for the Deaf in West Hartford, CT. (Compl. ¶¶ 6-8.) Plaintiff is deaf and also has Attention Deficit Hyperactivity Disorder. The school provides special education. Specifically, the American School for the Deaf provided A.M. with a program "for the special needs of deaf and hard of hearing children and youth whose emotional or behavioral disorders prevent them from being served in more traditional programs." (Compl. ¶ 8.) Plaintiff alleges that Defendant Chris Hammond was an employee of ASD. (Compl. ¶ 13.) He also alleges that John Doe was an employee of ASD. (Compl. ¶ 14.) Both Hammond and Doe are purportedly sued in their "individual and official capacities." (hereinafter ASD, Hammond, and Doe are referred to as "ASD defendants") Also Defendants are the Town of West Hartford and two of its police officers.

The claims against ASD arise from a series of discrete "incidents" set out in the Complaint. The first "incident" is alleged to have occurred in March 2013 and involved only ASD and Doe. (Compl. ¶¶ 19-27.) The second "incident" is alleged to have occurred on April 30, 2013 and involved ASD, Hammond, and the Town of West Hartford police officers. (Compl. ¶¶ 28-54.) The third and last incident is alleged to have occurred in the end of June 2013, and involved only ASD. (Compl. ¶¶ 55-63.) Each

separate "incident" involves very different conduct. In general, however, Plaintiff claims that ASD failed to provide him with a safe educational environment and that ASD interfered with or failed to meet his educational needs.

Plaintiff alleges during the March 2013 incident that he was physically assaulted by John Doe. He alleges that ASD failed to properly follow protocol in that ASD failed to properly notify his parents of the incident, failed to provide information about the persons involved in the incident, and failed to properly follow the State regulations and procedures concerning investigation and reporting of the incident. (Compl. ¶¶ 21, 25-26.)

The only alleged incident involving the West Hartford police was the second incident. Plaintiff alleges that on April 30, 2013 Defendant Hammond interfered with A.M.'s ability to order lunch and his ability to communicate with his parents. (Compl. ¶¶ 29, 31.) It is further alleged that A.M. left the building as he was upset over this, and that Hammond began to chase A.M. outside of the building (Compl. ¶¶ 32-34.) An altercation ensued outside, and the Town of West Hartford police were summoned to the scene. (Compl. ¶¶ 35-40.) Plaintiff goes on to allege that the West Hartford police officers tasered A.M. and that he suffered physical injuries as a result. (Compl. ¶¶ 41-54.) Plaintiff again claims that his parents were not timely notified of the "incident." (Compl. ¶ 54.)

The June 2013 "incident" involves an alleged attempt by ASD to retaliate against A.M. for his earlier conduct; however, the Complaint does not specify the specific conduct for which he was being retaliated. (Compl. ¶ 55.) (vague allegation that he was being retaliated against for "attempts to defend his civil rights" but not pleading facts in

support). Plaintiff alleges that he was falsely accused of watching and printing pornography and trying to harm himself, and that ASD failed to properly respond and address the parents' concerns during a meeting. (Compl. ¶¶ 56-62.) Specifically, it is alleged that ASD staff told his parents that "they had two choices, to take A.M. out of the school or agree to never contact A.M. or the school again while A.M. is enrolled." (Compl. ¶ 62.) In general, Plaintiff takes issue with how ASD educated, disciplined, responded to, and handled A.M.'s behavior and addressed, or failed to address, his parents' concerns.

Based on the three "incidents," Plaintiff sets forth six counts against ASD. Those counts are: common law negligence; negligent infliction of emotional distress; battery; assault; intentional infliction of emotional distress; and violations of Title III of the Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act. As to Hammond and Doe, Plaintiff alleges battery, assault, intentional infliction, and violations of the ADA and Rehabilitation Act. Specifically, Plaintiff alleges that he was discriminated against for being deaf. As to the West Hartford defendants, Plaintiff alleges violations of § 1983, violations of the ADA and Rehabilitation Act, and state law claims similar to those raised against ASD. (Generally, Compl.) The only federal question claim against the ASD defendants is the ADA and Rehabilitation Act claim contained in Count Ten.

The Second Circuit disfavors discrimination claims where the person is receiving the services because of his disability. Plaintiffs fail to establish that A.M. was "otherwise qualified" despite his disability. Moreover, Plaintiffs fail to set forth how A.M. was discriminated against and what services he did not receive. Both of these failures are

fatal to claims under the ADA and Rehabilitation Act. Assuming his claims come within the Acts, the claims are still not recognized because Plaintiffs fail to sufficiently plead a claim for injunctive relief or money damages under either of the Acts.

## II. LEGAL STANDARD

In ruling on a motion to dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court takes as true all of the well-pleaded factual allegations. When all the well-pleaded factual allegations are taken as true, only where the claim is plausible on the merits as assessed under the applicable law can it survive. Simms v. City of New York, No. 11-4568-cv, 2012 U.S. App. LEXIS 9819, *2-3 (2d Cir. May 16, 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). There must be sufficient factual matter as opposed to mere legal conclusions to justify the cause of action. Id. at *2. Where no claim is recognizable, the case must be dismissed. Fed. R. Civ. P. 12(b)(6).

This Court is not required to accept as true legal conclusions pled as factual allegations. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement. . . .Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

### III.    LAW AND ARGUMENT

A.    <u>Plaintiff Fails to State a Claim Under the ADA or Rehabilitation Act</u>

Title III of the ADA prohibits discrimination "on the basis of disability" in the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" by private individuals who own, lease, or operate a place of public accommodation. 42 U.S.C. § 12182(a). The Rehabilitation Act of 1973, a predecessor to the ADA, provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "Together, the Rehabilitation Act and the ADA prohibit discrimination against qualified disabled individuals by requiring that they receive 'reasonable accommodations' that allow them to access and partake in public services and public accommodations." <u>Aquino v. Prudential Life and Casualty Insurance Company</u>, 419 F. Supp. 2d 259 (E.D.N.Y. 2005) (citing <u>Powell v. National Board of Medical Examiners</u>, 364 F.3d 79 (2d Cir. 2004)).

To state a claim under Title III, Plaintiff must allege "(1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide." <u>Camarillo v. Carrols Corp.</u>, 518 F.3d 153 (2d Cir. 2008). A claim under the Rehabilitation Act is similar, but in addition a plaintiff must plead that defendant receives federal funding. In addition, the Rehabilitation Act requires that the denial of access be due "*solely* by reason of . . . [a

plaintiff's] disability." <u>Flight v. Gloeckler</u>, 68 F.3d 61, 64 (2d Cir. 1995) (emphasis added).

Plaintiff here has failed to bring himself within the ambit of either of the Acts for two reasons. First, as viewed in the context of the American School for the Deaf—a school serving those with the same disabilities as Plaintiff—our Court of Appeals and District Court precedent are clear that it is extremely difficult to establish that a plaintiff is a qualified individual under the Acts. Claims under the Act require a comparative analysis between the disabled and the able-bodied, and challenges concerning treatment between the disabled are disfavored. Second, and similar to the first reason, Plaintiff fails to set out any facts to support that he was discriminated against on the basis of his disability. Our District Court precedent makes clear that challenges concerning the level of services or treatment are not recognized under the Acts. A plaintiff must allege a factual basis to show that he was treated differently than the non-disabled *on account of his disability*.

In addition, the Complaint entirely fails to set out the requirements for a claim for injunctive relief. There is no allegation or basis on which to infer continuing harm, and Plaintiffs have not pled that money damages are insufficient. In fact, Plaintiffs are seeking money damages under the Rehabilitation Act and state law claims. As to the Rehabilitation Act monetary claims, however, Plaintiffs have not pled the requisite intentional conduct or deliberate indifference. This is required under the Rehabilitation Act for money damages. There is no plausible or cognizable claim stated under either the ADA or the Rehabilitation Act.

      i.    *Plaintiff is not an "otherwise qualified individual" within the meaning of the Acts*

In order to come under the ADA or Rehabilitation Act, a plaintiff must be an "otherwise qualified" individual. The Court of Appeals for the Second Circuit and this Court have addressed the application of this concept in situations similar to the instant case. Under that precedent, because Plaintiff himself has a disability that qualifies him for the services that he receives at ASD, it cannot be said that he is "otherwise qualified in spite of his handicap." Therefore, he does not come under the Acts.

"[S]ection 504 prohibits discrimination against a handicapped individual only where the individual's handicap is unrelated to, and thus improper to consideration of, the services in question." <u>U.S. v. University Hospital</u>, 729 F.2d 144, 156 (2d Cir. 1984) (citing <u>Doe v. New York University</u>, 666 F.2d 761 (2d Cir. 1981)). The term "otherwise qualified"

> refers to a person who is qualified *in spite of* her handicap [and] an institution is not required to disregard the disabilities of a handicapped [person], provided the handicap is relevant to reasonable qualifications [for the services at issue], or to make substantial modifications in its reasonable standards or program to accommodate handicap individuals but may take [a person's] handicap into consideration, along with other relevant factors, in determining whether she is qualified [for the services at issue].

<u>Id</u>. (quoting <u>Doe v. New York University</u>, 666 F.2d 761, 775 (2d Cir. 1981)) (emphasis added).

"Where the handicapping [condition] is related to the conditions to be treated, it will rarely, if ever, be possible to say with certainty that a particular decision was discriminatory." <u>Id</u>. at 157.

Our Court of Appeals applied the foregoing <u>University Hospital</u> and <u>Doe</u> concepts in the <u>Cushing v. Moore</u> case. 970 F.2d 1103 (2d Cir. 1992). This is the analysis that applies with equal force to the instant case. Focusing on the "in spite of" requirement, in addressing whether a drug addict could be considered "otherwise qualified" for rehabilitation services this Court stated:

> First, the "otherwise qualified" language is simply inapplicable to the present context. *It is difficult to envision a drug addict receiving methadone treatment in spite of his drug addiction, because it is his drug addiction that brings him to participate in the methadone program in the first place*. . . . Second, as we have observed in the past, we must be careful in applying § 504's "otherwise qualified" language to programs where a patient's handicap gives rise to the need for the services in question.
>
> . . .
>
> As we noted in <u>University Hospital</u>, <u>Doe</u> established that "section 504 prohibits discrimination against a handicapped individual only where the individual's handicap is unrelated to, and thus improper to consideration of, the services in question." As a corollary, therefore, § 504 must allow a federally-funded program . . . the ability to consider a patient's handicap where that handicap "gives rise to, or at least contributes to, the need for services."

<u>Id</u>. at 1108-1109 (quoting <u>U.S. v. University Hospital</u>, 729 F.2d 144 (2d Cir. 1984)) (emphasis added). The Court of Appeals concluded: "[T]he Rehabilitation Act *does not create a cause of action based on a handicap that is directly related to providing the very services at issue."* <u>Id</u>. at 1109 (emphasis added). The same analysis applies to the ADA claim. <u>Dennin v. Connecticut Interscholastic Athletic Conference</u>, 913 F. Supp. 663, 670-671 (D. Conn. 1996) ("The Rehabilitation Act analysis for an "otherwise qualified" individual is utilized to determine these elements under the ADA.")

This Court had the opportunity to apply the same concepts in <u>Fetto v. Sergi</u>, 181 F. Supp. 2d 53 (D. Conn. 2001). There this Court determined that

the plaintiff has not shown that he is otherwise qualified within the meaning of the ADA**.** The plaintiff essentially alleges that he was treated differently than those children who are in the residential care of the DCF because he did not receive the same level of services provided to them. However, the purpose of statutes such as the Rehabilitation Act and the ADA is to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the non-disabled. . . . In contrast, the plaintiff asks the Court to compare his treatment to that of certain other disabled individuals--those who receive services in segregated or residential facilities. However, the Rehabilitation Act does not require all handicapped persons to be provided with identical benefits.

Id. at 61-62.

In Fetto the Court also quoted and relied on the Second Circuit decision in Doe v.

Pfrommer, 148 F.3d 73 (2d Cir. 1998) (not to be confused with Doe v. New York

University, supra):

Further, as the Second Circuit noted in **Doe v. Pfrommer**, 148 F.3d 73 (2d Cir. 1998), it is difficult to apply the typical "otherwise qualified" analysis *when the only reason that the plaintiff was eligible for the service or program at issue is that he was disabled*. In Doe, the court stated:

We have previously recognized that where the handicapping condition is related to the benefit provided, it will rarely, if ever, be possible to say with certainty that a particular decision was discriminatory. . . . The question of who is otherwise qualified and what actions constitute discrimination under § 504 would seem to be two sides of a single coin; the ultimate question is the extent to which a [federal funds] grantee is required to make reasonable modifications in its programs for the needs of the handicapped. . . . The appropriate focus in the case before us, therefore, is not whether [the plaintiff] is otherwise qualified for . . . benefits, but the extent to which the defendants are required by the anti-discrimination statutes to modify their programs to meet all of [the plaintiff's] needs as a disabled individual. . . . Neither the ADA nor the Rehabilitation Act establish an obligation to meet a disabled person's particular needs vis-a-vis the needs of other handicapped individuals, but mandate only that the services provided . . . to non-handicapped individuals not be denied to a disabled person because he is handicapped.

Fetto, 181 F. Supp. 2d 53, 62-64 (emphasis added).

The practical import of these concepts is perhaps best summarized as follows: challenges to the allocation of resources among the disabled are disfavored. Flight v. Gloeckler, 68 F.3d 61, 64 (2d Cir. 1995). "The Act does not require all handicapped persons to be provided with identical benefits." P.C. v. McLaughlin, 913 F.2d 1033, 1041 (2d Cir. 1990). This Court recognized as much in M.K. v. Sergi, 554 F. Supp. 2d 175 (D. Conn. 2008):

> Like the plaintiffs in Doe, plaintiffs here are attempting to invoke the anti-discrimination provisions of the ADA and the Rehabilitation Act to challenge the adequacy of the services provided by [defendant], not illegal disability discrimination. As the Supreme Court specifically noted in [Olmstead v. L.C., 527 U.S. 581 (1999)], the ADA does not impose . . . a standard of care for whatever services they provide to the disabled nor does it require [defendants] to provide a certain level of benefits to individuals with disabilities. Yet, this is precisely what plaintiffs are challenging in this case – the level of benefits provided by [defendant] to [plaintiff]. Such a claim is not cognizable under the anti-discrimination provisions of either the ADA or § 504.

Id. at 198 (citations omitted).

This approach accords with that of other jurisdictions. The Court of Appeals for the Seventh Circuit expressly recognized and highlighted that an "otherwise qualified person is one who is able to meet all of a program's requirements *in spite of* his handicap." Mallett v. Wisconsin Division of Vocational Rehabilitation, 130 F.3d 1245, 1257 (7th Cir. 1997) (emphasis original) (cited by Second Circuit in Doe v. Pfrommer). The Mallett court went on to uphold the lower court's dismissal of the Rehabilitation Act claims for failure to state a claim. Id. at 1258.

Likewise, Plaintiff here has failed to state a claim under either of the Acts because he is not an "otherwise qualified individual" as that term is applied in this Circuit and elsewhere. Plaintiff was receiving services from ASD for his disability, by virtue of

his disability, and for that reason he cannot meet the "in spite of" requirement that is expressly required under the law. His claims are akin to those raised in the foregoing cases in that he complains of services for which he is uniquely qualified due to his disability, and therefore he is not entitled to a raise legal challenges under either of the Acts to the alleged failure to provide or conform those services to his needs. He is not "otherwise qualified" for the services.

ii. *Plaintiff does not set forth a claim of discrimination*

Aside from "threadbare" conclusions, Plaintiff has also failed to plead a case of discriminatory treatment as defined under either the ADA or the Rehabilitation Act.

"The purpose of Title III of the ADA and the Rehabilitation Act is to eliminate discrimination on the basis of disability and to ensure evenhanded treatment *between the disabled and the able-bodied*." Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir. 1998) (emphasis added). There is a widely accepted comparative aspect required in stating a discrimination claim. "With no allegation of disparate treatment, no claim for discrimination under the ADA or Rehabilitation Act lies." Goonewardena v. North Shore Long Island Jewish Health System, No. 11-CV-2456, 2013 U.S. Dist. LEXIS 42529, 21 (E.D.N.Y. March 25, 2013) (quotations omitted).

The Court of Appeals for the Second Circuit applies the same analysis to ADA claims as to Rehabilitation Act claims. Henrietta D. v. Bloomberg, 331 F.3d 261 (2d Cir. 2003); see also Powell v. National Board of Medical Examiners, 364 F.3d 79 (2d Cir. 2004) (in most cases the same standards apply). A plaintiff can base a claim of disability discrimination on "any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable

accommodation." Brief v. Albert Einstein Coll. of Med., 423 F. App'x 88, 90 (2d Cir. 2011) (quoting Fulton v. Goord, 591 F.3d 37 (2d Cir. 2009)); Smith, 410 F. App'x at 406. However, the Rehabilitation Act goes a step further than the ADA and requires that the denial of access be due "*solely* by reason of . . . [a plaintiff's] disability." Flight v. Gloeckler, 68 F.3d 61, 64 (2d Cir. 1995) (emphasis added).

To state a claim under any of the three theories of liability requires that plaintiff make a comparison between the handicapped and the able-bodied. The absence of such a comparison is unquestionably fatal. The Second Circuit has addressed this requisite comparative aspect. In upholding the lower court's grant of summary judgment to the defendant, the Court of Appeals stated:

> [W]e note that the law governing § 504 did not clearly establish an obligation to meet P.C.'s particular needs vis-a-vis the needs of other handicapped individuals, but mandated only that services provided nonhandicapped individuals not be denied P.C. because he is handicapped.

P.C. v. McLaughlin, 913 F.2d 1033, 1041 (2d Cir. 1990).

Then, in Doe v. Pfrommer, supra, the Court of Appeals for the Second Circuit made the following apt observation and provided some guidance to the lower court:

> Doe's discrimination claims do not draw their substance from any allegedly discriminatory animus against the disabled, either under a disparate treatment or disparate impact theory. *Such an argument would be beyond tenuous given VESID's sole purpose in assisting the disabled*. . . . In reviewing Doe's discrimination claims, therefore, it is important to bear in mind that the purposes of such statutes are to eliminate discrimination on the basis of disability and to *ensure evenhanded treatment between the disabled and the able-bodied*. In the case before us, it is clear that the plaintiff is in essence challenging the adequacy of his VESID services, not illegal disability discrimination.

Doe v. Pfrommer, 148 F.3d 73, 82-84 (2d Cir. 1998).

Based on this, the lower court dismissed the claims for failing to make out a prima facie case, and the Court of Appeals affirmed. Doe v. Pfrommer, 148 F.3d 73, 81-82 (2d Cir. 1998).

In the Doe case Plaintiff had a personality disorder and was receiving vocational training from the Rochester Office of Vocational Educational Services for Individuals with Disabilities ("VESID"). He was discharged from the program for outbursts related to his mental disabilities, but was told he could return once he got treatment for those issues. He filed suit, alleging violations of the ADA and Rehabilitation Act. There was no alleged discrimination, particularly considering that he was receiving services by virtue of being disabled, not *in spite of* being disabled. See Section III.A.i, supra. The Doe Court relied on the above-quoted portion of the McLaughlin opinion:

> As discussed previously, the central purpose of the ADA and § 504 of the Rehabilitation Act is to assure that disabled individuals receive "evenhanded treatment" in relation to the able-bodied. . . . [N]either the ADA nor the Rehabilitation Act establish an obligation to meet a disabled person's particular needs vis-a-vis the needs of other handicapped individuals, but mandate only that the services provided by VESID to non-handicapped individuals not be denied to a disabled person because he is handicapped. Because the plaintiff in [Flight v. Gloeckler, 68 F.3d 61, 63-64 (2d Cir. 1995)] did not allege disparate treatment as compared to the benefits given to non-handicapped individuals, we affirmed the dismissal of the discrimination claim.

Doe v. Pfrommer, 148 F.3d 73, 82-84 (quoting P.C. v. McLaughlin, 913 F.2d 1033, 1041 (2d Cir. 1990)) (citations omitted) (emphasis added).

The Court of Appeals for the Second Circuit recently had the opportunity to address the comparative discrimination requirement[2] in an ADA case in Krist v. Kolombos Restaurant, Inc., 688 F.3d 89, 94-95 (2d Cir. 2012) (upholding lower court

---

[2] The otherwise qualified requirement and requirement that there be discrimination to make out a case under the Acts are related and intertwined issues. In short, under either analysis the Plaintiff here fails to state a claim for discrimination in the context of a school for the deaf.

finding that plaintiff was not excluded from facility and was not denied any goods or services). In that case the plaintiff claimed she was discriminated against by a restaurant because she had obtained a service dog. She had been going to the restaurant for some time prior to her getting the dog, and the wait staff would accommodate her sight condition by reading her the menu. After she got the dog, she alleged that things changed. Despite evidence that she was verbally harassed over her service dog, the lower court still found that "she was never forced to leave the restaurant" and that she had "full access to all of the facilities that she had access to before." Id. at 93. Recognizing that the plaintiff returned to the restaurant multiple times after the alleged discrimination, the Court of Appeals upheld the lower court's finding that the plaintiff had not been excluded, stating "we see no basis for overturning the district court's findings that [plaintiff] was neither actually nor constructively excluded . . . and that she was not denied any of [defendant's] good or services." Id. at 96, 97. In other words, plaintiff failed to establish that she was treated any differently than the non-disabled on account of her disability.

The District Court likewise had opportunity to address the requirement that there actually be discriminatory treatment in an ADA and Rehabilitation Act claim. "[T]he basic analytical framework of the ADA requires a comparative component, in other words, there must be something different about the way the plaintiff is treated by reason of . . . disability." M.K. v. Sergi, 554 F. Supp. 2d 175, 198 (D. Conn. 2008) (quoting Henrietta D. v. Bloomberg, 331 F.3d 261 (2d Cir. 2003)) (quotations omitted). The Court granted summary judgment in favor of defendants because the "comparative component . . . is wholly lacking from plaintiffs' discrimination claims." Id.

This Court also dismissed claims for failure to state a claim on the same grounds in Leocata v. Wilson-Coker, 343 F. Supp. 2d 144 (D. Conn. 2004). Different treatment can be established either by showing outright acts of discrimination or a "demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities." Leocata, 343 F. Supp. 2d 144, 154-56 (quoting Henrietta D. v. Bloomberg, 331 F.3d 261 (2d Cir. 2003)). "[Plaintiff] does not allege that defendants have denied her any Medicaid benefits due to her disability. Nor does she allege any discriminatory animus by defendants against persons with dementia. She fails to meet the standards required by the Second Circuit for a valid claim under the ADA." Leocata, 343 F. Supp. 2d 144, 154-56 . As a result, this Court dismissed the ADA claims.

There is no factual allegation of discriminatory treatment in the Complaint; Plaintiffs fail to claim what services were different, let alone that they were different. Simply challenging, as does the Plaintiff in the instant case, the treatment received does not form the basis of a discrimination claim. Id; see also Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir. 1998) ("A challenge to the adequacy of services provided, as opposed to a challenge alleging denial of services provided to non-disabled persons, is not a valid claim under the ADA or Rehabilitation Act.") Section 504 does not "speak in terms of specific components of a benefit, program, or activity, or access to any specific components. . . . [and] does not ensure equal medical treatment, but does require equal access to and equal participation in a patient's own treatment. . . . Therefore, the statute cannot be construed to unambiguously provide a private right of action to obtain any specific or tangible components of the benefits of a program or activity." Taylor v.

Housing Authority of New Haven, 267 F.R.D. 36, 43 (D. Conn. 2010) (citing Loeffler v. Staten Island University Hospital, 582 F.3d 268, 275 (2d Cir. 2009)).

For instance, in Stephens v. Shuttle Associates, LLC plaintiff brought suit under Titles II and III of the ADA and the Rehabilitation Act. 547 F. Supp. 2d 269 (S.D.N.Y. 2008). Defendants moved to dismiss pursuant to Rule 12(b)(6). Plaintiff had a disability that impaired her ability to walk and her speech. She boarded one of defendants' buses while on a motorized wheelchair, and upon boarding the driver told her to turn off her wheelchair without reason. Plaintiff refused, and as a result, again without apparent reason, the bus was emptied and plaintiff was forced to wait on the bus with the driver for 40 minutes until a supervisor arrived, relieved the driver, and transported plaintiff to her destination. The court held that plaintiff failed to plead that she was denied services or discriminated against because of her disability. Id. at 277. Because there was only one "isolated incident" as opposed to a pattern of the same conduct, there was no inference to be drawn that defendants had failed to properly train their employees how to deal with disabled passengers. Id. at 278. Further, plaintiff ultimately made it to her final destination so was not denied anything. The court dismissed the ADA and Rehabilitation Act claims.

Plaintiff has not pled allegations sufficient to meet any of the three ways to make out a disability claim—intentional conduct, disparate impact, or failure to accommodate. Here, Plaintiff has failed to set out any facts to support that there was intentional conduct on the part of ASD to discriminate or that there was any discriminatory animus. There is no allegation that he did not receive services or benefits that were provided to the non-disabled. Each of the "incidents" involves entirely different and unrelated

conduct and is not a "pattern" sufficient to set forth a claim of intentional conduct. Even if there is a "pattern" Plaintiff fails to explain how that pattern was in any way related to his disability (because he cannot meet the in spite of requirement). This leaves only the disparate impact and reasonable accommodations theories.

Under a disparate impact theory, discrimination cannot be based on merely following standard procedure that is applicable to all. Powell v. National Board of Medical Examiners, 364 F.3d 79, 89 (2d Cir. 2004). There is simply no allegation supporting that any policy or practice disparately impacted one group over another, and there is no claim that the policy had a "significantly adverse or disproportionate impact on persons of a particular type." Tsombanidis v. West Haven Fire Department, 352 F.3d 565, 574-75 (2d Cir. 2003). Unless the policies and procedures were applied in a way to deprive plaintiff access as compared to the non-handicapped, which is not alleged, the ADA claim is insufficiently plead. Anderson v. North Shore Long Island Jewish Healthcare System's Zucker Hillside Hospital, No. CV 12-1049, 2013 U.S. Dist. LEXIS 29972, 26-27 (E.D.N.Y. Jan. 23, 2013). Without such a comparative component to his Complaint, it is insufficient. This is simply not a case that fits within the confines of the disability acts.

For instance, a court dismissed claims where plaintiff did "not allege[] that [defendant] has treated 'psychiatrically disabled' persons differently from persons who are not 'psychiatrically disabled'" because it failed to state a disparate treatment claim. Likewise, plaintiff did not allege that defendant's failure to accommodate resulted in a denial of any benefits or services, either, so there was no disparate impact claim. Anonymous v. Goddard Riverside Community Center, Inc., No. 96 Civ. 9198, 1997 U.S.

Dist. LEXIS 9724, 8 (S.D.N.Y. July 10, 1997). Where plaintiffs fail to allege how a defendant discriminated or failed to accommodate and simply set forth conclusions, as here, courts routinely dismiss their claims. E.g. Leftridge v. Support Enforcement Services, No. 3:12-cv-150 (WWE), 2013 U.S. Dist. LEXIS 65994 (May 3, 2013) (dismissing ADA claim because "Plaintiff's allegations are flawed as conclusory and vague, particularly with regard to his failure to allege . . . how he was discriminated on the basis of his alleged disability."); Smith v. NYCHA, 410 Fed. Appx. 404 (2d Cir. 2011) (upholding Rule 12(b)(6) dismissal where plaintiff failed to allege any facts supporting any theory of discrimination in that she did not allege how the conduct was due to disability or that defendant responded differently to non-disabled tenants; she did not allege a policy or procedure had a disparate impact; likewise, plaintiff failed to request accommodation and cannot proceed on reasonable accommodation theory); Byng v. Delta Recovery Services, LLC, No. 6:13-CV-733, 2013 U.S. Dist. LEXIS 106099 (N.D.N.Y. July 1, 2013) (dismissing ADA claim because exclusion of plaintiff was because "he left and broke the rules, not because of his alleged disabilities."); Schenk v. Citibank, 2010 U.S. Dist. LEXIS 130305 (S.D.N.Y. Dec. 9, 2010) (dismissing claim because plaintiff failed to allege how defendant failed to accommodate disability); Maccharulo v. Gould, 643 F. Supp. 2d 587, 602 (S.D.N.Y. 2009) (complaint failed to allege how defendant discriminated and simply set forth legal conclusions); Ajuluchuku-Levy v. Schleifer, 2009 U.S. Dist. LEXIS 116953 (E.D.N.Y. Dec. 15, 2009) (even though plaintiff pled that defendant was aware of disability, she failed to allege facts supporting that alleged conduct was "because of her disability"); Aquino v. Prudential Life and Casualty Insurance Company, 419 F. Supp. 2d 259 (E.D.N.Y. 2005) (finding that

plaintiff failed to state a claim and stating that "[t]he Court is compelled to stretch its imagination to determine how these actions by Prudential had anything to do with the Plaintiffs' alleged disability"). Here, it is not apparent on the face of the Complaint how Plaintiff was discriminated against and what services he was denied[3].

Plaintiff fails to claim that he was treated differently than an able-bodied person in the same circumstances, and fails to plead how or why he was treated differently. There is no discriminatory or comparative component to Plaintiff's claims. In fact, under our precedent, he cannot make out such a claim given that he was receiving services because of his disability, not *in spite of* it. See Section III.A.i, supra. "[Plaintiff's] discrimination claims do not draw their substance from any allegedly discriminatory animus against the disabled, either under a disparate treatment or disparate impact theory. *Such an argument would be beyond tenuous given [ASD]'s sole purpose in assisting the disabled*. . . ." Doe v. Pfrommer, 148 F.3d 73, 82-84 (2d Cir. 1998). He simply fails to set forth a plausible claim that he was discriminated against on the basis of his disability.

Finally, a reasonable accommodation theory under the ADA requires an allegation that a defendant refused to make a change to a policy or procedure when such a change is necessary to avoid discrimination. Generally, Tsombanidis v. West Haven Fire Department, 352 F.3d 565 (2d Cir. 2003). In addition, the defendant must be given an opportunity to make the accommodation, and if an administrative procedure is in place that procedure must be taken advantage of by Plaintiff before he can make out

---

[3] If indeed Plaintiff claims that he was denied educational services, then the proper course would be to take advantage of the IDEA administrative process first, not file a federal lawsuit. If, on the other hand, Plaintiff claims that he was abused, then the ADA and Rehabilitation Act do not provide a remedy and his claims are simply State tort law claims. Either way, the case should not be in federal court.

a reasonable accommodation case. Id. at 578-79; see also Bentley v. Peach and Quite Realty 2 LLC, 367 F. Supp. 2d 341 (E.D.N.Y. 2005) (defendants must refuse accommodations). A defendant discriminates "only by failing to provide a reasonable accommodation for the 'disability' which is the impairment" at issue. Felix v. New York City Transit Authority, 324 F.3d 102, 105 (2d Cir. 2003). There must be a link between the accommodation and the disability. Id. Here, Plaintiff has wholesale failed in making a claim under the reasonable accommodation theory.

Plaintiff fails to plausibly set forth how his condition—being deaf and having ADHD—was not accommodated. In fact, it flies in the face of plausibility to claim that his condition—deafness—was not accommodated at the American School for the Deaf. Nor has Plaintiff set out what accommodations he requested, if he requested accommodations, and if so whether ASD was given a chance to implement those accommodations. Thus, even assuming Plaintiff can state a claim based on failure to accommodate in the context of other deaf students, See Section III.A.i, supra, Plaintiff has completely failed to set forth the required parts of a claim.

It is worth noting that even assuming that Plaintiff comes within the "in spite of requirement," an alleged assault does not provide a basis for a discrimination claim. Goonewardena v. North Shore Long Island Jewish Health System, No. 11-CV-2456, 2013 U.S. Dist. LEXIS 42529 (E.D.N.Y. March 25, 2013). In that case plaintiff was forcibly detained and injected with anti-psychotic drugs. He claimed that he was discriminated against on the basis of his mental disability. The court stated: "Once again, plaintiff is challenging the adequacy of the treatment that he received and, therefore, has not stated a plausible claim of discrimination under the ADA or

Rehabilitation Act. Id. at 21. "Unless the policies and procedures at issue were applied in a discriminatory way, or were used to deprive plaintiff of access to a program, benefit, or service, plaintiff's ADA claim is insufficiently pled." Id. at 23-24 (quotations omitted). The court held that: "Plaintiff has not alleged that he was subjected to any bodily contact pursuant to the hospital's alleged policy and practice of searching all persons with certain psychiatric conditions and symptoms who seek treatment in its emergency department and walk-in clinic. Rather, he alleges that his clothes were removed as part of an unlawful assault. While plaintiff may have a claim for assault, he does not have a claim for disability discrimination." Id. at *27-28. The court dismissed the ADA and Rehabilitation Act claims. Id. at 28.

This case stretches the application of the ADA and Rehabilitation Act to circumstances not contemplated. If anything, Plaintiff's claims are State law tort claims, but not federal discrimination claims. Plaintiff here fails to set forth any plausible claim of discrimination as defined in the Acts.

iii.     *Plaintiff lacks standing for injunctive relief under ADA*

The only relief available under Title III of the ADA—the only provision of the ADA relied on by Plaintiff—is injunctive relief. Krist v. Kolombos Restaurant, Inc., 688 F.3d 89, 96 (2d Cir. 2012); see also Powell v. National Board of Medical Examiners, 364 F.3d 79 (2d Cir. 2004) (monetary damages not available under Title III of ADA); Berkery v. Kaplan, 518 Fed. Appx. 813 (11th Cir. 2013) (no private right of action for money damages under Title III); Fiorica v. University of Rochester, No. 07-CV-6232T, 2008 U.S. Dist. LEXIS 27638 (W.D.N.Y. Mar. 31, 2008) (past conduct does not support injunctive relief under Title III); Anonymous v. Goddard Riverside Community Center,

Inc., No. 96 Civ. 9198, 1997 U.S. Dist. LEXIS 9724 (S.D.N.Y. July 10, 1997) (dismissing ADA claim because no money damages for past discrimination). Plaintiff has failed to properly make out a case for injunctive relief under the ADA.

"To obtain a permanent injunction . . . a party must show that irreparable harm is likely, the inadequacy of any remedy at law, and that the balance of equities favors injunctive relief." First Step, Inc. v. New London, 247 F. Supp. 2d 135, 156 (D. Conn. 2003). Plaintiff "bears the burden of demonstrating [he] will suffer 'real and imminent, not remote, irreparable harm' in the absence of a remedy." Mercer v. Brunt, 299 F. Supp. 2d 21, 19-20 (D. Conn. 2004) (quoting Henrietta D. v. Bloomberg, 331 F.3d 261 (2d Cir. 2003)). "Irreparable harm is an injury that is not remote or speculative but actual and imminent, and for which a monetary award cannot be adequate compensation." First Step, Inc. v. New London, 247 F. Supp. 2d 135, 156.

"A plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm." McCormick v. School District of Mamaroneck, 370 F.3d 275, 284 (2d Cir. 2004); see also L.A. v. Lyons, 461 U.S. 95, 105 (1983) ("[Plaintiff] would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation, or for questioning, or (2) that the City ordered or authorized police officers to act in such manner.").

Plaintiff has wholesale failed to set forth a claim for injunctive relief. Plaintiff has not provided any basis on the face of the Complaint to determine that monetary relief is

inadequate, let alone plead that monetary relief is inadequate. In fact, the Plaintiff seeks monetary damages under the Rehabilitation Act and state law negligence claims. This begs the question how injunctive relief under Title III of the ADA is authorized if money damages are sufficient. E.g., Safka Holdings, LLC v. iPlay, Inc., No. 12 Civ. 7301, 2013 U.S. Dist. LEXIS 77730 (S.D.N.Y. May 20, 2013) (dismissing prayer for injunctive relief because failed to plead inadequate remedy at law).  Moreover, Plaintiff has failed to plead on-going or irreparable harm, or any basis on which the Court could determine that Plaintiff expects to be subject to future harm. In fact, the Complaint is based entirely on the three past "incidents" and in no way notifies the Court or Defendant what continuing harm exists. Past conduct will not support prospective injunctive relief. Plaintiff has failed to plead a basis for injunctive relief; therefore, the ADA claim must fail because injunctive relief is the only available remedy under Title III.

Moreover, injunctive relief also requires a court to "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).To this end, our Rules require that a complaint set forth a "demand for the relief sought." Fed. R. Civ. P. 8(a). Simply alleging "injunctive relief" is insufficient. Ward v. Kennard, 133 F. Supp. 2d 54, 59 (D.D.C. Dec. 12, 2000). Here, Plaintiff's broadly seek injunctive relief "to correct the policies and practices of Defendants that violate applicable Federal and State statutes." (Compl., Generally.) There is no delineation of what is sought as between each of the Defendants, and no specification of what "policies and practices" the request is addressed to. This fails to meet even the bare pleading requirements of our Rules, let alone provide a basis for the heightened details required for injunctions.

       iv.    *Plaintiff does not properly plead a claim for monetary damages under the Rehabilitation Act*

The Rehabilitation Act allows for the same remedies as Title VI of the Civil Rights Act of 1964. <u>Taylor v. Housing Authority of New Haven</u>, 267 F.R.D. 36, 42 (D. Conn. 2010) However, a violation of the Rehabilitation Act requires "bad faith" or "gross misjudgment." <u>Scruggs v. Meriden Board of Education</u>, No. 3:03-CV-2224 (PCD), 2007 U.S. Dist. LEXIS 58517, 52 (D. Conn. Aug. 10, 2007). Moreover, monetary damages are available under the Rehabilitation Act only for intentional violations. <u>Loeffler v. Staten Island University Hospital,</u> 582 F.3d 268, 275 (2d Cir. 2009). Intentional violations require either animosity or ill will, or that a "policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the policy." <u>Id</u>. (citations omitted). Deliberate indifference in turn requires "at a minimum" that someone with authority to address the discrimination have "actual knowledge of discrimination in the recipient's programs and fails to adequately respond." <u>Id</u>. at 276 (citations omitted); see also <u>Powell v. National Board of Medical Examiners</u>, 364 F.3d 79 (2d Cir. 2004) (deliberate indifference required for money damages under Rehabilitation Act). Plaintiff has failed to plead facts to support an entitlement to money damages.

       v.    *No individual liability under the Acts*

Plaintiff cannot maintain claims under the Acts against Hammond or Doe in their individual or official capacities. There is no such thing as an "official" capacity suit against a private individual. There is no "office" held by Hammond or Doe. Beyond that, the ADA does not impose liability on individual employees. <u>Pruitt v. Mailroom Technology, Inc</u>., No. 3:06cv1530 (WWE), 2007 U.S. Dist. LEXIS 57808, 14 (D. Conn.

Aug. 9, 2007); see also <u>Spiegel v. Schulmann</u>, 604 F.3d 72, 79-80 (2d Cir. 2010) (individuals may not be sued in their individual or personal capacity under the ADA or Rehabilitation Act); <u>Dorsey v. Sullivan</u>, 2013 U.S. Dist. LEXIS 126 (W.D.N.Y. Sept. 3, 2013) (no individual liability under ADA or Rehabilitation Act); <u>Saldana v. Crane</u>, No. 12-cv-573, 2013 U.S. Dist. LEXIS 127681 (D. Minn. July 26, 2013) (individuals not subject to suit under ADA); <u>Bebry v. Aljac, LLC</u>, No. 12-CV-4945, 2013 U.S. Dist. LEXIS 98337 (E.D.N.Y. July 13, 2013) (no individual liability for employees); <u>Schenk v. Verizon</u>, 2010 U.S. Dist. LEXIS 142140 (S.D.N.Y. Dec. 8, 2010) ("When an institution operates a place of public accommodation, individual employees of that institution may not be held liable under the Rehabilitation Act for discrimination on the basis of a disability."); <u>Maccharulo v. Gould</u>, 643 F. Supp. 2d 587 (S.D.N.Y. 2009) (neither official nor individual capacity suits allowed under ADA or Rehabilitation Act); <u>M.K. v. Sergi</u>, 554 F. Supp. 2d 175, 194 n. 11 (D. Conn. 2008) (citing numerous cases in this Circuit for proposition that there is no individual liability under Rehabilitation Act or ADA).

C.     <u>The Court Should Refrain from Exercising Pendant Jurisdiction over ASD</u>

Upon dismissal of the ADA and Rehabilitation Act claims against the ASD defendants, there will be no independent basis for federal jurisdiction over ASD, Hammond, or Doe. All that will remain against the ASD defendants will be State law claims of negligence, assault, battery, and infliction of emotional distress.

Even if the federal question claims survive against the West Hartford Defendants, the ASD State law claims are not "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. "The district courts may decline to

exercise supplemental jurisdiction [when] . . . the claim raises a novel or complex issue of State law . . . [or] the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(d). "In exercising its discretion with respect to retaining supplemental jurisdiction, the district court must balance several factors 'including considerations of judicial economy, convenience, and fairness to litigants." Correspondent Servs. Corp. v. First Equities Corp., 338 F.3d 119, 126 (2d Cir. 2003). Such an analysis was undertaken in Sullivan v. Stein, 487 F. Supp. 2d 52 (D. Conn. 2007), and led to dismissal even though some federal claims against other defendants remained:

> [T]he Court concludes that efficiency and fairness would best be served by declining to exercise supplemental jurisdiction. . . . The Court bases its decision to refrain from exercising supplemental jurisdiction . . . on two considerations. First, the remaining claims against the State Defendants and Defendants Whalen and Williams arise from completely different facts than the remaining claims against J.W. Green. Second, the remaining claims against all of the Municipal and State Defendants are purely state law claims befitting the expertise and experience of a state court. Therefore, taking all factors into consideration, the Court believes it is in the interests of efficiency and fairness to refrain from exercising supplemental jurisdiction over the remaining state law claims.

Id. at 88-89.

This decision was reached even though the "Court is aware that there might exist some degree of overlap between the still-pending federal claim against J.W. Green and the state law claims against the Municipal Defendants." Id. at 89.

The claims against ASD do not arise out of the same circumstances as the claims against the Town of West Hartford Defendants. Rather, the claims against ASD arise out of the educational relationship between Plaintiff and ASD. Moreover, the claims against ASD arise out of two other occurrences that do not involve the Town of

West Hartford at all. It would not be fair to ASD to be forced into federal court on unrelated claims if there were no independent basis for federal jurisdiction, and it would not serve the ends of judicial economy to try unrelated claims together. In fact, it may lead to jury confusion because not all incidents involve the Town. Mere overlap on one of the incidents is not sufficient to justify supplemental jurisdiction.

## Conclusion

There is no plausible claim under either of the Acts. Because Plaintiff cannot establish that he is an "otherwise qualified individual" or was discriminated against within the meaning of the acts, re-pleading would be futile and the Court should simply dismiss the claims with prejudice and refrain from exercising supplemental jurisdiction.

Respectfully submitted,

DEFENDANT,
AMERICAN SCHOOL FOR THE
DEAF

By____/s/ Joseph J. Blyskal_____
Joseph J. Blyskal
Fed Bar No.: ct28055
David G. Hill & Associates, LLC
180 Glastonbury Blvd, Suite 202
Glastonbury, CT    06033
860-657-1012/Fax 860-657-9264
jblyskal@dhill-law.com

## CERTIFICATION

This is to certify that on this 11th day of December 2013, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Joseph J. Blyskal
Joseph J. Blyskal
