**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

-----------------------------------------------------------------

A.M., a minor, by his parents and natural guardians Audley Muschette and Judith Muschette,

                Plaintiff,

     v.

AMERICAN SCHOOL FOR THE DEAF, TOWN OF WEST HARTFORD, PAUL W. GIONFRIDDO in his individual and official capacities, CHRIS HAMMOND in his individual and official capacities, ELWIN ESPINOZA in his individual and official capacities,

                Defendants.

**CIV. 13-cv-1337 (WWE)**

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

-----------------------------------------------------------------

## COMPLAINT

Plaintiff, A.M., a minor, by his parents and natural guardians, Audley Muschette and Judith Muschette, through their attorneys, Eisenberg & Baum, LLP, and as and for his Complaint against Defendants, hereby alleges as follows:

## PRELIMINARY STATEMENT

1.     This is an action in defense of the rights of a disabled twelve-year-old student to be educated in a safe environment free from unnecessarily violent and terrifying encounters with school staff and armed police officers. Plaintiff A.M., a twelve-year-old boy with disabilities at the time of the incident described herein, brings this action against the American School for the

1

Deaf ("ASD") and its staff as well as the Town of West Hartford and its police officers who negligently, recklessly, intentionally, and maliciously injured Plaintiff and deprived him of his civil and constitutional rights. Plaintiff is deaf and also suffers from Attention Deficit Hyperactivity Disorder (ADHD), a behavioral impairment.

2.     The police officers' actions were a result of the Town of West Hartford's policies and practices governing armed police officers in school settings with children with disabilities. The officers who tasered and handcuffed A.M. were guided by policies and training that failed to acknowledge the important differences between regulating adult criminal behavior and regulating young children with disabilities within the educational environment.

3.     The police officers' actions were also a result of the Town of West Hartford's failure, as a matter of policy and practice, to treat tasers as weapons capable of inflicting serious injury and even death. The Town of West Hartford's current policies and practices encourage officers to deploy tasers in a manner that poses undue risks to people, especially young disabled children.

4.     The actions of the American School for the Deaf, through its staff, were a result of lack of training and affirmative policies and practices which do not provide sufficient safeguards to protect its students. Specifically, ASD has a practice of failing to sufficiently train its staff, resulting in discrimination and failures to properly accommodate individuals with Attention Deficit Hyperactivity Disorder (ADHD) and other behavioral impairments. While under the care and supervision of the American School for the Deaf, Plaintiff has been subjected to repeated physical, psychological, and emotional abuse by ASD staff members because of his behavioral impairment. ASD and its staff have discriminated against Plaintiff, denied him accommodations, and treated him differently than his peers because of his behavior impairment. In addition, ASD

2

staff members have repeatedly interfered with the parental rights of Judith Muschette and Audley Muschette to communicate with Plaintiff and receive reasonable updates as to the status of Plaintiff's wellbeing.  ASD has caused severe physical, emotional, and psychological harm to Plaintiff.

5.      As a result of his traumatic encounter with Town of West Hartford police officers and American School for the Deaf staff, Plaintiff has suffered serious and permanent injuries and continues to suffer from pain and emotional distress. Plaintiff's parents and natural guardians have incurred and continue to incur medical costs resulting from his injuries. Plaintiff therefore asks this Court to declare the actions of the Town of West Hartford's Police Department and its officers and American School for the Deaf and its staff to be in violation of his Constitutional, Federal, and State law rights. In addition, Plaintiff asks this court to order Defendants to make changes to their policies and practices and to compensate him for his injuries.

## PARTIES

6.      At all relevant times alleged herein Plaintiff A.M. was a twelve-year-old student at the American School for the Deaf and a resident of Bronx County, New York. A.M. appears in this action by and through his natural guardians, mother, Judith Muschette and father, Audley Muschette.

7.      Plaintiff, A.M., is profoundly deaf and primarily communicates in American Sign Language.

8.      Plaintiff, A.M., also has Attention Deficit Hyperactivity Disorder ("ADHD") and participates in the P.A.C.E.S program at the American School for the Deaf, a program for the special needs of deaf and hard of hearing children and youth whose emotional or behavioral disorders prevent them from being served in more traditional programs.

9.      At all relevant times hereinafter mentioned, Defendant TOWN OF WEST HARTFORD was and still is a statutory municipality organized under the laws of the State of Connecticut and controls and is responsible for the actions of the Town of West Hartford Police Department and its officers.

10.      Defendant PAUL GIONFRIDDO has been, at all times relevant to this Complaint, a police officer employed by the TOWN OF WEST HARTFORD, acting in the course and scope of his employment with the Town of West Hartford Police Department. Upon information and belief, he resides within the State of Connecticut, and is being sued in his official and individual capacities.

11.      Defendant CHRISTOPHER LYTH has been, at all times relevant to this Complaint, a police officer employed by the TOWN OF WEST HARTFORD, acting in the course and scope of his employment with the Town of West Hartford Police Department. Upon information and belief, he resides within the State of Connecticut, and is being sued in his official and individual capacities.

12.      Defendant AMERICAN SCHOOL FOR THE DEAF is a private, educational organization located in West Hartford, Connecticut and controls and is responsible for the actions of its staff.

13.      Defendant CHRIS HAMMOND has been, upon information and belief, at all times relevant to this Complaint, an employee of the AMERICAN SCHOOL FOR THE DEAF, acting in the course and scope of his employment with the AMERICAN SCHOOL FOR THE DEAF. Upon information and belief, he resides within the State of Connecticut, and is being sued in his official and individual capacities.

14.      Defendant ELWIN ESPINOZA has been, upon information and belief, at all times

relevant to this Complaint, an employee of the AMERICAN SCHOOL FOR THE DEAF, acting in the course and scope of his employment with the AMERICAN SCHOOL FOR THE DEAF. Upon information and belief, he resides within the State of Connecticut, and is being sued in his official and individual capacities.

**JURISDICTION AND VENUE**

15.     This Court has subject-matter jurisdiction over plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1343(a).

16.     This Court has supplemental jurisdiction over all state common law claims pursuant to 28 U.S.C. § 1367(a).

17.     Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) in that the Plaintiffs' claims arise within the District of Connecticut.

18.     Pursuant to Connecticut General Statute § 7-465, the Plaintiff timely served the Town of West Hartford with a notice of claim on July 17, 2013.

**STATEMENT OF FACTS**

**MARCH 2013 INCIDENT**

19.     Upon information and belief, in March of 2013, Defendant ELWIN ESPINOZA, an ASD staff member, then known by A.M. and his parents by the name of "E", without justification or cause, and due to lack of training and discriminatory animus toward Plaintiff because of his behavioral impairment, choked Plaintiff A.M, and forcibly threw him to the ground, resulting in significant head injuries and scarring to Plaintiff A.M.

20.     Upon information and belief, A.M. was taken to the ASD nurse, but not the hospital.

21.     ASD staff did not inform A.M.'s parents, Audley Muschette and Judith Muschette, what had happened to their child before learning about the assault from A.M. after he returned

from the nurse.

22.     Later that evening, an ASD staff member known as "Steve B." called Mr. & Mrs. Muschette to inform them about what had happened.

23.     ASD staff member "Steve B." informed Mr. & Mrs. Muschette that a staff member by the name of "E" injured Plaintiff A.M. A.M's parents demanded to know "E"'s full name; however, "Steve B." refused to give any additional information.

24.     As a result of the assault by the ASD staff member against their child, Mr. and Mrs. Muschette setup an appointment with Clinical Director of the P.A.C.E.S program, Ms. Karen Wilson.

25.     Mr.  Muschette had a meeting with Ms. Wilson to discuss what happened to A.M. However, Ms. Wilson did not provide any further information as to what happened or provide the name of the staff member who assaulted A.M.

26.     Upon information and belief, no investigation or reporting was done as required by C.G.S.A. § 17a-101 et seq. and no follow-up information was given to the A.M's parents.

27.     Upon information and belief, ELWIN ESPINOZA is still employed by ASD.

### APRIL 2013 INCIDENT

28.     On April 30, 2013 ASD staff was taking food orders from ASD students.

29.     A.M. tried to place his order with staff members, however he was denied his requests.

30.     A.M. then proceeded to call his parents for help through a videophone.

31.     After approximately five minutes of conversation, Defendant Chris Hammond, an ASD staff member, maliciously and without provocation, and due to lack of training and discriminatory animus toward Plaintiff due to his behavioral impairment, pulled the wires out of

the videophone and disconnected the call.

32.    A.M. became upset that he was prevented from speaking with his parents and attempted to flee the school.

33.    ASD staff members Defendant Chris Hammond, Carlos Martinez, and Daylan Grumberg chased A.M. into a nearby construction site on campus.

34.    Defendant Chris Hammond informed Plaintiff that he was going to kill him and push him into an unsafe area of the construction site.

35.    Defendant Chris Hammond proceeded to grab Plaintiff and punched Plaintiff in the face with closed fists.

36.    Plaintiff A.M. dropped to the ground as a result of the punch.

37.    Plaintiff then grabbed a stick on the ground to defend himself from attack from multiple adult staff members.

38.    Defendant Chris Hammond, Carlos Martinez, and Daylan Grumberg proceeded to back away when A.M. grabbed the stick.

39.    As the ASD staff members backed away, Plaintiff turned and crouched down calmly with his back facing the staff members.

40.    Upon information and belief, Town of West Hartford Police was called to the scene, again due to discriminatory animus and impatience toward Plaintiff because of his behavioral impairment.

41.    Defendants, Town of West Hartford Police officer Paul Gionfriddo and Officer Christopher Lyth arrived at the American School for the Deaf.

42.    Without any warning or notice to A.M., Town of West Hartford Police officer Paul Gionfriddo tasered A.M., a twelve-year-old deaf boy with disabilities, while A.M. was sitting

calmly with his back facing Officer Gionfriddo.

43.     One prong of the taser hit A.M.'s mid-back and another hit his buttocks causing burns, paralysis, and pain throughout his body as he hit the ground and police rushed him and forcibly handcuffed him.

44.     Defendants, Police Officer Paul Gionfriddo and Officer Christopher Lyth, did not attempt to physically apprehend A.M. or use less dangerous physical methods before wrongfully tasering him.

45.     Plaintiff A.M. did not receive any communication or warning from the police officers before being tasered.

46.     Plaintiff did not see anyone try to communicate with him before being tasered as it was dark and had his back turned to personnel present at the scene.

47.     Upon information and belief, Officer Gionfriddo and Officer Lyth knew that Plaintiff was a deaf child.

48.     Upon information and belief, Officer Gionfriddo knew or should have known that tasers are extremely dangerous, potentially lethal weapons.

49.     Plaintiff A.M. was not charged with resisting arrest nor did he attempt to resist any arrest.

50.     Plaintiff A.M. never attempted to harm or threaten any police officers.

51.     After being tasered, A.M. was taken to the hospital at Connecticut Children's Medical Center in Hartford, Connecticut.

52.     A.M's back was burned and he sustained scarring at the locations where he was hit with the taser prongs.

53.     A.M. was and is expected to remain seriously traumatized by the above-mentioned

events.

54.     A.M's parents were not notified of the April 30, 2013 incident until late the following evening on May 1, 2013.

**JUNE 2013 INCIDENT**

55.     Upon information and belief, ASD tried to retaliate against A.M. for his attempts to defend his civil rights by attempting to oust Plaintiff from ASD.

56.     Upon information and belief, on June 21, 2013 A.M. was falsely accused of watching and printing pornography by ASD staff, who were motivated by discriminatory animus toward A.M. because of his behavioral impairment, in an attempt to upset and harass A.M.

57.     Upon information and belief, ASD then contacted police falsely claiming that A.M. was trying to kill himself by wrapping wires around his neck as well as by stabbing himself with a pen and scissors.

58.     Upon information and belief, after being evaluated by medical staff at the nearby hospital, the doctors told A.M.'s father that there was no physical evidence or other evidence they could find, aside from what ASD staff informed them, that A.M. tried to kill himself or had suicidal thoughts.

59.     Upon information and belief, A.M. was discharged from the hospital on Sunday, June 23, 2013.

60.     A.M.'s parents kept A.M. home until Wednesday, June 26, 2013.

61.     On that day, a meeting was setup between ASD staff and A.M.'s parents.

62.     An ASD staff member, Jeff Bravin, told A.M.'s parents that they had two choices: to take A.M. out of the school or to agree to never contact A.M. or the school again while A.M. is enrolled.

## CONTINUING STATEMENT OF FACTS

63.     ASD staff consistently favor other students over Plaintiff because of Plaintiff's behavioral impairment (i.e., ADHD).

64.     In particular, ASD staff consistently choose to believe explanations of other students instead of those of Plaintiff.

65.     Additionally, ASD staff use excessive physical force to restrain Plaintiff due to his behavioral impairment, even resorting to hitting and pushing him.

66.     For example, on one occasion, ASD staff falsely accused Plaintiff of swearing and punished him by hitting him on his shoulder.

67.     ASD staff also punished Plaintiff by hitting him in the face, causing cuts.

68.     ASD staff also threaten future corporal punishment against Plaintiff due to his behavioral impairment.

69.     Plaintiff has been hospitalized on multiple occasions due to the abusive actions of ASD staff and ASD's failure to properly handle his behavioral impairment.

70.     ASD staff regularly and maliciously spread misinformation about Plaintiff to Plaintiff's peers due to Plaintiff's behavioral impairment, causing Plaintiff to have difficulty maintaining friendships.

71.     ASD as an institution is aware of Plaintiff's behavioral impairment and condones the abusive practices of its staff in dealing with Plaintiff and other students with behavioral impairments.

72.     ASD staff promoted disciplinary actions that exacerbated Plaintiff's behavioral impairment, such as corporal punishment and solitary confinement.

73.     ASD staff regularly confined Plaintiff to his room for hours at a time without any

ability to communicate with his peers and without videophone access.

74.     ASD staff have intentionally prevented Plaintiff from joining the mainstream activities enjoyed by his peers at ASD due to his behavioral impairment.

75.     ASD staff refused to allow Plaintiff to join the mainstream activities enjoyed by his peers even when he exhibited consistently good behavior.

76.     The P.A.C.E.S Program at ASD segregates certain deaf students from the general population of deaf students and subjects those segregated to different, discriminatory treatment because of their mental, emotional, and/or behavioral disabilities.

77.     ASD staff often call the police to intimidate students with behavioral impairments, including Plaintiff.

78.     In particular, police officers from the Town of West Hartford respond to such calls from ASD staff on a regular and ongoing basis.

79.     Upon information and belief, the reason that ASD staff so often call police to deal with students is because ASD has failed to adequately train its staff to deal appropriately with students with behavioral impairments.

80.     ASD therefore neglects students with behavioral impairments, including Plaintiff, and treats them worse than other deaf students at ASD.

81.     Plaintiff is still a student at ASD, is still in the P.A.C.E.S Program, and continues to suffer these discriminatory and abusive acts on a regular basis.

82.     Plaintiff now brings this action to remedy all of the unlawful treatment that A.M has received from AMERICAN SCHOOL FOR THE DEAF, the TOWN OF WEST HARTFORD, and their respective employees.

## FIRST CAUSE OF ACTION

### EXCESSIVE USE OF FORCE PURSUANT TO 42 U.S.C. § 1983 AGAINST DEFENDANT GIONFRIDDO

83.     In committing the acts complained of in paragraphs "41" through "53", Defendant PAUL GIONFRIDDO acted under color of state law with deliberate indifference to deprive Plaintiff of his constitutionally protected right to be free from the excessive use of force as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution, as enforced by 42 U.S.C. § 1983.

84.     The actions of Defendant PAUL GIONFRIDDO were the direct and proximate cause of damages to A.M. as alleged in this Complaint.

## SECOND CAUSE OF ACTION

### MUNICIPAL LIABILITY CLAIM PURSUANT TO 42 U.S.C. § 1983 AGAINST DEFENDANT TOWN OF WEST HARTFORD: FAILURE TO TRAIN

85.     In committing the acts of complained of in paragraphs "41" through "53", TOWN OF WEST HARTFORD Police Officer PAUL GIONFRIDDO, acting under color of state law with deliberate indifference, deprived the Plaintiff of his right to be free from excessive force;

86.     TOWN OF WEST HARTFORD's training and policies were not adequate to prepare its police officers to handle the usual and recurring situations with which they must deal, especially in dealing with children or persons with disabilities, especially deafness;

87.     TOWN OF WEST HARTFORD was deliberately indifferent to the obvious and foreseeable consequences of its failure to train its police officers adequately; and

88.     The failure of the TOWN OF WEST HARTFORD to provide adequate training caused the deprivation of the Plaintiff's rights by the Defendant's police; that is, the Defendant's failure to train is so closely related to the deprivation of the Plaintiff's rights as to be the moving

force that caused the ultimate injury.

## THIRD CAUSE OF ACTION

## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT OF 1990 AND SECTION 504 OF THE REHABILITATION ACT OF 1973 AGAINST DEFENDANT TOWN OF WEST HARTFORD

89.     All preceding paragraphs are repeated and incorporated herein by reference.

90.     Defendant TOWN OF WEST HARTFORD violated A.M.'s right to be free from discrimination on the basis of his disability pursuant to Title II of the Americans With Disabilities Act of 1990 and § 504 of the Rehabilitation Act of 1973.

91.     Specifically, Defendant TOWN OF WEST HARTFORD failed to properly train or have proper procedures in place for police officers to have peaceful encounters with deaf persons and failed to establish a proper policy for handling such encounters, which resulted in the discrimination against A.M. that caused him to suffer his injuries.

92.     Title II of the ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities by a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

93.     Similarly, pursuant to § 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C. § 794.

94.     In order to establish a violation under the ADA or Rehabilitation Act, a plaintiff must demonstrate that (1) he is a qualified individual with a disability; (2) that the defendants are

subject to the ADA; and (3) that plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities. *See* Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir. 1998). Additionally, to establish a violation under the Rehabilitation Act, a plaintiff must show that the defendants receive federal funding. Id.

95.     Defendant TOWN OF WEST HARTFORD is a public entity that receives federal funding.

96.     A.M is a qualified person with a disability as he is profoundly deaf and has Attention Deficit Hyperactivity Disorder.

97.     Moreover, Defendants PAUL GIONFRIDDO and CHISTOPHER LYTH, who were employed by Defendant TOWN OF WEST HARTFORD, and who interacted with A.M, regarded him as being disabled as they knew he was deaf.

98.     A.M. was entitled to the same law enforcement services that Defendant TOWN OF WEST HARTFORD provides to other non-disabled persons.

99.     Specifically, A.M. was entitled to the benefit of a lawful exercise of police powers, including but not limited to the right not to be subjected to an unlawful use of force.

100.     Defendant TOWN OF WEST HARTFORD discriminated against A.M. solely because of his disabilities.

101.     As a direct and proximate cause of the Defendants' actions, A.M. suffered serious and permanent injury and continues to suffer from pain, emotional distress, humiliation, and fear.

### FOURTH CAUSE OF ACTION

**MUNICIPAL LIABILITY CLAIM PURSUANT TO 42 U.S.C. § 1983 AGAINST DEFENDANT TOWN OF WEST HARTFORD: FAILURE TO SUPERVISE**

102.     In committing the acts of complained of in paragraphs "41" through "53", TOWN

OF WEST HARTFORD, acting under color of state law with deliberate indifference, deprived the Plaintiff of his right to be free from excessive force.

103.    The TOWN OF WEST HARTFORD's supervision of its police officers CHISTOPHER LYTH and PAUL GIONFRIDDO was not adequate to ensure that they were able to properly handle the usual and recurring situations with which they must deal, especially in dealing with children or persons with disabilities, especially deafness.

104.    The TOWN OF WEST HARTFORD was deliberately indifferent to the obvious and foreseeable consequences of its failure to supervise its police officers adequately.

105.    The failure of the TOWN OF WEST HARTFORD to provide adequate supervision caused the deprivation of the Plaintiff's rights by police officers CHISTOPHER LYTH and PAUL GIONFRIDDO, that is, the TOWN OF WEST HARTFORD's failure to supervise, is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury.

## FIFTH CAUSE OF ACTION

## NEGLIGENCE AGAINST DEFENDANT, AMERICAN SCHOOL FOR THE DEAF

106.    Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

107.    ASD and its staff owed a duty to provide A.M. with a safe education consistent with his constitutional and statutory rights and to perform a reasonable investigation of any claims of physical, mental, and emotional abuse that were brought to their attention.

108.    ASD and its staff breached their duty to Plaintiff in one, more than one, or all of the following ways, including, but not limited to:

      A.    Failing to conduct a reasonable investigation into A.M.'s abuse;

      B.    Concealing evidence of physical, mental and emotional abuse;

C.  Failing to have A.M. examined by qualified medical personnel to treat injuries as a result of physical abuse;

D.  Failing to notify A.M.'s parents of the incidents of physical abuse in a timely manner;

E.  Failing to allow A.M.'s parents the right to communicate with their child;

F.  Failing to provide adequate supervision of A.M. to prevent any further incidents of physical, mental, and emotional abuse after being made aware of the first instance of assault in March of 2013;

G.  Failing to take appropriate action including, but not limited to taking administrative, criminal, and/or disciplinary action in response to incidents of physical, mental, and emotional abuse against A.M.;

H.  Failing to report to the proper authorities the incidents of physical, mental, and emotional abuse against A.M. had occurred;

I.  Failing to properly hire, train, and supervise its staff to prevent child abuse from occurring;

J.  Allowing physical and psychological harm to occur to plaintiff; and/or

K.  Failing to properly train and monitor its employees and agents regarding proper and nondiscriminatory methods of interacting with students with mental, emotional, and/or behavioral impairments.

109.  ASD and its staff's breach of their duty to A.M. was a direct and proximate cause of A.M. being battered and assaulted at ASD.

110.  ASD and its staff's acts and omissions demonstrated a conscious disregard for A.M.'s safety, and safety of other students, such that an award of punitive damages is warranted;

111.    As a direct and proximate cause of school officials' negligence, A.M. suffered damages in the following ways, including but not limited to:

    A.    Damages for his denial of access to an educational environment free from physical, mental and emotional abuse;

    B.    Damages suffered in the form of past, present, and future physical, psychological and emotional pain and suffering, mental anguish and loss of enjoyment of life;

    C.    Past, present, and future medical expenses for physical, emotional, and mental health.

## SIXTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT, AMERICAN SCHOOL FOR THE DEAF

112.    Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

113.    ASD and its staff owed a duty to A.M. to provide him with a safe private school education consistent with his constitutional and statutory rights and to perform a reasonable investigation of any claims of physical, mental and emotional abuse that were brought to their attention.

114.    ASD and its staff breached their duty to A.M. in one, more than one, or all of the following ways:

    A.    Failing to conduct a reasonable investigation into A.M.'s claims;

    B.    Concealing evidence of physical, mental, and emotional abuse;

    C.    Failing to have A.M. examined by qualified medical personnel to treat injuries as a result of physical abuse;

    D.    Failing to notify A.M.'s parents of the incidents of physical abuse in a

timely manner;

E.      Failing to allow A.M.'s parents the right to communicate with their child;

F.      Failing to provide adequate supervision of A.M. to prevent any further incidents of physical, mental, and emotional abuse after being made aware of the first instance of abuse in March of 2013;

G.      Failing to take appropriate action including, but not limited to taking administrative, criminal, and/or disciplinary action in response to incidents of physical, mental, and emotional abuse against A.M.;

H.      Failing to report to the proper authorities the incidents of physical, mental, and emotional abuse against A.M. had occurred;

I.      Failing to properly hire, train, supervise, and discipline its staff to prevent child abuse from occurring;

J.      Allowing physical and psychological harm to occur to plaintiff; and/or

K.      Failing to properly train and monitor its employees and agents regarding proper and nondiscriminatory methods of interacting with students with mental, emotional, and/or behavioral impairments.

115.    ASD and its staff's breach of their duty to A.M. arose to the level of recklessness and gross negligence.

116.    ASD and its staff's breach of their duty to A.M. was a direct and proximate cause of A.M. being assaulted on the two specific occasions in 2013, and on other occasions, at ASD.

117.    ASD and its staff's acts and omissions demonstrated a conscious disregard for A.M.'s safety, and safety of other students, such that an award of punitive damages is warranted.

118.    As a direct and proximate cause of ASD and its staff's negligence, A.M. suffered

damages in the following ways, including but not limited to:

    A.    Damages for his denial of access to an educational environment free from physical, mental and emotional abuse;

    B.    Damages suffered in the form of past, present, and future physical, psychological and emotional pain and suffering, mental anguish and loss of enjoyment of life;

    C.    Past, present, and future medical expenses for physical, emotional, and mental health.

119.    ASD and its staff's breach of duty directly and proximately caused A.M. to suffer damages from emotional distress.

120.    ASD and its staff knew or should have realized that their negligent conduct involved an unreasonable risk of causing A.M. emotional distress.

121.    ASD and its staff's conduct caused A.M. to suffer significant emotional distress.

122.    ASD and its staff's acts and omissions demonstrated a conscious disregard for A.M.'s emotional wellbeing and safety, and the emotional well being and safety of other students, such that an award of punitive damages is warranted.

## SEVENTH CAUSE OF ACTION

### BATTERY IN VIOLATION OF CONNECTICUT LAW AGAINST DEFENDANTS PAUL GIONFRIDDO, CHRISTOPHER LYTH, CHRIS HAMMOND, ELWIN ESPINOZA, TOWN OF WEST HARTFORD, AND AMERICAN SCHOOL FOR THE DEAF

123.    Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

124.    Defendants PAUL GIONFRIDDO, CHRISTOPHER LYTH, CHRIS HAMMOND, and ELWIN ESPINOZA committed battery and excessive force upon plaintiff

A.M., by intentionally initiating offensive bodily contact with A.M. that is unreasonable under Connecticut law. The Defendants did so while acting as employees of the TOWN OF WEST HARTFORD or the AMERICAN SCHOOL FOR THE DEAF, in the course of their employment and the scope of their authority in furtherance of the interest of their employer.

125.   The actions of Defendants PAUL GIONFRIDDO, CHRISTOPHER LYTH, CHRIS HAMMOND, and ELWIN ESPINOZA were wanton, willful, malicious and/or negligent when their actions resulted in foreseeable injury to A.M.

126.   The TOWN OF WEST HARTFORD is liable for the actions of its police officers under theories of agency and respondeat superior.

127.   The AMERICAN SCHOOL FOR THE DEAF is liable for the actions of its staff under theories of agency and respondeat superior.

**EIGHTH CAUSE OF ACTION**

**ASSAULT IN VIOLATION OF CONNECTICUT LAW AGAINST DEFENDANTS PAUL GIONFRIDDO, CHRISTOPHER LYTH, CHRIS HAMMOND, ELWIN ESPINOZA, TOWN OF WEST HARTFORD, AMERICAN SCHOOL FOR THE DEAF**

128.   Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

129.   Defendants   PAUL   GIONFRIDDO,   CHRISTOPHER   LYTH,   CHRIS HAMMOND, and ELWIN ESPINOZA committed an assault upon plaintiff A.M., by undertaking physical conduct that unjustifiably placed A.E. in imminent apprehension of harmful contact that is unreasonable under Connecticut law. The defendants did so while acting as employees of the Town of West Hartford or ASD, in the course of their employment and in the scope of their authority in furtherance of the interest of their employer.

130.   The actions of defendants PAUL GIONFRIDDO, CHRISTOPHER LYTH, CHRIS HAMMOND, and ESPINOZA were wanton, willful, malicious and/or negligent when they could

have foreseen imminent injury to A.M.

131.    The TOWN OF WEST HARTFORD is liable for the actions of its police officers under theories of agency and respondeat superior.

132.    The AMERICAN SCHOOL FOR THE DEAF is liable for the actions of its staff under theories of agency and respondeat superior.

## NINTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANTS PAUL GIONFRIDDO, CHRIS HAMMOND, ELWIN ESPINOZA, AMERICAN SCHOOL FOR THE DEAF, AND TOWN OF WEST HARTFORD

133.    Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

134.    The acts herein complained of constitute extreme and outrageous conduct undertaken with intent to cause, or with a reckless disregard of the substantial probability of causing, severe emotional distress to Plaintiff, and these acts did in fact cause severe emotional distress to Plaintiff.

135.    Specifically, Defendants and/or their employees and agents, during the course of their duties, embarked upon a course of conduct including violent physical attack and gross abuse of authority designed to cause emotional and psychological stress to Plaintiff for no other purpose than to inflict such suffering.

136.    Defendants' actions, being taken in the context of the official authority and being directed against a helpless disabled child victim, were so outrageous as to exceed the bounds tolerated by society.

137.    The TOWN OF WEST HARTFORD is liable for the actions of its police officers under theories of agency and respondeat superior.

138.    The AMERICAN SCHOOL FOR THE DEAF is liable for the actions of its staff

under theories of agency and respondeat superior.

## TENTH CAUSE OF ACTION

**VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT OF 1990
AND SECTION 504 OF THE REHABILITATION ACT OF 1973
AGAINST DEFENDANT AMERICAN SCHOOL FOR THE DEAF**

139.     Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

140.     Defendant AMERICAN SCHOOL FOR THE DEAF violated A.M.'s right to be free from discrimination on the basis of his disability pursuant to Title III of the ADA and § 504 of the RA.

141.     Specifically, Defendant AMERICAN SCHOOL FOR THE DEAF discriminated against Plaintiff on the basis of his disability of Attention Deficit Hyperactivity Disorder. ASD did so by failing to properly train staff and failing to implement procedures to ensure peaceful encounters with individuals with Attention Deficit Hyperactivity Disorder or other emotional and/or behavioral issues, which resulted in the discrimination against A.M. that caused him to suffer his injuries. By so doing, Defendant AMERICAN SCHOOL FOR THE DEAF denied Plaintiff the benefits of his education that were afforded to students without ADHD.

142.     The objective of the ADA is to eliminate discrimination against individuals with disabilities. Section 302(a) of the ADA, 42 U.S.C. § 12182(a), prohibits discrimination "on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

143.     Similarly, pursuant to § 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability,

be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency[.] 29 U.S.C. § 794.

144.    In order to establish a violation under the ADA or Rehabilitation Act, a plaintiff must demonstrate that (1) he is a qualified individual with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiffs' disabilities. See Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir.1998). Additionally, to establish a violation under the Rehabilitation Act, a plaintiff must show that the defendants receive federal funding. Id.

145.    Defendant AMERICAN SCHOOL FOR THE DEAF is a private entity that receives federal funding, and at all times relevant to this action, was a place of public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7)(J).

146.    A.M is a qualified person with a disability, as compared with his peers at ASD, as he has Attention Deficit Hyperactivity Disorder, a behavioral impairment that substantially limits his major life activities.

147.    Moreover, Defendants CHRIS HAMMOND and ELWIN ESPINOZA, who were employed by Defendant AMERICAN SCHOOL FOR THE DEAF, interacted with A.M and regarded him as being disabled as they knew he had Attention Deficit Hyperactivity Disorder, a behavioral impairment that substantially limits his major life activities.

148.    A.M. was entitled to the same safe educational environment that Defendant AMERICAN SCHOOL FOR THE DEAF provides to other students.

149.    Specifically, A.M. was entitled to the benefit of a safe educational environment,

including the right not to be subjected to an unlawful use of force.

150. Defendant AMERICAN SCHOOL FOR THE DEAF discriminated against A.M. solely because of his disabilities.

151. As a direct and proximate cause of the Defendants' actions, A.M. suffered serious and permanent injury and continues to suffer from pain and emotional distress immense physical pain, humiliation, and fear.

## ELEVENTH CAUSE OF ACTION

## NEGLIGENCE AGAINST DEFENDANT, PAUL GIONFRIDDO

152. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

153. By virtue of the foregoing, Defendant, Paul Gionfriddo owed Plaintiff a duty of care and that duty was breached in Defendant Gionfriddo's negligence which resulted foreseeable injury to Plaintiff and was the proximate cause of Plaintiff's resulting injuries and damages he suffered.

154. As a direct and proximate result of the aforementioned acts Plaintiff suffered, and as set forth above, Plaintiff is entitled to be compensated for his suffered damages and harm.

## TWELVTH CAUSE OF ACTION

## NEGLIGENCE AGAINST DEFENDANT, TOWN OF WEST HARTFORD

155. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

156. At all times relevant hereto Defendant Gionfriddo was acting in the performance of his duties and within the scope of his employment with the Town of West Hartford.

157. The Defendant Town of West Hartford is liable for the damages suffered by Plaintiff as a result of the negligence of Defendant Gionfriddo pursuant to Connecticut General Statutes §7-465 and/or §7-101a.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, having stated his claims against the Defendants, respectfully requests judgment against Defendants as follows:

A) Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant TOWN OF WEST HARTFORD's practices, policies and procedures have subjected Plaintiff to an abuse of constitutional rights and discrimination in violation of 42 U.S.C. § 1983 and the ADA, 42 USC §§ 12101 et seq.,

B) Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant AMERICAN SCHOOL FOR THE DEAF's practices, policies and procedures have subjected Plaintiff to discrimination in violation of the ADA, 42 USC §§ 12101 et seq.,

C) Injunctive relief to correct the policies and practices of the Defendants that violate applicable Federal and Connecticut statutes;

D) Award such damages as will fully compensate Plaintiff in an amount to be proven at trial as provided for by applicable provisions of federal and state statutory and common law;

E) Award punitive damages as allowed by law to deter Defendants and others from similar conduct;

F) Award reasonable costs and attorneys' fees; pursuant to applicable provisions of federal and state statutory and common law;

G) Granting such further equitable and legal relief as this Honorable Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.


Dated:        April 22, 2015

Respectfully submitted,

EISENBERG & BAUM, LLP


By: _____
Andrew Rozynski, Esq.
Federal Bar # PHV-06283
Eisenberg & Baum, LLP
Attorneys for Plaintiffs
24 Union Square East, Fourth Floor
New York, NY 10003
(212) 353-8700
