IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
-----------------------------------------------------------X
A.M., a minor, by his parents and natural       :
guardians, AUDLEY MUSCHETTE and                 :        3:13 CV 1337 (WWE)
JUDITH MUSCHETTE                                :
                                                :
v.                                              :
                                                :
AMERICAN SCHOOL FOR THE DEAF;                   :
TOWN OF WEST HARTFORD; PAUL W.                  :
GIONFRIDDO, in his individual and official      :
capacities; CHRIS HAMMOND, in his               :        DATE: MARCH 22, 2016
individual and official capacities; ELWIN       :
ESPINOSA, in his individual and official        :
capacities; and CHRISTOPHER LYTH,               :
Lyth, in his individual and official capacities :
-----------------------------------------------------------X
```

RULING ON PLAINTIFF'S MOTION TO COMPEL (Dkt. #86) AND ON DEFENDANTS'
MOTION FOR PROTECTIVE ORDER (Dkt. #89)

On September 11, 2013, plaintiff, A.M., a minor who is hearing impaired, commenced this action by his parents and natural guardians, Audley and Judith Muschette (Dkt. #1), which was later superseded by an Amended Complaint, filed April 22, 2015 (Dkt. #77), in which plaintiff asserts claims of excessive force and municipal liability pursuant to 42 U.S.C. § 1983, violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. and of the Rehabilitation Act, 29 U.S.C. § 701, and state law claims of negligence, negligent infliction of emotional distress, battery, assault, and intentional infliction of emotional distress, arising out of encounters with defendants Elwin Espinosa (see Dkts. ##1, 51, 53) and Chris Hammond, staff members at defendant American School for the Deaf ["ASD"], and with defendant Town of West Hartford and its defendant police officers, Paul W. Gionfriddo and Christopher Lyth [collectively "the West Hartford Defendants"]. (Dkt. #77; see also Dkts. ##68, 76). On July 1, 2015, the West Hartford Defendants filed their

Answer and Affirmative Defenses (Dkt. #82), and on September 30, 2015, defendant ASD filed its Answer and Affirmative Defenses. (Dkt. #85).

On November 12, 2015, plaintiff filed the pending Motion to Compel, with brief, affidavits, and exhibits in support (Dkt. #86),[1] in response to which the West Hartford Defendants filed a brief in opposition and Motion for Protective Order on December 9, 2015. (Dkt. #89).  On December 22, 2015, plaintiff filed a reply brief (Dkt. #90), and on January 20, 2016, Senior U.S. District Judge Warren W. Eginton referred the pending motions to this Magistrate Judge.  (Dkt. #91).  Under the current Scheduling Order, discovery is to be completed by April 1, 2016 and dispositive motions are to be filed by May 1, 2016.  (Dkt. #79).[2]

For the reasons stated below, plaintiff's Motion to Compel (Dkt. #86) is <u>granted in part and denied in part</u>, and defendants' Motion for Protective Order (Dkt. #89) is <u>granted in part and denied in part</u>.

---

[1] Attached to plaintiff's brief in support (Dkt. #86) are the following fourteen exhibits: copy of Plaintiff's Initial Requests for Interrogatories Directed to the Town of West Hartford, Officer Paul W. Gionfriddo, & Officer Christopher Lyth, dated April 14, 2014 ["Interr."], and copy of Plaintiff's Initial Requests for Documents Directed to [the] Town of West Hartford, Officer Paul Gionfriddo, & Officer Christopher Lyth, dated April 14, 2014 ["Requests for Prod."](Exh. A); copy of Defendants The Town of West Hartford, Officer Paul Gionfriddo and Officer Christopher Lyth's Objections and Responses to Plaintiff's Interrogatories, dated June 14, 2014, and copy of Defendants The Town of West Hartford, Officer Paul Gionfriddo and Christopher Lyth's Objections and Responses to Plaintiff's Requests for Production, dated June 16, 2014 (Exh. B); copies of correspondence between counsel, dated January 20, February 11,  March 2, 11, and 25, May 7,  and September 11, 2015 (Exhs. C-E, G-I, L); copies of email correspondence between counsel, dated March 9, September 11,  and October 5 and 26, 2015 (Exhs. F, M); copy of Plaintiff's First Set of Requests for Admissions, Second Set [of] Requests for Interrogatories and Document Requests to Town of West Hartford, Officer Paul W. Gionfriddo, & Officer Christopher Lyth, dated May 7, 2015 (Exh. J); copy of Defendants The Town of West Hartford, Officer Paul Gionfriddo and Officer Christopher Lyth's Objections and Responses to Plaintiff's First Set of Requests for Admissions, and Second Set of Interrogatories and Document Requests, dated July 7, 2015 (Exh. K); and excerpts from the deposition transcript of Officer Christopher Lyth (Exh. N).

[2] <u>See</u> note 8 <u>infra</u>.

I. DISCUSSION

A. MOTION TO COMPEL STANDARD

The amendments to Rule 26(b)(1) of the Federal Rules of Civil Procedure allow discovery of

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).[3] "The burden of demonstrating relevance remains on the party seeking discovery, and the newly-revised rule 'does not place on the party seeking discovery the burden of addressing all proportionality considerations.'" State Farm Mut. Auto. Ins. Co. v. Fayda, No. 14 Civ. 9792 (WHP)(JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), quoting FED. R. CIV. P. 26(b)(1) advisory committee notes to 2015 amendment. Conversely, the "party resisting discovery has the burden of showing undue burden or expense." Id. (additional citations omitted).  "[T]o fall within the scope of permissible discovery, information must be 'relevant to any party's claim or defense.'  In order to be 'relevant' for Civil Rule 26 discovery purposes, information and evidentiary material must be 'relevant' as defined in Rule of Evidence 401." Bagley v. Yale Univ., No. 13 CV 1890 (CSH), 2015 WL 8750901, at *8 (D. Conn. Dec. 14, 2015); see FED. R. CIV. P. 26(b)(1), advisory committee notes to the

---

[3]"The 2015 amendments to the Federal Rules of Civil Procedure 'govern in all proceedings in civil cases' commenced after December 1, 2015, and, 'insofar as just and practicable, all proceedings [ ] pending' on that date." State Farm Mut. Auto. Ins. Co. v. Fayda, No. 14 Civ. 9792 (WHP)(JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015)(footnote omitted), quoting Order re: Amendments to the Federal Rules of Civil Procedure (April 29, 2015).  In his reply brief, plaintiff asserts that the "standard in effect at the time the papers were filed should remain controlling," but that "if the Court sees fit to apply the amended version of Rule 26, . . . the analysis may have changed slightly, . . . [but] the results remain the same."  (Dkt. #90, at 3, n.1 & 4).

3

2015 amendments. Federal Rule of Evidence 401 defines "relevant evidence" as evidence having "any tendency to make a fact more or less probable than it would be without the evidence[,] and . . . the fact is of consequence in determining the action." Discovery, however, "is concerned with 'relevant information' – not 'relevant evidence' – and that as a result the scope of relevance for discovery purposes is necessarily broader than trial relevance." Steven S. Gensler, 1 FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY RULE 26, V. DEPOSITIONS AND DISCOVERY (February 2016 Update)(footnotes omitted), citing, inter alia, Breon v. Coca-Cola Bottling Co. of New England, 232 F.R.D. 49, 52 (D. Conn. 2005). As amended, Rule 26(b)(1) explicitly provides: "[i]nformation within [the] scope of discovery need not be admissible in evidence to be discoverable."

### B. INTERSECTION BETWEEN PLAINTIFF'S CLAIMS AGAINST THESE DEFENDANTS AND TITLE II OF THE ADA

Plaintiff's claims in the Amended Complaint relate to an incident on April 30, 2013 involving the West Hartford Defendants (Dkt. #77, ¶¶ 28-50), an incident in March 2013 involving defendant Espinoza (id., ¶¶ 19-27), an incident on June 21, 2013 in which plaintiff generally alleges that "police" were contacted (id., ¶¶ 55-62), and continuing incidents with the staff of ASD (id., ¶¶ 63-82), in which plaintiff alleges that "police officers from the Town of West Hartford respond to such calls from ASD staff on a regular and ongoing basis." (Id., ¶ 78).

Plaintiff contends that how defendants "handled interacting and communicating with [p]laintiff [A.M.] is entirely relevant to whether [p]laintiff was denied the services, programs, or activities of the police department or was subjected to discrimination by the [d]efendants, as is evidence of whether [d]efendants had information regarding [p]laintiff's disability and

4

need for an interpreter, including whether an interpreter was requested." (Dkt. #90, at 7). As plaintiff argues, the information he seeks is relevant to his claims, and "would likely have been provided or acquired during any potential contact the police had with [A.M.] as well as any contact the police has with ASD regarding [A.M.]" (id.), as Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Defendants largely object to the outstanding interrogatory requests on relevance grounds, as there is no allegation of wrongdoing against the West Hartford Defendants in connection with the June 21, 2013 incident, and according to these defendants, they "relied entirely upon ASD professional staff to provide sign language communication with [A.M.][,]" and there was "no legal authority in 2013 that precluded the Town and its officers from so relying on the trained ASD staff to interpret and communicate for [A.M.] especially under the circumstances of this case[.]"  (Dkt. #89, at 5-7; see also id. at 8-15). Additionally, defendants object to the disputed production requests on grounds that plaintiff's requests seek information that is not relevant to any claim, defense or issue actually in the case asserted against these defendants, and defendants reiterate that the defendant officers had no reason "not to rely on ASD staff to provide necessary interpreter services" for the April 30, 2013 incident.  (Id. at 18; see also id. at 15-24).[4]

The case law on the applicability of Title II to cases such as this "is currently a subject of debate among the other Circuits." Ryan v. Vermont State Police, 667 F. Supp.

---

[4]Defendants inform the Court that they have complied with Request Nos. 7, 78, 79 and 92. (Dkt. #89, at 18, 22-23).

2d 378, 386 (D. Vt. 2009), citing Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1084 (11th Cir. 2007); see, e.g., Seremeth v. Bd. of Cty. Comm'rs of Frederick Cty., 673 F.3d 333, 338-41 (4th Cir. 2012)(employing case-by-case approach to determine whether compliance with ADA is required during police interactions); Hainze v. Richards, 207 F.3d 795, 801 (5th Cir.) (holding that "[t]o require . . . officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances . . . would pose an unnecessary risk to innocents[]"),[5] cert. denied, 531 U.S. 959 (2000); Gohier v. Enright, 186 F.3d 1216, 1220-21 (10th Cir. 1999)(recognizing that arrestees may be able to assert an ADA claim based on police conduct during an arrest, but leaving the question open).  In 2015, the U.S. Supreme Court granted certiorari on a question relevant to the issues in this case, namely, whether the foregoing provision "requires law enforcement officers to provide reasonable accommodations to a[] . . . violent, and mentally ill suspect in the course of bringing the suspect into custody." City & Cty. of San Francisco, California v. Sheehan ["Sheehan"], 135 S. Ct. 1765, 1772 (2015).  However, once certiorari was granted, all parties "argue[d] (or at least accept[ed] that § 12132 applies to arrests[,]" so, "[a]s a result, [the Supreme Court did] not think that it would be prudent to decide the question in [that] case." Id. at 1773.

Two months later, U.S. District Judge Valerie Caproni of the Southern District of New York, relying on a ruling issued by this Magistrate Judge in 2013, appropriately noted that "[t]he Second Circuit has yet to address the question whether and to what extent Title II of the ADA applied during an on-the-street interaction leading to an arrest." Williams v. City

---

[5]The Fifth Circuit also held that "[w]hile the purpose of the ADA is to prevent the discrimination of disabled individuals, we do not think Congress intended that the fulfillment of that objective be attained at the expense of the safety of the general public." Id.

of New York, 121 F. Supp. 3d 354, 365, n.12 (S.D.N.Y. 2015), citing Valanzuolo v. City of New Haven, 972 F. Supp. 2d 263, 273 (D. Conn. 2013). As the foregoing illustrates, this "issue, therefore, remains undecided." Williams, 121 F. Supp. 3d at 365, n.12.

Accordingly, plaintiff's discovery requests on the issue of accommodation are not irrelevant per se, but must also comport with the proportionality and relevance requirements set forth in Rule 26(b)(1). At the discovery stage, it is not for the Court to decide whether plaintiff's cause of action exists as it relates to the incident of June 2013, or even if it exists as it relates to plaintiff's general allegations regarding the West Hartford Defendants. Rather, to be discoverable, the information plaintiff seeks need only be "nonprivileged matter that is relevant to . . . [his] claim[s] . . . and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). With this backdrop in mind, the Court will now address the discovery requests that are the subject of the pending motion.

### C. INTERROGATORIES NOS. 4, 10, 12, 13, 18, and 19-22

#### 1. INTERROGATORIES NOS. 4 & 13

In Interrogatory No. 4, plaintiff seeks information regarding whether ASD staff requested an American Sign Language interpreter from the Town of West Hartford when they contacted police from 2010 to present, including on April 30, 2013 and June 21, 2013, the dates on which the interpreter was requested, the name of the person making the request, to whom the request was made, the response of defendants, and whether an interpreter was provided. (Dkt. #86, Brief at 6[6] & Exh. A, Interr. at 5). Similarly, in Interrogatory No. 13, plaintiff seeks "each and every date ASD contacted [d]efendants to

---

[6]The page numbers refer to the number at the bottom of plaintiff's brief, not to the numbers assigned by CM/ECF.

have the police come to the school regarding plaintiff, A.M.," the name of the person who contacted the police, the responding officers, the actions taken by the officers, whether any charges were filed against plaintiff, and the disposition thereof, if any. (Dkt. #86, Brief at 8 & Exh. A, Interr. at 7).

In response to Interrogatory No. 4, defendants argue that it is clear from the record in this case that they "relied entirely upon ASD professional staff to provide sign language communication" with plaintiff during the April incident, and "there are no allegations in the Amended Complaint that [West Hartford police] officers engaged in any misconduct whatsoever, let alone any constitutional or federal statutory violations on June 21, 2013, or on any other occasion." (Dkt. #89, at 6-8). In response to Interrogatory No. 13, defendants reiterate that there is the one incident alleged in the complaint relating to misconduct, and to the extent that this request seeks this breadth of information, such request is overly broad, cumulative, oppressive, unduly burdensome, harassing, and not proportional. (Id. at 9-11). Defendants are correct that plaintiff does not allege any misconduct by the West Hartford Defendants other than during the April 2013 incident. **On or before April 8, 2016,** the West Hartford Defendants shall respond to plaintiff's Interrogatories Nos. 4 and 13 only as they relate to the April 30, 2013 incident.

### 2. INTERROGATORIES NOS. 10 & 12

In these interrogatories, plaintiff seeks information regarding whether the defendant officers provided A.M. with accommodations during the June 21, 2013 encounter, and their reasons for not providing interpreters or any other form of communication during that encounter. (Dkt. #86, Brief at 7 & Exh. A, Interr. at 6, 7). Plaintiff alleges in the Amended Complaint that on that date, ASD "contacted police falsely claiming that A.M. was trying to

kill himself by wrapping wires around his neck as well as stabbing himself with a pen and scissors." (Dkt. #77, at ¶ 57). According to plaintiff, discovery has shown that officers were sent to ASD, and defendant Officer Lyth was one of the officers who responded. (Dkt. #86, Brief at 8; see id., Exh. N). However, plaintiff does not allege any involvement of this defendant, or of any of the other West Hartford Defendants, in his Amended Complaint, nor does he allege a constitutional or federal statutory violation by any of the West Hartford Defendants arising out of the June 21, 2013 incident, which is directed primarily toward defendant ASD. (Dkt. #77, at ¶¶ 55-62). Accordingly, plaintiff's Interrogatories Nos. 10 and 12 are irrelevant.

### 3. INTERROGATORY NO. 18

In this Interrogatory, plaintiff seeks a "response as to whether [defendants] contacted any interpreting agency in an effort to accommodate plaintiff's disability and to ensure effective communication[.]" (Dkt. #86, Brief at 9 & Exh. A, Interr. at 8). **On or before April 8, 2016**, the West Hartford Defendants shall respond only with respect to the April 2013 incident.

### 4. INTERROGATORIES NOS. 19-22

In these interrogatories, plaintiff seeks information regarding the West Hartford Defendants' policies and protocols for dealing with deaf and hard of hearing individuals, the training they provide to staff on how to deal with deaf and hard of hearing individuals, lists of interpreters to call, the qualifications of those interpreters, how those qualifications are determined, and whether they utilized interpreters and/or accommodations lists when called to a scene at ASD involving A.M. or any other student. (Dkt. #86, Brief at 10 & Exh. A, Interr. at 9). In response, defendants have produced a copy of West Hartford Police

Department's policy on emotionally disturbed persons, the "relevant portion" of "the State of Connecticut document[,]" and the complete training records for the defendant officers. (Dkt. #89, at 13). To the extent the West Hartford Defendants have not produced all documents responsive to these interrogatories as they relate to deaf and hard of hearing individuals, to interpreters, and to the qualifications of the interpreters, and as they relate to accommodations when called to a scene involving A.M.,[7] the West Hartford Defendants shall do so **on or before April 8, 2016**.

### D. PRODUCTION REQUEST NOS. 3-8, 13, 16, 66, 71, 74, 78-80, 91-92, 95 & 97

For the reasons explained in Section I.B. supra, and consistent with this Court's ruling in Section I.C. supra, the West Hartford Defendants shall respond to Request for Production Nos. 3, 4, 5, and 13, as they relate to the April 30, 2013 interaction alleged in the Amended Complaint (Dkt. #86, Exh. A., Requests for Prod. at 18-19), and defendants shall respond to Requests for Production Nos. 6, 8, 16, and 66. (Id. at 18-20, 26). Such documents shall be produced **on or before April 8, 2016**.

Plaintiff's Motion is denied as moot as to Requests Nos. 7, 78-79 and 92 in light of defendants' compliance. (Dkt. #89, at 18, 22-23).

Plaintiff's Motion is denied as to Request No. 71 (see Dkt. #86, Exh. A, Requests for Prod. at 26), as plaintiff may request A.M.'s juvenile file.

Plaintiff's Motion is denied as to Request No. 74 as "any and all policies that were in effect at that time" A.M. was in the "care of [d]efendants[]" (id. at 27) is, in defendants'

---

[7]In his brief, plaintiff relays that these interrogatories seek protocols relating to deaf and hard of hearing individuals, but the underlying Interrogatory No. 19 also seeks such protocols relating to the "disabled in general[.]"(Dkt. #86, Exh. A at 9). To the extent defendants have not already provided the requested protocols or policies (see Dkt. #89, at 13), defendants shall provide those that relate to deaf and hard of hearing individuals only.

words, "patently not 'proportional to the needs of this case.'" (Dkt. #89, at 21).

Plaintiff's Motion is <u>denied</u> as to Requests Nos. 80, 91, 95 and 97 (<u>see</u> Dkt. #86, Exh. A, Requests for Prod. at 27, 29), as these requests do not relate to the claims in plaintiff's Amended Complaint.

## II. CONCLUSION

For the reasons stated above, plaintiff's Motion to Compel (Dkt. #86) is <u>granted in part and denied in part</u> as follows:

is <u>granted in part</u> as to Interrogatories Nos. 4, 13 and 18, as they relate only to the April 30, 2013 incident;

is <u>denied</u> as to Interrogatories Nos. 10 and 12;

is <u>granted in part</u> as to Interrogatories Nos. 19-22 as they relate to deaf and hard of hearing individuals, interpreters, and qualifications, and as they relate to accommodations when called to a scene involving A.M.;

is <u>granted</u> as to Requests for Production Nos. 6, 8, 16 and 66;

is <u>granted in part</u> as to Requests for Production Nos. 3, 4, 5, and 13, limited to the April 30, 2013 interaction alleged in the Amended Complaint;

is <u>denied as moot</u> as to Requests for Production Nos. 7, 78-79 and 92 in light of defendants' compliance; and

is <u>denied</u> as to Requests for Production Nos. 71, 74, 80, 91, 95 and 97.

Defendants' Motion for Protective Order (Dkt. #89) is <u>granted in part and denied in part consistent with this ruling.</u>

All responses and production shall be completed **on or before April 8, 2016**.[8]

This is not a Recommended Ruling, but a ruling on a non-dispositive motion, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);** FED. R. CIV. P. 6(a) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).[9]

Dated at New Haven, Connecticut, this 22nd day of March, 2016.

      /s/ Joan G. Margolis, USMJ
        Joan Glazer Margolis
        United States Magistrate Judge

---

[8] In light of this deadline, the date for completion of discovery is postponed until **May 2, 2016**, and the date for filing dispositive motions is postponed until **June 3, 2016**.

[9] If any counsel believes that a settlement conference would be productive, he or she may contact this Magistrate Judge's Chambers accordingly.