| | | |
|---|---|---|
| A.M., A MINOR, by his parents and natural guardians, AUDLEY MUSCHETTE and JUDITH MUSCHETTE, | : | CIVIL ACTION NO. 3:13-CV-1337 (WWE) |
| | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| AMERICAN SCHOOL FOR THE DEAF, ET AL., | : | |
| | : | |
| Defendants | : | MARCH 21, 2017 |

## ASD DEFENDANTS'
## MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT

### I.   INTRODUCTION

Plaintiff's claim of disability discrimination is perplexing. It's perplexing because Plaintiff alleges that his behavioral impairment was not accommodated, yet it was Plaintiff's behavioral impairment that qualified him to receive the services he did. Simply put, Plaintiff cannot claim disability discrimination because he was not denied educational services due to his status as a Deaf student with Attention Deficit Hyperactivity Disorder ("ADHD"). Instead, as outlined below, Plaintiff qualified for the educational services he received because he was a Deaf student with ADHD. His claims to the contrary are inconceivable and should be seen for what they are - unsubstantiated allegations that his particular needs were not met.

Plaintiff is Deaf; no one disputes that fact. In addition, no one disputes that Plaintiff was diagnosed with ADHD.[1] What is disputed and unfounded is Plaintiff's allegation that ASD – the American School for the Deaf - discriminated against him because he was a Deaf student with ADHD.

By way of background, ASD provides educational and residential programming for deaf and hard of hearing students in preschool through twelfth grade. More specifically, ASD operates the PACES Program which provides educational services to deaf and hard of hearing students whose emotional and/or behavioral disorders prevent them from participating in regular academic settings. Plaintiff, who is Deaf and was diagnosed with ADHD, qualified for and was provided services through the PACES Program. Plaintiff received services through the PACES Program because he is Deaf and was diagnosed with ADHD, among other behavioral disorders. To wit, the PACES Program not only accommodated Plaintiff's disabilities, it was designed to accommodate them!

As Plaintiff was not denied educational services on the basis of his disabilities, his Federal claim is legally insufficient and summary judgment must enter in favor of ASD on Count Ten of Plaintiff's Amended Complaint. Upon entering judgment for ASD on Count Ten, this Honorable Court should then decline to exercise supplemental jurisdiction over the Plaintiff's State Law claims. This Court should decline to exercise supplemental jurisdiction for reasons of judicial efficiency and fairness as outlined in Section B below. If, in the alternative, this Court retains supplemental jurisdiction over

---

[1] Although the ASD Defendants do not dispute that Plaintiff was diagnosed with ADHD, and will concede for the purpose of this Motion that it can qualify as a disability, the burden remains Plaintiff's to prove at trial that his ADHD affected a major life activity to a substantial degree such that it was a disability under the ADA.

Plaintiff's State Law claims against the ASD Defendants, then, for the reasons outlined in Section C below, summary judgment should enter in favor of Elwin Espinoza on Counts Seven, Eight and Nine of Plaintiff's Amended Complaint.

## II.    STANDARD OF REVIEW

Summary judgment is the preferred method of resolving litigation and avoiding delay and expense when there is no real issue to be tried. As such, summary judgment must be granted if the pleadings, affidavits, and other proof show that there is no genuine issue as to any material fact. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 150 (2000); O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,642 F.3d 110, 116 (2d Cir. 2011); Miner v. Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993). Summary judgment must be rendered in instances where the material facts are undisputed; where the evidence is such that no room for disbelief could exist in the minds of the jury. Reeves, 530 U.S. at 150; Cambridge Realty Co.. LLC v. St. Paul Fire & Marine Ins. Co., 421 F.App 52, 53 (2d Cir. 2011)

The party moving for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which under applicable principles of substantive law, entitle him to judgment as a matter of law. Reeves, 530 U.S. at 150; Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010). Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of a genuine issue for trial. Wright v. Goord, 554 F. 3d 255, 266 (2d Cir. 2009).The opposing party cannot merely assert the existence of a disputed issue because "unsupported allegations do not create a material issue of fact". Weinstock v. Columbia Univ, 224

F.3d 33, 41 (2d Cir. 2000). To wit, properly presented evidence is not rebutted by a mere "scintilla" of evidence favoring the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

As outlined below, there is no evidence supporting Plaintiff's claim of disability discrimination. To the contrary, the facts establish that Plaintiff received educational services through ASD's PACES Program because he was a Deaf student with ADHD.

## III.  PROCEDURAL BACKGROUND

In September 2013, Plaintiff filed a Twelve Count Complaint against ASD, Christopher Hammond, Elwin Espinoza, Paul Gionfriddo, Christopher Lyth and the Town of West Hartford. Of the Twelve Count Complaint, six counts alleged claims against the ASD Defendants. Of the six counts alleging claims against the ASD Defendants, five are for claims under Connecticut State Law (Negligence, Negligent Infliction of Emotional Distress, Battery, Assault and Intentional Infliction of Emotional Distress). The remaining count, and the count for which this Court has original jurisdiction, is Count Ten. Count Ten alleged that the ASD Defendants violated Title III of the Americans with Disabilities Act of 1990 (hereinafter "ADA") and Section 504 of the Rehabilitation Act of 1973 (hereinafter "Rehabilitation Act"). More specifically, Count Ten alleged that ASD "failed to properly train staff and have procedures in place to have peaceful encounters with individuals with Attention Deficit Hyperactivity Disorder or other emotional & behavioral issues and failed to establish a proper policy for handling such encounters, which resulted in the discrimination against A.M. that caused him to suffer injuries." (<u>See</u> *Complaint, Count Ten, ¶ 122.)*

Disputing the legal sufficiency of Count Ten, the ASD Defendants filed a Motion to Dismiss for Lack of Jurisdiction and a Motion to Dismiss for Failure to State a Claim. This Court (Eginton, J.) granted the ASD Defendants' Motion to Dismiss for Lack of Jurisdiction on September 9, 2014. In its Ruling, the Court found that Plaintiff failed to exhaust his administrative remedies under the Individuals with Disabilities in Education Act, and as such, the Court lacked subject-matter jurisdiction over Plaintiff's ADA and Rehabilitation Act Claim. After finding it lacked subject-matter jurisdiction over Plaintiff's Federal claim, the Court declined to exercise supplemental jurisdiction over the Plaintiff's State Law claims against the ASD Defendants. The Court did not consider the ASD Defendants' Motion to Dismiss for Failure to State a Claim at that time because it was moot.

After review of the Court's Ruling on Motion to Dismiss, Plaintiff filed a Motion for Reconsideration. On April 9, 2015, the Court entered a Ruling on Motion for Reconsideration reversing its dismissal of Plaintiff's Federal claim for lack of jurisdiction. The Court then went on to consider and grant the ASD Defendants' Motion to Dismiss for Failure to State a Claim. In doing so, the Court found that Plaintiff had "failed to allege any dissimilar treatment afforded to a comparative class of individuals, a denial of benefits or any refusal to provide reasonable accommodation." It went on to find that Plaintiff had "not alleged that certain neutral practices or policies [had] a disproportionate impact on a particular class of person." Based those findings, the Court granted the Motion to Dismiss for Failure to State a Claim. Notably, the Court remarked as follows:

> However, plaintiffs' brief indicates that they seek to advance a theory of disability discrimination based on treatment of individuals at ASD who had

ADHD compared to treatment of individuals who are deaf without ADHD. The Court will afford plaintiffs an opportunity to replead their complaint if, in good faith, they can establish claims of disability discrimination pursuant to the ADA and Rehabilitation Act.

In accordance with the Court's Ruling on Motion for Reconsideration, Plaintiff re-plead his complaint on April 22, 2015.[2] As outlined below, Plaintiff should not have re-plead his complaint because he cannot in good faith establish a claim of disability discrimination.

## IV.  UNDISPUTED MATERIAL FACTS

Plaintiff's claims against the ASD Defendants stem from his enrollment in ASD's PACES Program. By way of background, ASD – the American School for the Deaf – was founded in 1817 and provides comprehensive educational programs and services to deaf and hard of hearing students. *(Local Rule 56(a)(1) Statement of Material Facts, Paragraph 1 (hereinafter "SMF, ¶ 1").)* Over its 200 year existence, ASD has developed a number of programs to enhance the quality of services provided to its students. *(SMF, ¶ 3.)* One such program is the PACES Program, which stands for Positive Attitude Concerning Education and Socialization. *(SMF, ¶ 5.)* The PACES Program was implemented to accommodate deaf and hard of hearing students who's emotional and behavioral disorders prevent them from participating in regular academic or other special education settings. *(SMF, ¶ 7.)* Plaintiff is one of these students. *(SMF, ¶ 28-29.)*

After being removed from his parents care due to allegations of abuse, Plaintiff was placed in the custody of New York's ACS from 2008 through 2011. *(SMF, ¶ 24.)* While in the custody of ACS, Plaintiff was placed at the Fanwood School for the Deaf in

---

[2] Count Ten was revised to allege a violation of the ADA and Rehabilitation Act against ASD only, not the three ASD Defendants. Said revision is in keeping with the Court's holding in the Ruling on Motion to Dismiss providing that neither the ADA nor the Rehabilitation Act contemplate or allow for individual liability.

New York; however, Fanwood was admittedly not a good placement for Plaintiff. *(SMF,*
*¶ 26.)* Plaintiff's mother admits that Fanwood was not a good fit for Plaintiff because "he
had a lot of issues with emotions and other issues." *(SMF, ¶ 26.)* In addition, Plaintiff
has a rebellious personality and had a "hard time paying attention or concentrating and
dealing with his emotions." *(SMF, ¶ 26.)* As a result of Plaintiff's emotional and
behavioral issues, which included a diagnosis of ADHD, ACS enrolled Plaintiff in ASD's
PACES Program. *(SMF, ¶ 26-29.)*

Plaintiff was enrolled in the PACES Program from 2008 through 2016. *(SMF, ¶*
*29.)* During that time Plaintiff, was one of many students with ADHD in the PACES
Program; he understood that the PACES Program "was for people with emotional
issues and behavioral issues." *(SMF, ¶ 31-32.)* Plaintiff himself undisputedly had
emotional and behavioral issues, including but not limited to a diagnosis of ADHD.
*(SMF, ¶ 33-39.)* Plaintiff admits that he thought about and attempted suicide when he
became frustrated. *(SMF, ¶ 33.)* He also admits to lying, stealing, and being physically
aggressive with ASD staff and students. *(SMF, ¶ 34-37.)* In fact, a review of Plaintiff's
Individual Discipline Reports shows that he was a troubled student who frequently broke
the rules and challenged the instructions of staff. *(SMF, ¶ 39.)* Based on these facts, it is
undisputed that Plaintiff exhibited emotional and behavioral issues that prevented him
from participating in a regular academic setting upon his admission to the PACES
Program. *(SMF, ¶ 26.)* In addition, it is undisputed that Plaintiff continued to exhibit
these emotional and behavioral issues throughout his enrollment in the PACES
Program. *(SMF, ¶ 33-39.)*

While enrolled in the PACES Program, Plaintiff was provided the same opportunities and services that students in the Core Education Program[3] received. *(SMF, ¶ 21-23.)* In fact, although the PACES Program is designed to accommodate students with emotional and behavioral disorders, its goal is to do so while providing them with the benefits of all services offered at ASD. *(SMF, ¶ 21-23.)* Students in the PACES Program are offered the same educational services, including after-school programs and activities, as students in the Core Education Program. *(SMF, ¶ 21-23.)* Plaintiff was offered the opportunity to play sports, which he did. *(SMF, ¶ 21; 40.)* Plaintiff was also offered the opportunity to participate in school club organizations. *(SMF, ¶ 21.)* It's clear and should be undisputed that the PACES Program accommodated deaf and hard of hearing students with emotional and behavioral impairments, thereby allowing them to participate in and receive educational services that they otherwise would not have been able to.

A comparison of the above-undisputed facts to the allegations in the Amended Complaint reveals a troubling disconnect. Indeed, most of Plaintiff's allegations against the ASD Defendants are inaccurate; some are just plain false. Although the ASD Defendants could spend multiple pages outlining the misinformation and inaccurate allegations in Plaintiff's Amended Complaint, just the most egregious statements will be addressed below.

A couple of the most egregious allegations are aimed towards Hammond. Plaintiff alleges that "Hammond informed Plaintiff that he was going to kill him and push him into an unsafe area of the construction site on campus." <u>See</u> Amended Complaint,

---

[3] ASD's Core Education Program provides regular/typical educational services to deaf and hard of hearing students from preschool through twelfth grade. *(SMF, ¶ 4-5.)*

¶ 34. Plaintiff goes on to allege that "Hammond proceeded to grab Plaintiff and punched Plaintiff in the face with closed fists." Id. ¶ 35. Plaintiff is undisputedly A.M. A.M. was undisputedly deposed under oath on July 21, 2016 and August 26, 2016. Not even an overly broad reading of Plaintiff's version of events supports these outrageous accusations. Quite the contrary, Plaintiff's version of events, as detailed by him under oath, specifically refute these allegations. Plaintiff admits that he ran into the construction site after he attempted suicide and while he was fleeing from ASD staff that was attempting to calm him down. SMF, ¶ & 49. Plaintiff alleges that Hammond pushed him from behind while he was fleeing – even assuming this to be true, which it is not, a push from behind can in no way be construed as a punch to the face with closed fists! These egregious and unfounded allegations are only a sample of the grossly inaccurate statements contained in Plaintiff's Amended Complaint.

Another example of Plaintiff's skewed allegations can be found throughout the Amended Complaint. Plaintiff makes reference to the PACES Program "segregating" students with behavioral impairments from the other students at ASD. See Amended Complaint, ¶ 76. Quite frankly, use of the term "segregate" is meant to inflame; it purposefully misrepresents the goal of the PACES Program. The PACES Program was designed to **accommodate** Deaf students with emotional and behavioral impairments! The PACES Program adheres to the purpose and import of the ADA and Rehabilitation Act – it provides accommodations for Deaf students with behavioral impairments which prevent them from participating in regular academic programming without auxiliary aides or services. To wit, the PACES Program not only comports with the requirements of the ADA and Rehabilitation Act, it was designed to do so!

Lastly, Plaintiff's claim that he is a "qualified person with a disability, as compared to his peers at ASD, as he has Attention Deficit Hyperactivity Disorder" is simply false. See Amended Complaint, ¶ 146. Plaintiff himself readily admits that many of the students in the PACES Program had ADHD. Plaintiff's admission, his acknowledgement that he was not an otherwise qualified person with a disability, leads one to question why the claims against the ASD Defendants were re-plead.[4] To wit, it's clear there was no good faith basis for filing the Amended Complaint.

## V.   LAW AND ARGUMENT

### A.  Plaintiff's ADA and Rehabilitation Act Claims Fail Because Plaintiff was Provided a Full and Equal Opportunity to Partake in ASD's Educational Services

Under Title III of the ADA, no "individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). Similarly, the Rehabilitation Act, a predecessor to the ADA, provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "Together, the Rehabilitation Act and the ADA prohibit discrimination against qualified disabled individuals by requiring that they receive 'reasonable accommodations' that allow them to access and partake in public services

---

[4] As stated by the Court (Eginton, J.) in its Ruling on Motion for Reconsideration: "plaintiffs' brief indicates that they seek to advance a theory of disability discrimination based on treatment of individuals at ASD who had ADHD compared to treatment of individuals who are deaf without ADHD. The Court will afford plaintiffs an opportunity to replead their complaint if, in good faith, they can establish claims of disability discrimination pursuant to the ADA and Rehabilitation Act."

and public accommodations." [5] Aquino v. Prudential Life and Casualty Insurance Company, 419 F. Supp. 2d 259 (E.D.N.Y. 2005) (citing Powell v. National Board of Medical Examiners, 364 F.3d 79 (2d Cir. 2004)). The purpose of the ADA and Rehabilitation Act "is to eliminate discrimination on the basis of disability to ensure evenhanded treatment between the disabled and non-disabled." Fetto v. Sergi, 181 F.Supp.2d 53 (D. Conn. 2001). Discrimination is defined as "a failure to take such steps as may be necessary to ensure that no individual with a disability is secluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids or services." 42 U.S.C. § 12182(b)(2)(A)(iii).

Count Ten of Plaintiff's Amended Complaint alleges that ASD violated Title III of the ADA and Rehabilitation Act. Specifically, Plaintiff contends he was denied reasonable accommodation in that as a Deaf student with ADHD he did not receive the same educational benefits as a Deaf students without ADHD. See Amended Complaint, Count Ten, ¶ 141. To succeed on his ADA claim, Plaintiff must prove four distinct elements. First, he must establish that he is disabled within the meaning of the ADA.[6] DMP v. Fay School ex rel, Bd. Of Trustees, 933 F.Supp.2d 214, 221 (D. Mass. 2013). Second, Plaintiff must prove that he was otherwise qualified to receive the educational benefits. Id. Third, Plaintiff must prove that he made a request for reasonable accommodation from ASD. Id. Lastly, Plaintiff must establish that his request for reasonable accommodation was denied. Id. As outlined below, Plaintiff has not and

---

[5] ASD is a place of public accommodation. Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 153 (1st Cir. 1998).
[6] Plaintiff contends that he is disabled within the meaning of the ADA by reason of his ADHD diagnosis. Putting aside that Plaintiff is confused as to whether he was diagnosed with ADHD, ASD will concede for the purposes of this Motion that a diagnosis of ADHD may be a disability within the meaning of the ADA if it affected a major life activity to a substantial degree. 42 U.S.C. § 12102.

cannot establish three of the elements needed to support his ADA claim. Plaintiff was not denied a full and equal opportunity to enjoy the educational services provided by ASD. In fact, Plaintiff qualified for and was admitted to the PACES Program, a residential educational program addressing the needs of Deaf children with emotional or behavioral challenges, because of his behavioral impairment.

Similarly, Plaintiff's claim under the Rehabilitation Act also fails. Plaintiff's claim under the Rehabilitation Act is similar to his ADA claim, but it requires that Plaintiff prove ASD received Federal funding, and more importantly, it requires Plaintiff to show the alleged denial of services was **_solely_** due to Plaintiff's disability. Flight v. Gloeckler, 68 F.3d 61, 64 (2d Cir. 1995) (emphasis added). As outlined below, Plaintiff's claims under both the ADA and Rehabilitation Act fail because he was not denied educational services due to his behavioral impairment. In fact, it bears repeating - Plaintiff qualified for and received educational services from ASD's PACES Program because of his behavioral diagnoses, including his ADHD diagnosis.

1. Plaintiff's Federal claim[7] is legally insufficient because Plaintiff's disabilities were accommodated

An "entity engages in a discriminatory practice if it refuses to make 'reasonable accommodation' to 'rules, policies, practices or services when such accommodation may be necessary to afford a handicapped person equal opportunity to use and enjoy" a service. Tsombanidis v. West Haven Fire Dept., 352 F.3d 565, 578 (2nd Cir. 2003). The ADA and Rehabilitation Act "require that changes be made to such traditional rules or practices if necessary to permit a person with handicaps an equal opportunity to enjoy"

---

[7] As the ADA and Rehabilitation Act impose similar requirements, they will be addressed in tandem below. Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2nd Cir. 2003); Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 154 (1st Cir. 1998).

a service. Id. Their "central purpose is to assure that handicapped individuals received 'evenhanded treatment' in relation to the non-handicapped." P.C. v. McLaughlin, 913 F.2d 1033, 1041 (2nd Cir. 1990). A plaintiff must show that but for the requested accommodation, he will be denied an equal opportunity to enjoy the service provided. Tsombandis, 352 F.3d at 578.

As previously recognized by the courts, "where the handicapping condition is related to the benefit provided, it will rarely, if ever, be possible to say with certainty that a particular decision was 'discriminatory.'" Doe v. Pfrommer, 148 F.3d 73 (2d Cir. 1998) (citing U.S. v. Univ. Hosp., 729 F.2d 144, 156 (2d Cir. 1984)). To wit, neither the ADA nor the Rehabilitation Act establish an obligation to meet a disabled person's particular needs vis-à-vis the needs of other handicapped individuals, but mandate only that the services provided to non-handicapped individuals not be denied to a disabled person because he is handicapped. Id. In fact, summary judgment is warranted when the undisputed material facts establish that the defendants have taken all necessary steps to ensure that no individual with a disability is excluded, denied services, or otherwise treated differently than other individuals. Stan v. Wal-Mart Stores, 111 F.Supp.2d 119, 126 (N.D.N.Y. 2000). Such is the case here.

Plaintiff's claim in a nutshell is this– ASD denied him access to educational services because he was a Deaf student with ADHD. Plaintiff's claim is simply incredulous, because as stated multiple times herein, ASD's PACES Program is designed to accommodate Deaf students with ADHD and other behavioral impairments!

ASD was the first permanent school for the deaf in the United States; it is a nationally renowned leader in providing comprehensive educational programs and

services for deaf and hard of hearing students. *(MSF, ¶ 1.)* In the 200 years since its inception, ASD has instituted a number of programs to provide a full range of educational programming to deaf and hard of hearing students. *(MSF, ¶ 3-4.)* The programs include the Core Education Program, PACES Program, Adult Vocational Services, Outreach Program and International Program. *(MSF, ¶ 3.)* The Core Education Program provides regular academic programing to deaf and hard of hearing students. *(MSF, ¶ 5.)* To accommodate deaf and hard of hearing students who cannot participate in a regular academic setting due to emotional and behavior disorders, ASD instituted the PACES Program which stands for Positive Attitudes Concerning Educations and Socialization. *(MSF, ¶ 5; 7.)* To be admitted to the PACES Program, a deaf or hard of hearing student must have a history of challenging behaviors in school, home and/or the community. In addition, students typically have behavioral diagnoses such as ADHD, conduct disorders and mood disorders. *(MSF, ¶ 8-10.)*

Similar to the residential Core Education Program, the PACES program is designed to address all areas of a student's life. *(MSF, ¶ 11.)* Students in the PACES Program have access to a broad range of after-school programs and activities, including sports and student club opportunities. *(MSF, ¶ 21.)* The purpose of the PACES Program, as described by its former Administrative Dean of Students, is to engage the students so they so not feel different in any way:

> For after school we would have them as much as possible engage in all the activities at the American School for the Deaf first. We didn't want to have any kind of, like – we didn't' want the students to feel that they were different in any kind of way. So all programs at the American School for the Deaf by the core program were offered to all of our students.
>
> Those students who were not able to participate in the core program activities, it was my responsibility to make sure we had activities within the

program itself; which meant meeting with the students immediately after school to deal with any behavioral issues from the daytime, any concerns that the students would have to make sure they would understand what's expected from 3:30 to bedtime; what we will be doing that day, activities we would be doing, time for this, time for that.

We would have off-campus activities. There would be a host of different things from going to the Big E, going to the movies, going to the park just for playing baseball or basketball. We would have activities for kids to just meet each other. Boys, girls, if they wanted to meet each other, this is the time you could do it with supervision.

Laundry – doing their laundry, cleaning their rooms, doings arts and crafts, cooking class – not classes, but cooking activities, going to the mall, going to other stores, purchasing. Whatever kids would do at home, we tried to make sure that this was a replicate of that. Going to church if they wanted to go to church, you know. *(SMF, ¶ 23.)*

The clear and undisputed purpose of ASD's PACES Program is to provide deaf and hard of hearing students with behavioral and emotional impairments the opportunity to participate in educational services that they would not otherwise be qualified to receive. To wit, the PACES Program is designed to accommodate students like Plaintiff, students who are Deaf with ADHD.

As outlined above, Plaintiff's claim does not equate to illegal disability discrimination because he was not denied accommodation on the basis of his disabilities. In fact, there is a complete absence of factual support to substantiate the bare allegation that a discriminatory animus prompted the treatment alleged by Plaintiff. Plaintiff himself admits that he was not denied services provided to other Deaf students with ADHD. Instead, Plaintiff claims he was treated differently because ASD staff chose to believe the explanations of other students over Plaintiff's explanations. Plaintiff also claims that staff used excessive force when restraining him and/or handling his behavioral outbursts. Neither of these allegations amount to illegal disability

discrimination. Quite the contrary, these allegations challenge the adequacy of services provided by ASD, which is insufficient to support Plaintiff's Federal claim. Doe v. Pfrommer, 148 F.3d 73 (2d Cir. 1998); P.C. v. McLaughlin, 913 F.2d 1033 (2nd Cir. 1990); DMP v. Fay School ex rel, Bd. Of Trustees, 933 F.Supp.2d 214 (D. Mass. 2013); M.K. ex rel. Mrs. K. v. Sergi, 554 F.Supp.2d 175 (2008); Axelrod v. Phillips Academy, Andover, 46 F.Supp.2d 72 (D. Mass. 1999). As Plaintiff did not and cannot establish that he was denied services solely by reason of his disability, his Federal claim fails and summary judgment must enter in favor of ASD on Court Ten of Plaintiff's Amended Complaint.

In addition to his failure to establish that he was denied of services solely by reason of his disability, Plaintiff failed to prove that he was an "otherwise qualified individual."

2.    Plaintiff is not an "otherwise qualified individual"

The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). "Otherwise qualified, can only be read to mean otherwise able to function sufficiently in the position sought in spite of the handicap, if proper training and facilities are suitable and available." Southeastern Comm. Col. v. Davis, 442 U.S. 397, 403 (1979) (respondent was not otherwise qualified for the nursing program because her hearing disability prevented her from meeting the program's reasonable physical qualifications for admission).

Although Plaintiff did not request enrollment in ASD's Core Education Program, a reading of his Amended Complaint and deposition transcripts suggest that is what he sought. Unfortunately, based on his emotional and behavioral disorders, Plaintiff was not qualified for placement in the Core Education Program. Plaintiff's mother admits that Plaintiff was not a good fit for Fanwood School for the Deaf's typically educational program because "he had a lot of issues with emotions and other issues." *(SMF, ¶ 26.)* She admits that Plaintiff had a "rebellious personality" and had a "hard time paying attention or concentrating with and dealing with his emotions." *(Id.)* It was for these reasons that Plaintiff was transferred to ASD's PACES Program, which is specially designed to serve Deaf children with emotional and behavioral disorders that prevent them from participating in a regular academic setting. *(SMF, ¶¶7-10.)*

After enrolling in the PACES Program, Plaintiff's behaviors and actions confirmed that he was not qualified for enrollment in the Core Education Program. A reading of Plaintiff's Individual Discipline Reports reveal that Plaintiff was often aggressive with staff and students; often acted inappropriately towards staff and students; attempted to injure himself; lied; threatened staff and students; bullied students; and, committed theft. *(SMF, ¶ 39.)* In fact, Plaintiff admits that he attempted suicide, lied, stole, and was physically aggressive to staff and students while enrolled in the PACES Program. *(SMF, ¶ 33-37.)* Due to these continued behaviors, Plaintiff did not qualify for the Core Education Program. To wit, Plaintiff was not otherwise qualified to attend the Core Education Program, and instead, was enrolled in the PACES Program which was designed to accommodate students with emotional and behavioral disorders that prevent them from participating in a regular academic setting. As Plaintiff was not an

"otherwise qualified individual," he cannot establish and essential element of his Federal claim and summary judgment must enter for ASD on Count Ten of Plaintiff's Amended Complaint.

In addition to his failure to establish that he was an "otherwise qualified individual" and that he was denied services solely by reason of his disability, Plaintiff has not and cannot show that he requested and was denied a reasonable accommodation.

3.    <u>Plaintiff did not request a reasonable accommodation, which is a required element for his ADA claim</u>

Conspicuously missing from Plaintiff's Amended Complaint is any reference to a request for a reasonable accommodation. Undeniably, Plaintiff's Federal claim against ASD alleges that ASD denied him a reasonable accommodation, yet nowhere in the Amended Complaint does it allege that Plaintiff requested an accommodation. On this issue the case law is abundantly clear, the onus is on the student to request an accommodation from the school. <u>Axelrod v. Phillips Academy, Andover</u>, 46 F.Supp.2d 72, 84 (D. Mass. 1999)[8] (the burden is not on the school to establish that there was nothing else it could have done to help plaintiff, rather, the burden was on the plaintiff to show that he requested a reasonable accommodation and the school denied it). Here, Plaintiff has not make any request for reasonable accommodation of his ADHD. In fact, there is no evidence that Plaintiff requested any accommodation from ASD. Absent a request for an accommodation, ASD could not deny Plaintiff's request for accommodation. Based on Plaintiff's failure to request a reasonable accommodation

---

[8] Plaintiff's conduct and attitude is remarkably similar to that of the plaintiff in <u>Axelrod</u>. As aptly stated by the Court in <u>Axelrod</u>, the plaintiff "is a bright, articulate, and talented young man; but, he needs to learn that he is accountable for his conduct, disability or no disability." 46 F.Supp.2d 72, 87 (D. Mass. 1999).

from ASD, Plaintiff cannot prove two of the elements required for his ADA claim.[9] As such, summary judgment must enter in favor of ASD on Count Ten of the Amended Complaint.

## B. **As it has Previously Done, This Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims**

When a district court has dismissed all claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over pending state law claims. 28 U.S.C. § 1367(c)(3). This is because the "primary responsibility for developing and applying state law rests with the state courts." Armstron ex rel. Steffensen v. Alicante School, 44 F.Supp.2d 1087, 1090 (E.D. CA. 1999) (citing Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). To wit, "when federal claims are eliminated before trial, district courts should ordinarily decline to exercise supplemental jurisdiction," unless fairness dictates otherwise. Id. In determining whether to exercise supplemental jurisdiction, the court is guided by the values of economy, convenience, fairness and comity." Id.

Once Plaintiff's Federal claim against ASD is eliminated, this Honorable Court should decline to exercise supplemental jurisdiction over the remaining State Claims because, as outlined in this Court's prior Ruling on Motion to Dismiss, judicial economy and fairness are served by declining supplemental jurisdiction. (See *Document No. 68.*) When the Federal claim against ASD was previously dismissed in September 2014, this Court's Ruling on Motion to Dismiss held as follows:

> As the Court has concluded that dismissal of the federal claims against ASD and its staff is appropriate, judicial efficiency and fairness is served

---

[9] Plaintiff must prove both that he requested a reasonable accommodation and that ASD denied his request for accommodation. DMP v. Fay School ex rel. Bd. Of Trustees, 933 F.Supp.2d 214, 221 (D. Mass. 2013).

by declining supplemental jurisdiction over the state law tort claims against these defendants. The Court retains original jurisdiction over the remaining federal claims against the West Hartford defendants. However, allegations against the West Hartford defendants relate to police officers' tasering of plaintiff and whether they used excessive force in violation of plaintiff A.M's civil rights; by contrast, the state law claims against the ASD defendants concern alleged altercations prior to the alleged tasering and failure to provide a safe educational environment, Thus the claims against the West Hartford defendants are not sufficiently related to the state law claims against the ASD defendants to warrant the exercise of supplemental jurisdiction.

The Court's rationale in the Ruling on Motion to Dismiss holds true to this day. Judicial efficiency and fairness will be served by declining to exercise supplemental jurisdiction over the State Law claims against the ASD Defendants. As such, the ASD Defendants respectfully request that this Honorable Court decline to exercise supplemental jurisdiction over Counts Five, Six, Seven, Eight and Nine of Plaintiff's Amended Complaint as said Counts pertain to the ASD Defendants.

If, in the alternative, this Court retains supplemental jurisdiction over Plaintiff's State Law claims against the ASD Defendants, then, for the reasons outlined-below, the Elwin Espioza requests that summary judgment enter in his favor as to Counts Seven, Eight and Nine of Plaintiff's Amended Complaint.

### C. **By Plaintiff's Own Admission, He Cannot Establish the Elements Required for His State Law Claims Against Elwin Espinoza**

Plaintiff asserts three State Law claims against Elwin Espinoza —battery, assault and intentional infliction of emotional distress. By Plaintiff's own admission, he cannot prove his State Law claims against Espinoza because Espinoza was a "cool guy" who was never physical with Plaintiff. Indeed, Plaintiff described Espinoza as follows:

Q. Do you know and individual by the name of Elwin Espinoza?

A. Yes.

Q. How do you know him?

A. He was staff at ASD, cool guy, really funny, I know him well. But something happened and he got fired. I don't really know why. He just stopped working there.

Q. Was Elwin Espinoza ever physically aggressive towards you?

A. No. He was never, he was never – no, he was never physical with me. If I ever lost my temper, he would come up to me and talk me down, but he was never physical. *SMF, ¶ 45.*

As outlined below, Plaintiff's deposition testimony undermines the elements required for each of his State Law claims against Espinoza.

### 1. Battery

To prevail on his claim of civil battery, Plaintiff must prove two elements. First, that Espinoza acted with the intention of causing a harmful or offensive contact with Plaintiff. <u>Simms v. Chaisson</u>, 277 Conn. 319, 331 (2006). Second, that such harmful or offensive contact was the direct or indirect result. <u>Id</u>. As clearly and unequivocally stated by Plaintiff, Espinoza "was never physical." Instead Espinoza would talk to Plaintiff and attempt to calm Plaintiff down when he lost his temper. Said conduct is neither harmful nor offensive, in fact, it's quite the opposite. To wit, based on Plaintiff's own deposition testimony he cannot establish either element of his battery claim against Espinoza. As Plaintiff cannot establish the elements required for his battery claim, summary judgment must enter in favor of Espinoza on Count Seven.

### 2. Assault

To prevail on his claim of civil assault, Plaintiff must prove two elements. First, that Espinoza intended to cause a harmful or offensive contact, or an imminent apprehension of such contact, with Plaintiff. <u>McComber v. Travelers Prop. & Cas.</u>

Comp., 277 Conn. 617, 635-36 (2006). Second, that Plaintiff was put in imminent apprehension as a result. As stated by Plaintiff himself, Espinoza was never physical with him. In fact, Plaintiff described his interactions with Espinoza as funny and cool. To wit, based on Plaintiff's own deposition testimony he cannot establish either element of his assault claim against Espinoza. As Plaintiff cannot establish the elements required for his assault claim, summary judgment must enter in favor of Espinoza on Count Eight.

### 3. Intentional Infliction of Emotional Distress

To prevail on his claim for intentional infliction of emotional distress, Plaintiff must prove four elements: 1.) that Espinoza intended to inflict emotional distress or knew or should have known that emotional distress was likely the result of his conduct; 2.) that said conduct was extreme and outrageous; 3.) that Espinoza's conduct was the cause of Plaintiff's distress; and, 4.) that the emotional distress sustained by Plaintiff was severe. Carrol v. Allstate Ins. Co., 262 Conn. 433, 2003). Based on his deposition testimony, Plaintiff cannot prove that Espinoza intended to inflict emotional distress upon him. Indeed, Plaintiff would be hard-pressed to establish that a funny and cool residential counselor was acting in an extreme and outrageous manner by talking to Plaintiff in an attempt to calm him down when he lost his temper. As Plaintiff cannot establish the elements required for his intentional infliction of emotional distress claim, summary judgment must enter in favor of Espinoza on Count Nine.

## VI.    CONCLUSION

WHEREFORE, ASD respectfully requests that this Honorable Court enter summary judgment in its favor as to Count Ten of Plaintiff's Amended Complaint filed April 22, 2015, and thereafter decline to exercise supplemental jurisdiction over Plaintiff's State Law claims against the ASD Defendants. Should this court exercise supplemental jurisdiction over Plaintiff's State Law claims, Espinoza respectfully requests that summary judgment enter in his favor as to Counts Seven, Eight and Nine of Plaintiff's Amended Complaint.

Respectfully submitted,
DEFENDANTS,
AMERICAN SCHOOL FOR THE DEAF,
CHRIS HAMMOND and ELWIN ESPINOSA

By_____
Sharon Baldwin
Fed Bar No.: ct29481
David G. Hill & Associates, LLC
180 Glastonbury Blvd, Suite 202
Glastonbury, CT    06033
860-657-1012/Fax 860-657-9264
sbaldwin@dhill-law.com

## CERTIFICATION

This is to certify that on this 21st day of March, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Sharon Baldwin