UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AUDLEY MUSCHETTE and JUDITH MUSCHETTE, on behalf of A.M., Plaintiffs, | : : : : | |
| v. | : : | 3:13-cv-01337-WWE |
| TOWN OF WEST HARTFORD, AMERICAN SCHOOL FOR THE DEAF, PAUL W. GIONFRIDDO, CHRISTOPHER LYTH, CHRIS HAMMOND, and ELWIN ESPINOSA, Defendants. | : : : : : | |

**MEMORANDUM OF DECISION ON
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

In this action, plaintiffs allege on behalf of their then 12-year-old son (1) excessive force against Officer Paul W. Gionfriddo, (2) municipal liability against the Town of West Hartford for failure to adequately train its police officers, (3) violation of the Americans with Disabilities Act and the Rehabilitation Act against the Town, (4) municipal liability against the Town for failure to adequately supervise its officers, (5) negligence against the American School for the Deaf, (6) negligent infliction of emotional distress against the School, (7) battery against Officer Paul W. Gionfriddo, Officer Christopher Lyth, Chris Hammond, Elwin Espinoza, the Town, and the School, (8) assault against Officer Paul W. Gionfriddo, Officer Christopher Lyth, Chris Hammond, Elwin Espinoza, the Town, and the School, (9) intentional infliction of emotional distress against Officer Paul W. Gionfriddo, Officer Chris Hammond, Elwin Espinoza, the Town, and the School, (10) violation of the Americans with Disabilities Act and the Rehabilitation Act against the School, (11) negligence against Officer Paul W. Gionfriddo, and (12) negligence against the Town.

1

Defendants have moved for summary judgment on all of plaintiffs' claims. For the following reasons, defendants' motions will be granted in part and denied in part.

## BACKGROUND

The following background was gleaned from the parties' statements of fact, affidavits, deposition transcripts, and other exhibits.

On April 30, 2013, plaintiff A.M. was a 12-year-old student at the American School for the Deaf, located in West Hartford, Connecticut. On that date, Paul Gionfriddo and Christopher Lyth were employed as police officers by the Town of West Hartford.

The American School for the Deaf serves deaf and hearing impaired persons. At all relevant times, Christopher Hammond was employed by the School as a residential counselor. Hammond is a deaf individual who communicates with other deaf persons by means of American Sign Language.

Following a dispute between A.M. and staff at his school regarding an attempt to place a takeout meal order, A.M. made a videophone call to his parents. Hammond unplugged the videophone from the wall to end A.M.'s call causing A.M. to become angry. A.M. threw the videophone remote against the wall and proceeded to wrap the videophone wires around his neck with enough tension to cause his face to turn red. Hammond was able to succeed in loosening and removing the wires from A.M.'s neck, but A.M. subsequently ran out of the dorm building into a nearby, fenced-off, construction area.

The parties dispute the degree to which A.M. became violent toward Hammond and other staff members as well as the extent to which A.M.'s actions were taken in self-defense, but A.M. admits to hitting Hammond with a stick and throwing rocks that struck Hammond in several places.

A.M. picked up a larger rock, which caused staff members to back away. Dean Ron Davis called 911. When the police arrived, Officer Gionfriddo spoke with School staff members and Dean Davis.

Officers Gionfriddo and Lyth moved into the construction area with Davis and Hammond. The officers relied on Davis and Hammond to act as interpreters between A.M. and the officers. Gionfriddo gave instructions to Davis, who relayed them to Hammond, who in turn signed the instructions to A.M. Defendants maintain that there was no doubt that A.M. was aware of the presence of the police, but A.M. denies that he was aware of their presence and denies receiving such instructions.

According to defendants, Officer Gionfriddo told Davis to tell Hammond (in sign language) to tell A.M. (in sign language) to put down the rock. Defendants also contend but plaintiffs deny that A.M. was warned that he would be shot with an electric gun if he refused to relinquish the rock that he was holding. A.M maintains that he was never alerted to the possibility that he would be shot with a Taser gun. Although Gionfriddo testified that he believed that Hammond was accurately interpreting the commands being relayed by Davis, a jury is not required to credit such testimony when A.M.'s testimony directly contradicts it.

Officer Gionfriddo shot A.M. in the back with his Taser gun, and electroshock was administered for a period of 5 seconds. However, the two officers were unable to handcuff A.M. at that time, so Gionfriddo administered a second round of electroshock. After the second Taser deployment, the officers were able to handcuff A.M.

Paramedical personnel on the scene removed the Taser prongs and transported A.M. in an ambulance to a hospital. A physical evaluation at the hospital revealed a Taser mark on A.M.'s back, an abrasion to his chest, and a scratch to his right hand.

At deposition, Officer Gionfriddo admitted that A.M. did not make any quick, adverse moves before Gionfriddo fired the projectile prongs into A.M.'s back. Nor did A.M. threaten to throw any rocks in Gionfriddo's presence. Moreover, Gionfriddo testified that if A.M. were to have made any quick moves, Goinfriddo was comfortable that he could disarm him by deploying the Taser at that time.

Gionfriddo was on the scene for under three minutes before resorting to his Taser.

Plaintiffs maintain that A.M.'s "passive resistance" did not warrant the deployment of an electric gun. The West Hartford Police Department's own guidance order on the use of Taser guns provides that the guns "may be used by trained West Hartford Police Officers to temporarily incapacitate an *actively resisting*, combative or violent individual." (emphasis added).

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

**Excessive Force**

All claims that law enforcement officers have used excessive force in the course of a seizure should be analyzed under the Fourth Amendment and its reasonableness standard. Graham v. Connor, 490 U.S. 386, 395 (1989).

"[T]he reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396.

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id.

In arguing that summary judgment is appropriate for plaintiffs' excessive force claim, defendants present only the facts helpful to their cause, for example: (1) A.M. was armed with a rock, (2) darkness was falling over unknown terrain, and (3) the Officers' shift that evening was very busy, so the government had an interest in arrest being completed efficiently and without waste of limited resources. But for purposes of defendants' motions for summary judgment, all

permissible inferences and credibility questions must be resolved in the light most favorable to plaintiffs.

"Summary judgment is inappropriate when the admissible materials in the record make it arguable that the claim has merit, for the court in considering such a motion *must disregard all evidence favorable to the moving party that the jury is not required to believe.*" Rogoz v. City of Hartford, 796 F.3d 236, 246 (2d Cir. 2015).

The Fourth Amendment's reasonableness test requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham 490 U.S. at 396.

Crediting plaintiffs' version of events, it is arguable that plaintiffs' excessive force claim has merit. The crime at issue was assault and battery by a 12-year-old against his teachers. But not all armed suspects are created equal. This was a deaf 12-year-old with a rock – not a hearing adult with a gun. The immediate threat to the safety of the officers or others had subsided by the time they approached A.M., who was then sitting in the construction area adjacent to his school. A.M. did not raise the rock in his hands and made no motion to throw it. Nor did he make any quick, adverse moves of any kind. Gionfriddo testified that if A.M. were to have made any such quick moves, Goinfriddo was comfortable that he could disarm A.M. by deploying his Taser at that time. A.M. was not actively resisting arrest or attempting to evade arrest by flight.

Moreover, plaintiffs submit that Gionfriddo deployed his Taser only minutes after arriving at the School. Indeed, both officers were on scene as of 8:20:37 p.m., and A.M. was reported in custody as of 8:23:13 p.m., less than three minutes later. Within that remarkably short time span, A.M. denies that he was instructed in sign language that refusal to put down the

6

rock would result in subjection by incapacitating electric shock. Indeed, A.M.'s testimony is that he was not looking at Dean Davis when Davis allegedly communicated directions in sign language.

Even according to Hammond, A.M. initially refused to make eye contact during Hammond's efforts to communicate, which would be necessary to the receipt of sign language. Although Hammond contends that he was "finally" able to make eye contact with A.M., the jury is not required to believe such evidence. At this stage, the inferences and credibility questions must be resolved in plaintiffs' favor. Disregarding all the evidence favorable to the moving party, plaintiffs present the following scenario:

> After an outburst of violence, A.M., a deaf 12-year-old, retreated to an isolated place in the construction area adjacent to his school where he sat as darkness advanced. A.M. was not aware that the police had arrived just a few minutes earlier, let alone that he would be shot from behind with projectiles which deliver incapacitating electric shock if he failed to heed warnings – warnings which A.M. testified were never communicated to him. A.M. posed no immediate threat to anyone, and he was not actively resisting arrest. He was not aware that an arrest had been attempted.

Under these circumstances, a reasonable jury could find in plaintiffs' favor that defendants' use of force was unreasonable.

**Qualified Immunity**

"[W]hen a defendant official invokes qualified immunity as a defense in order to support a motion for summary judgment, a court must consider two questions: (1) whether the evidence, *viewed in the light most favorable to the plaintiff,* makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." Rogoz, 796 F.3d at 247.

Defendants argue that even if plaintiffs' evidence makes out a violation of a constitutional right (it does), there was no such precedent at the time that would have provided Officer Gionfriddo with fair warning that his use of the Taser under the instant circumstances would violate the Fourth Amendment. But the Second Circuit has cautioned against narrowing the scope of clearly established rights in excessive force cases:

> It has become commonplace for defendants in excessive force cases to support their claims to qualified immunity by pointing to the absence of prior case law concerning the precise weapon, method, or technology employed by the police. *See, e.g., Nelson v. City of Davis,* 685 F.3d 867, 884 (9th Cir.2012) (considering the use of "pepperball projectiles"). As the Supreme Court has made clear, however, it is not necessary to find a "case directly on point" in order to show that the law governing a plaintiff's claim is clearly established. *al–Kidd,* 131 S.Ct. at 2083. Some measure of abstraction and common sense is required with respect to police methods and weapons in light of rapid innovation in hardware and tactics.

Terebesi v. Terreso, 764 F.3d 217, 237 n. 20 (2d Cir. 2014).

Gionfriddo's own testimony contradicts defendants' position that A.M. posed an immediate threat to the safety of the officers or others. And the parties agree that A.M. was not actively resisting or attempting to evade arrest by flight. The painful and traumatizing intrusion on an unsuspecting deaf 12-year-old child is not adequately supported by the countervailing governmental interest in expediency, even if "the shift that evening was very busy." Such an argument for efficiency might slightly tip the balance if the engagement with A.M. had become a drawn-out affair. But a jury could infer from the quick action in this case, despite the lack of active threat or resistance by the suspect, that the police unreasonably prioritized haste at the expense of A.M.'s Fourth Amendment rights.

From A.M.'s perspective, he was seated, putting up no resistance, when shot from behind and shocked twice by a Taser gun, *without any warning*. If a jury credits plaintiffs' version of events, it may be that (under those circumstances) officers of reasonable competence would

8

agree that use of the Taser was unlawful. Indeed, Gionfriddo's use of the Taser could be found to run contrary to The West Hartford Police Department's own guidance order on the use of Taser guns. Depending on disputed facts, a reasonable officer on the scene may have understood that immediate use of an electric gun was far more force than necessary and would violate A.M.'s constitutional rights under the Fourth Amendment. See Crowell v. Kirkpatrick, 400 Fed. Appx. 592, 595 (2d Cir. 2010) (summary order) ("[W]e do not suggest that the use of a taser to effect an arrest is always, or even often, objectively reasonable . . .").

Defendants place significant weight on the proposition that Gionfriddo believed Hammond was accurately interpreting and communicating his commands to A.M., but even if the jury credits Gionfriddo's testimony, it does not significantly change the analysis of the factors listed in Graham, namely: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Moreover, the jury need not believe Gionfriddo's testimony. The jury may instead credit plaintiffs' evidence that he received no commands, and the jury may find that it was unreasonable for defendants to have presumed otherwise. Or the jury may credit Gionfriddo's testimony regarding his belief, but may nevertheless find that considering the age of the suspect and the communication barriers at issue, reasonable officers would have waited more than a minute or two before resorting to significant and potentially unnecessary application of force.

Under these circumstances, taken in the light most favorable to plaintiffs, genuine issues of material fact exist as to whether Gionfriddo is entitled to qualified immunity. See Soto v. Gaudett, 862 F.3d 148, 159-61 (2d Cir. 2017) (holding that entitlement to qualified immunity is not immediately appealable where evidence was sufficient to create triable issues of genuinely

disputed material fact as to defendants' entitlement to qualified immunity). Depending on the resolution of disputed facts, Gionfriddo's use of his Taser under the instant circumstances may have been in violation of A.M.'s clearly established constitutional rights.

Ultimately, Gionfriddo's entitlement to immunity depends on factual disputes that will hinge on credibility determinations, which must be made by a jury. The evidence presented at trial and the findings of the jury may necessitate a ruling that qualified immunity shall apply. But at this stage, viewed in the light most favorable to the plaintiffs, the evidence is sufficient to create triable issues. Defendants have not demonstrated entitlement to qualified immunity, and summary judgment on plaintiffs' excessive force claim will be denied.

**Municipal Liability**

Defendants argue that no failure to train or supervise may be found without an underlying constitutional deprivation, but this argument fails in light of the survival of the excessive force claim discussed above.

Defendants also argue that plaintiffs have not demonstrated any evidence of deficiency of training or supervision, as required for claims of municipal liability. See Amnesty America v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004). Generally, a pattern of misconduct is required to establish municipal liability, and "[t]he plaintiff must offer evidence to support the conclusion that the training program was inadequate, not that a particular officer may be unsatisfactorily trained or that an otherwise sound program has occasionally been negligently administered, and that a hypothetically well-trained officer would have avoided the constitutional violation." Okin v. Village of Cornwall-On-Hudson Police Dept., 577 F.3d 415, 440-41 (2d Cir. 2009). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be

properly thought of as a city 'policy or custom' that is actionable under § 1983." City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989).

Plaintiffs have failed to respond to this argument or to present evidence of deliberate indifference by policymaking officials. Accordingly, the court finds that plaintiffs have abandoned their municipal liability claims, and summary judgment will be granted in defendants' favor on these claims.

**ADA and Rehabilitation Act**

Defendants argue that summary judgment should be granted on plaintiffs' ADA and Rehabilitation Act claims, as neither statutory framework applies to "on-street" arrest encounters such as this one.

Plaintiffs respond that its ADA and Rehabilitation Act claims stem from (1) the Town's failure to properly train police officers for encounters with the deaf population; (2) the Town's failure to ensure effective, unbiased communication with A.M. during the April 30, 2013, encounter. Plaintiffs submit that A.M. had a right to a neutral, qualified interpreter, and that he was not reasonably accommodated.

As discussed above, plaintiffs have not responded or demonstrated evidence as to deficiency of training or supervision. Moreover, under the instant circumstances, no reasonable jury could find that the Town should have been required to obtain a "neutral" interpreter rather than retain the translation services of the American School for the Deaf.

"Whether a disabled individual succeeds in proving discrimination under Title II of the ADA will depend on whether the officers' accommodations were reasonable under the circumstances." Williams v. City of New York, 121 F. Supp. 3d 354, 368 (S.D.N.Y.). Here, the officers' accommodations (the School's interpreters) were reasonable under the circumstances.

11

Similarly, no intentional discrimination may be reasonably inferred where police officers rely upon teachers of deaf students to communicate with their students. See Loeffler v. Staten Island University Hosp., 582 F.3d 268, 274-77 (2d Cir. 2009) (holding that the standard for intentional violations of the Rehabilitation Act is deliberate indifference to the strong likelihood that a violation of federally protected rights will result from implementation of the challenged policy). No rational jury could find that that the Town acted with deliberate indifference in failing to secure additional, third-party interpreters in responding to a call at a school for the deaf, where interpreters were already on scene. See id at 275. Accordingly, summary judgment will be granted on plaintiffs' ADA and Rehabilitation Act claims.

**Assault, Battery, Intentional Infliction of Emotional Distress**

Plaintiffs withdraw their intentional tort claims against the Town of West Hartford.

Defendants argue that a police officer is not liable for assault and battery based upon the officer's lawful arrest of a person, where there was no use of excessive force. See Crowell v. Kirkpatrick, 667 F. Supp. 2d 391, 417 (2d Cir. 2009). Similarly, defendants contend that if their use of force in this case was objectively reasonable, then their conduct cannot have been "extreme and outrageous," as the intentional infliction of emotional distress claim requires. See Petyan v. Ellis, 200 Conn. 243, 254 (1986). But, as discussed above, whether Gionfriddo's actions amounted to excessive force is a decision for the jury.

Summary judgment will be denied as to plaintiffs' assault, battery, and intentional infliction of emotional distress claims against Gionfriddo. However, plaintiffs have not presented sufficient argument or evidence of assault, battery, and intentional infliction of emotional distress claims against any other individual defendants. Accordingly, the court considers those claims abandoned, and summary judgment will be granted as to those claims.

**Negligence**

Defendants argue that plaintiffs' negligence claims are barred by the doctrine of governmental immunity for discretionary acts. See Edgerton v. Town of Clinton, 311 Conn. 217, 230 (2014). Plaintiffs respond that such immunity is subject to the "identifiable person-imminent harm exception" whereby the circumstances make it apparent to the public officer that his or her action would subject an identifiable person to imminent harm. See id at 230-31. Genuinely disputed issues of material fact preclude summary judgment on whether the imminent harm exception should apply in this case. Accordingly, summary judgment as to plaintiffs' negligence claims against Gionfriddo and the Town will be denied.

**Claims against the American School for the Deaf and its Employees: Chris Hammond and Elwin Espinosa**

Plaintiffs withdraw their claims against Elwin Espinosa.

All of plaintiffs' claims against the American School for the Deaf and Hammond stem from allegations that A.M. was discriminated against based on his Attention Deficit Hyperactivity Disorder by "not being provided a safe environment." But defendants contend, and the court agrees, that plaintiffs' written response cites no factual support beyond their conclusory claims that the School failed to provide A.M. "the benefit of a safe educational environment afforded to students without Attention Deficit Hyperactivity Disorder."

Accordingly, summary judgment will be granted on plaintiffs' claims of negligence, negligent infliction of emotional distress, and violations of the ADA and Rehabilitation Act against the School; as well as on plaintiffs' claims of battery, assault, and intentional infliction of emotional distress against Hammond and the School.

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment will be GRANTED in part and DENIED in part.

Summary judgment is DENIED as to plaintiffs' claims of excessive force, assault, battery, intentional infliction of emotional distress, and negligence against Officer Paul W. Gionfriddo; and as to plaintiffs' claim of negligence against the Town of West Hartford. Summary judgment is GRANTED as to the balance of plaintiffs' claims.

Dated this 15th day of November, 2017, at Bridgeport, Connecticut.

                                          /s/Warren W. Eginton
                                        WARREN W. EGINTON
                                        SENIOR UNITED STATES DISTRICT JUDGE