```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

AUDLEY and JUDITH MUSCHETTE       :
on behalf of A.M.,                :
    Plaintiffs,            :
                                  :
v.                                :           3:13-cv-1337(RNC)
                                  :
TOWN OF WEST HARTFORD and         :
PAUL W. GIONFRIDDO,               :
    Defendants.            :

## RULING AND ORDER

This excessive force case brought against a Connecticut police officer and his municipal employer under 42 U.S.C. § 1983 has been remanded following an interlocutory appeal from a ruling by Judge Eginton denying the officer's motion for summary judgment based on qualified immunity. <u>See</u> <u>Muschette v. Gionfriddo</u>, 910 F.3d 65 (2d Cir. 2018). In accordance with the Second Circuit's decision on the appeal, judgment will be entered in favor of the officer on the § 1983 claim, the Court of Appeals having determined that qualified immunity applies. Dismissal of the § 1983 claim does not resolve the case, however, because state law claims remain: specifically, claims against the officer for assault and battery, intentional infliction of emotional distress, and negligence; and a claim against the officer's municipal employer for indemnification. Pending is a motion for summary judgment filed by the defendants with regard to the state law claims.

1

Because only the state law claims remain to be adjudicated, the question arises whether supplemental jurisdiction should be exercised over these claims as permitted by 28 U.S.C. § 1367. Whether to exercise supplemental jurisdiction over state law claims is a discretionary decision informed by "the values of judicial economy, convenience, fairness, and comity." Carnegie-Mellon Univ. v. Cahill, 484 U.S. 343, 350 (1988). When, as here, only state law claims remain to be adjudicated, "the balance of factors will 'usually' point toward a declination." Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106, 118 (2d Cir. 2013) (quoting Carnegie-Mellon, 484 U.S. at 350 n.7); see also Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3567.3 ("As a general matter, a court will decline supplemental jurisdiction if the underlying [federal] claims are dismissed before trial.").

As the case comes to me, it includes a scheduling order entered by Judge Eginton stating that "[f]or the sake of efficiency, the court will exercise supplemental jurisdiction over plaintiffs' remaining claims." ECF No. 159. Judge Eginton entered his order prior to the defendants' filing of the pending motion for summary judgment. Neither party has asked me to reconsider whether exercising supplemental jurisdiction over the state law claims continues to be appropriate. However, after considering the parties' arguments in connection with the

pending motion, and the authorities cited in their respective briefs, I think the motion requires resolution of unsettled issues of state law, which tips the balance in favor of declining to exercise supplemental jurisdiction. See 28 U.S.C. § 1367(c)(1) (authorizing district courts to decline to exercise supplemental jurisdiction where a claim "raises a novel or complex issue of state law"); Dargis v. Sheahan, 526 F.3d 981, 990 (7th Cir. 2008) (federal district court should decline to exercise supplemental jurisdiction after dismissal of federal claims unless "it is clearly apparent how the state claims are to be decided"). Because of the length of time this case has been pending, and in view of Judge Eginton's previous order, I set forth my reasons for declining to exercise supplemental jurisdiction in more detail below.

## Discussion

Plaintiffs Audley and Judith Muschette bring this action on behalf of their son, A.M., who was a student at the American School for the Deaf in West Hartford when this action was filed. The case arises from an incident at the school in 2013, when A.M. was twelve. West Hartford Police Officer Paul Gionfriddo went to the School in response to a call reporting that a student was out of control. On arriving at the scene, Officer Gionfriddo approached A.M. and undertook to secure him with the assistance of another officer. Officer Gionfriddo has testified

3

that he believed A.M. was refusing to put down a large rock, which could be used as a weapon against the officers and others, despite the officers' repeated warnings to A.M. that unless he let go of the rock he would be tasered.  Officer Gionfriddo relied on a staff member at the School to communicate his warnings to A.M. using American Sign Language.  After A.M. failed to put down the rock, he was tasered once.  According to Officer Gionfriddo's testimony, A.M. was still noncompliant, so he tasered him once more, thereby enabling the other officer to secure A.M. with handcuffs.  Plaintiffs contend that Officer Gionfriddo's use of the taser on their son, especially the second time, provides a basis for compensatory and punitive damages under state tort law.

In their motion for summary judgment, Officer Gionfriddo and the Town argue that the Second Circuit's decision granting qualified immunity to the officer operates to preclude the state law claims.  Plaintiffs correctly respond that the standard applied by the Second Circuit in deciding the issue of qualified immunity differs from the standard that applies to the issue of the officer's liability under state law.  The federal qualified immunity standard applied by the Second Circuit in this case asks whether an officer's use of force was clearly prohibited by the Fourth Amendment such that no competent officer could think the challenged use of force was lawful.  See Malley v. Briggs, 475

U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). The standard that applies to the issue of the officer's liability under state law is found in the state statute governing justification for an officer's use of force, Conn. Gen. Stat. § 53a-22(b).[1] Under this statute, an officer is justified in using force only if he (1) actually believes his use of force is reasonably necessary [hereinafter "the subjective component"]; and (2) his subjective belief is objectively reasonable [hereinafter "the objective component"]. See State v. Smith, 73 Conn. App. 173, 807 A.2d 500, 515 (2002) ("We conclude that the test for evaluating self-defense claims pursuant to § 53a-22 is a subjective-objective test," in which the jury is first required "to determine whether the defendant honestly believed" his use of force was necessary

---

[1] Section 53a-22(b) provides that a police officer

> is justified in using physical force upon another person when and to the extent that he or she reasonably believes such to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense, unless he or she knows that the arrest or custody is unauthorized; or (2) defend himself or herself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape.

Conn. Gen. Stat. § 53a-22(b). "Where the officer's actions are justified [under § 53a-22(b)], he is not liable in tort for assault or battery." Margolies v. Millington, No. 16-cv-1872 (JCH), 2019 WL 1110793, at *6 (D. Conn. Mar. 11, 2019).

5

before determining "whether that belief was reasonable, from the perspective of a reasonable police officer in the defendant's circumstances"); see also Outlaw v. City of Hartford, 884 F.3d 351, 369 (2d Cir. 2018) (noting that an officer's subjective belief is "an element . . . in the state-law concept of justification," citing § 53a-22(b)); Huaman v. Tinsley, No. 3:13-cv-484 (MPS), 2017 WL 4365155, at *10 (D. Conn. Sept. 28, 2017) (noting that an officer's use of force did not fall within § 53a-22(b) because the officer "had no intention of making an arrest" when using force and therefore used "force he did not reasonably believe was necessary to make an arrest").

Given these diverging standards, I agree with plaintiffs that the Second Circuit's decision granting qualified immunity to Officer Gionfriddo does not necessarily foreclose the state law claims. The Second Circuit determined that a reasonable officer in Officer Gionfriddo's position could believe both: (1) that A.M. was ignoring the officer's repeated warnings to put down the rock; and (2) that in such a situation, use of the taser to secure A.M. was permitted by the Fourth Amendment. With regard to the second deployment of the taser, the Court determined that a reasonable officer could believe both: (1) that A.M. continued to pose a risk to the safety of the officers who were attempting to secure him, and (2) that a second deployment of the taser was therefore lawful. But the Second

Circuit was not asked to decide, and did not decide, whether (1) Officer Gionfriddo <u>actually believed</u> his use of the taser was reasonably necessary to secure A.M. (either initially or when he used it the second time), or (2) whether his belief was reasonable under § 53a-22(b).  Accordingly, the legal sufficiency of the state law claims remains to be determined.

Whether the state law claims are adequately supported to defeat summary judgment turns out to be a matter of some complexity.  Dealing first with the subjective component of § 53a-22(b), which gets the most attention in the parties' briefs, the parties seem to agree that if an officer has a subjective belief that her use of force is reasonably necessary, but her belief is objectively unreasonable, she is potentially liable for a negligent assault and battery.  The parties sharply disagree, however, about what happens when the opposite is true – if the officer uses what is later determined to be objectively reasonable force, but does so without believing it to be reasonably necessary.  Defendants seem to suggest that an officer cannot be held liable for an objectively reasonable use of force regardless of her motive or intent.  Plaintiffs argue that even an objectively reasonable use of force is actionable if the officer did not believe it was reasonably necessary in the circumstances.

Plaintiffs' argument comports with the ordinary meaning of the words in § 53a-22(b), as well as the case law cited above recognizing that the statute includes a subjective component, so I think their argument is correct. In this respect, Connecticut law differs from the law of New York, which includes no subjective component. See Tompkins v. City of New York, 50 Fed. Supp.3d 426, 440 (S.D.N.Y. 2014)("New York courts analyze . . . battery claims against police using the same [objective] standard applicable to excessive force cases under Section 1983."); see also Girbes-Pierce v. City of New York, 2019 WL 1522631, *7 (E.D.N.Y. April 9, 2019)(officer's use of pepper spray supported award of damages under both state law and § 1983).

Case law provides little guidance on the standard to be used in deciding whether an officer's objectively reasonable use of force in a given case is nevertheless actionable under Connecticut law. The words of the § 53a-22(b), viewed in the context of state law on governmental immunity, may be construed to subject an officer to monetary liability for using force later judged to be objectively reasonable only if the use of force was willful and wanton, the standard used to determine whether governmental immunity applies. See Tryon v. Town of N. Branford, 58 Conn. App. 702, 755 A.2d 317, 322 (2000) (governmental immunity does not apply "where the alleged acts

involve malice, wantonness, or intent to injure, rather than negligence"). There may be other interpretations of the statute that better reflect the intention of the legislature, however. Because this issue of statutory interpretation implicates important state interests, declining to exercise supplemental jurisdiction in this instance is appropriate as a matter of comity.

In addition, it is unclear how § 53a-22(b) should be applied on a motion for summary judgment in an excessive force case against a police officer when the officer's subjective motive or intent is in issue. As the United States Supreme Court has recognized, wrongful motive or intent on the part of a state actor is easy to allege and can be difficult to disprove. See Crawford-El v. Britton, 523 U.S. 574, 584-85 (1998). Accordingly, in constitutional tort cases under § 1983 involving an element of wrongful motive or intent, where qualified immunity is available as a defense, merely asserting that a jury could disbelieve the defendant's explanation for the challenged action is insufficient to defeat summary judgment. See id.; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). In such a case, to defeat a properly supported motion for summary judgment based on qualified immunity, the plaintiff must point to "affirmative evidence" from which a jury could

9

reasonably find the wrongful motive or intent. Crawford-El, 523 U.S. at 600; Anderson, 477 U.S. at 256.

Whether the Connecticut Supreme Court would adopt the same "affirmative evidence" standard to govern summary judgment in a case against a police officer implicating the subjective component of § 53a-22(b), or another more or less rigorous standard, is unclear. More rigorous standards have been suggested for constitutional cases involving allegations of wrongful motive. See Crawford-El, 523 U.S. at 602 (Rehnquist, C.J., dissenting)(arguing for a requirement of "objective evidence" to support finding that defendant's explanation is pretextual); see also Sheppard v. Beerman, 94 F.3d 823, 828 (2d Cir. 1996) (requiring plaintiff to present "particularized evidence of direct or circumstantial facts . . . supporting the claim of an improper motive in order to avoid summary judgment").

Even assuming the Connecticut Supreme Court would adopt the "affirmative evidence" standard that applies in wrongful motive cases under § 1983, it is unclear how this standard should be applied when, as here, the officer's use of force has been determined to be objectively reasonable for the limited purpose of federal qualified immunity. For their affirmative evidence, plaintiffs rely primarily on the applicable taser policy of the West Hartford Police Department, which in their view did not

10

permit tasering a passively resisting, deaf, twelve-year old within two or three minutes of the officers' arrival on the scene. They also rely on expert testimony casting doubt on the credibility of Officer Gionfriddo's explanation that he thought he had to taser A.M. in order to secure him with the assistance of his fellow officer.

Does this evidence permit a jury to discredit the officer's testimony and find that he did not believe his use of the taser was reasonably necessary for purposes of § 53a-22(b)?[2] Or must summary judgment be granted in the absence of evidence that bears more directly on the officer's state of mind? In considering this question, it would be helpful to know which side would have the burden of proof on the issue of the officer's subjective belief if this case were tried. But even that is unclear to me at the moment.

The closest precedent seems to be Gryca v. LaJeunesse, No. 84618, 2008 WL 4248993 (Conn. Super. Ct. Aug. 26, 2008). In that case, the defendants moved to set aside a jury verdict for the plaintiff on a claim of assault and battery arguing that it

---

[2] Cf. Walters v. Abouchacra, No. CV126028561S, 2014 WL 1876816, at *5 (Conn. Super. Ct. Apr. 8, 2014) (noting that officer's apparent departure from police department's use-of-force policy regarding tasers "may be considered as a relevant factor in determining the reasonableness of [the officer]'s use of force in the present case, and is sufficient to create a genuine issue of fact regarding his deployment of the taser").

11

was inconsistent with the jury's verdict for the defendants on an excessive force claim under § 1983. Denying the motion, the Court stated:

> The court agrees with the plaintiff's argument that there are scenarios under which the verdict for the plaintiff on the count alleging assault and battery is not inconsistent with the verdict for the defendants on the excessive force count brought under 42 U.S.C. § 1983. Moreover, General Statutes § 53a-22, which applied solely to the assault and battery count, contains a subjective aspect, and is not identical to the objective standard that applies to a claim for excessive force under 42 U.S.C. § 1983.

Id. at *1.

The quoted statement provides support for plaintiffs' argument in opposition to summary judgment. But the Court's opinion does not describe the evidence that was deemed sufficient to support the verdict on the assault and battery claim (or how the burden of proof was allocated).[3]

In addition, this case also raises a seemingly novel issue regarding the objective component of the state statute. State

---

[3] In Sampson v. Pia, No. 3:15-cv-359 (SRU), 2017 WL 1138127 (D. Conn. March 27, 2017), summary judgment was granted on a claim that an officer's use of force during an arrest made him liable to the plaintiff for assault and battery. The Court held that the claim for assault and battery was barred by collateral estoppel following a jury verdict in a related criminal case in which the plaintiff had been convicted of interfering with the arresting officer. To convict the plaintiff of that offense, the jury had to determine that the officer's use of force was reasonable under the circumstances. There is no indication that the pro se plaintiff relied on the subjective component of § 53a-22(b) to argue that collateral estoppel did not apply.

12

trial courts have often applied the federal standard of objective reasonableness in determining whether an officer's use of force was lawful.  See Dodge v. Verillo, No. 166035336, 2018 WL 3731057, at *4 (Conn. Super. Ct. July 17, 2018) (applying the objective reasonableness test set out in Graham v. Connor, 490 U.S. 386, 396-97 (1989), to determine whether an officer's use of force was justified under § 53a-22(b)); Walters, 2014 WL 1876816, at *3 (describing the question presented by § 53a-22(b) as whether the officer's use of force was reasonable under Graham's objective test).  And federal judges in Connecticut have assumed that Fourth Amendment excessive force claims and state law assault and battery claims are functionally identical (as they are in New York).  See, e.g., Outlaw v. City of Hartford, No. 07-cv-01769 (GWC), 2015 WL 13646918 (D. Conn. May 5, 2015), aff'd 884 F.3d 351 (2d Cir. 2018); Jackson v. Town of Bloomfield, No. 12-cv-00924 (MPS), 2015 WL 1245850, at *17-18 (D. Conn. Mar. 18, 2015).  Cf. Posr v. Doherty, 944 F.2d 91, 95 (2d Cir. 1991) (noting that an excessive force claim was "substantially identical" in its "essential elements" to a New York state assault and battery claim).

The standard of objective reasonableness governing the lawfulness of an officer's use of force under both federal and state law is less deferential to the officer than the qualified immunity standard of objective reasonableness applied by the

Second Circuit on the interlocutory appeal.  See Saucier v. Katz, 533 U.S. 194, 205-06 (2001)(inquiry as to whether officer is entitled to qualified immunity for use of excessive force is distinct from inquiry as to merits of excessive force claim; if officer is mistaken regarding amount of force that is legal, but mistake is reasonable, qualified immunity applies).[4]  In effect, the qualified immunity standard provides a second layer of protection for an officer who "reasonably acts unreasonably." See Oliveira v. Mayer, 23 F.3d 642, 648-49 (2d Cir. 1994)(Newman, J.) (discussing this distinction); see also Westry v. Leon, No. 3:17-cv-862 (VAB), 2019 WL 7037746, at *7 (D. Conn. Dec. 27, 2019)(jury could find that use of taser violated Fourth Amendment, but officer was protected by qualified immunity). Here, the Second Circuit's ruling extends this additional protection to Officer Gionfriddo without deciding the underlying issue whether his use of force was reasonable under the Fourth Amendment.  Therefore, plaintiffs' claim that his use of force was unreasonable under the objective component of § 53a-22(b) remains open for debate.

---

[4] Like the qualified immunity standard, the standard governing the lawfulness of an officer's use of force under the Fourth Amendment is also wholly objective.  See Simms v. Village of Albion, 115 F.3d 1098, 1110 (2d Cir. 1997) (describing the test used to determine whether a Fourth Amendment violation has occurred as "wholly objective," rendering "the subjective intent of the officers . . . irrelevant").

No Connecticut case has been cited or found that presents this scenario. That is, there appears to be no Connecticut case concerning the availability of a cause of action in tort for an officer's allegedly unreasonable use of force under the objective component of § 53a-22(b) when the use of force has been determined to be objectively reasonable for purposes of federal qualified immunity. How should this situation be handled? Assume a hypothetical case in which an officer's subjective belief concerning the need to use force is not in issue, the plaintiff claims the officer's use of force was not objectively reasonable as required by § 53a-22(b), and the officer has been granted qualified immunity under federal law. In such a case, what showing is necessary to defeat summary judgment? Is the plaintiffs' evidence in this case – principally, the West Hartford policy governing the use of tasers in 2013 and the testimony of their expert – sufficient?

In these circumstances, I conclude that the state law claims should be adjudicated in state court. Requiring the state law claims to be refiled in state court will entail additional expense and delay for the parties. But the motion papers can be refiled in state court with such changes as counsel may choose to make in light of the foregoing discussion. Moreover, deferring to the state courts will serve the parties' interests by enabling them to obtain an authoritative ruling on the issues

presented by the motion.  The only other way to obtain an authoritative ruling would be to attempt to certify the issues to the Connecticut Supreme Court, which also would entail additional expense and delay.

## Conclusion

Accordingly, defendants' motion for summary judgment is denied without prejudice to renewal in state court consistent with this ruling and order.  The Clerk may enter judgment dismissing the claims under § 1983 with prejudice and dismissing the state law claims without prejudice to refiling in state court.

So ordered this 25th day of March 2020.

                                                /s/
                                      Robert N. Chatigny
                                  United States District Judge